EXHIBIT 1

SHEPPARD MULLIN RICHTER & HAMPTON LLP
JILL M. PIETRINI (Cal. Bar No. 138335)
PAUL A. BOST (Cal. Bar No. 261531)
BENJAMIN O. AIGBOBOH (Cal. Bar No. 268531)
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310.228.3700
Facsimile:    310.228.3701
Email: jpietrini@sheppardmullin.com
        pbost@sheppardmullin.com
        baigboboh@sheppardmullin.com

Attorneys for Plaintiff
JUST GOODS, INC., a Delaware Corporation

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**04/05/2018**
Clerk of the Court
BY:KALENE APOLONIO
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JUST GOODS, INC., a Delaware Corporation, | CASE NO.  CGC-17-559876 |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR:** |
| vs. | **(1) DECLARATORY RELIEF;**<br>**(2) BREACH OF CONTRACT;**<br>**(3) TRADEMARK INFRINGEMENT** |
| JUST, INC., a Delaware Corporation, JOSHUA TETRICK, an individual, and DOES 1–10, | **AND FALSE DESIGNATION OF ORIGIN;**<br>**(4) UNFAIR COMPETITION; AND**<br>**(5) CANCELLATION OF** |
| Defendants. | **TRADEMARK REGISTRATION** |
| | Hon. Teri L. Jackson<br>Dept. 610 |
| | Action Filed:      June 30, 2017<br>Trial Date:        October 1, 2018 |

Plaintiff JUST GOODS, INC. ("Just Goods"), by and through its undersigned counsel, hereby files this Second Amended Complaint, complaining and alleging against Defendant JUST, INC. FKA HAMPTON CREEK, INC. ("Hampton Creek") and Joshua Tetrick (collectively, with Hampton Creek, "Defendants") as follows:

## **NATURE OF THE CASE**

1.     This action arises out of Hampton Creek's refusal to comply with its contractual obligations.  In 2014, at Hampton Creek's request, Just Goods and Hampton Creek executed a

1

TRADEMARK COEXISTENCE AGREEMENT (the "Contract") that permitted each party to use marks containing the word "JUST" on goods in commerce, albeit with certain limitations. Just Goods was, and is, the senior user of the JUST mark and owns four registrations of the JUST mark for certain food and beverage products.

2.      After executing the Contract, Hampton Creek encountered legal and/or marketing difficulties and decided to expand its use of the JUST mark beyond what was permitted in the Contract. To that end, Hampton Creek proposed an amendment to the Contract, which Just Goods did not accept.

3.      Up until this time, Hampton Creek had treated the Contract as fully valid and enforceable. However, as soon as Just Goods declined to amend the Contract, Hampton Creek began to accuse Just Goods of fraud in the inducement of the Contract. Thereafter, Hampton Creek began moving forward with its marketing and sales efforts in violation of the Contract and in violation of Just Goods' trademark rights. Its justification for the same is its contention that the Contract is void due to mistake or fraud. As a result, Just Goods seeks a judgment from this Court deeming the Contract to be valid and enforceable, relief for Hampton Creek's breach of the Contract, relief for Hampton Creek's willful infringement of Just Good's JUST trademark and unfair competition, and cancellation of Hampton Creek's registration of the trademark JUST MAYO. Also, on information and belief, at all times, Mr. Tetrick, Hampton Creek's founder and CEO, has personally directed the activities of Hampton Creek and authorized and approved its willfully infringing activities.

## PARTIES

4.      Plaintiff Just Goods is a Delaware corporation with its principal place of business located at 311 West 43rd Street, New York, New York 10036.

5.      Just Goods is informed and believes that Defendant Hampton Creek is a Delaware corporation with its principal place of business located at 371 10th Street, San Francisco, California 94103.

6.      Just Goods is informed and believes that Defendant Joshua Tetrick is an individual residing in or around San Francisco, California.

PLAINTIFF'S SECOND AMENDED COMPLAINT

7.      Defendants DOES 1 through 10, inclusive, are other parties not yet identified who have engaged in or contributed to the engagement in one or more of the wrongful practices alleged herein.  The true names, whether corporate, individual or otherwise, of DOES 1 through 10, inclusive, are presently unknown to Just Goods, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Second Amended Complaint to show their true names and capacities when the same have been ascertained.

## GENERAL ALLEGATIONS

**A.      Just Goods' Senior Use of the JUST Mark**

8.      Founded in 2012, Just Goods was established with the goal of driving social and environmental impact through business.  Its primary brand and trademark -  JUST – has a double meaning:  its products are not only pure and all natural, they are sourced, packaged, and sold in an ethically and environmentally sound manner.

9.      Just Goods began selling JUST water at least as early as July 24, 2015, and began selling JUST fruit-flavored beverages, olive oil, and snack food as early as November 13, 2017. Photographs of Just Goods' packaging for these products are depicted below:



10.      Currently, Just Goods sells its JUST water, fruit-flavored beverages, olive oil, and rice cakes through its retail website, www.shopjustwater.com, and its water and fruit-flavored beverages through grocery stores and other stores in the U.S. and Canada.

3

11.     In 2012 and in anticipation of these commercial efforts, Just Goods filed the following trademark applications with the U.S. Patent & Trademark Office ("PTO") based on its bona fide intent to use the JUST trademark for the goods identified in the applications (the "JUST Applications"):

| **Mark** | **Ser. No.** | **International Class and Goods** |
|---|---|---|
| JUST | 85/724,281 | 29:  Antipasto, beverages consisting principally of milk, bottled fruits, butter, cheese, dairy-based dips, dairy-based spreads, dried fruits, eggs, fruit and soy based snack food, fruit spreads, fruit-based meal replacement bars, fruit-based organic food bars, jellies and jams, jerky, meat, milk, olive oil, pate, peanut butter, pickles, poultry, prepared nuts, seafood (not live), shakes, sliced meat, snack dips, soups, tofu, vegetable chips, yogurt-based beverages |
| JUST | 85/724,282 | 30:  Bakery goods, beverages made of coffee, beverages made of tea, candy, cereal based snack food, chewing gum, coffee and tea, condiments, custards, food flavourings, food seasonings, frozen yogurt, grits, ice cream, marinades, mixes for bakery goods, noodles, oatmeal, pasta, puddings, salad dressings, sauce mixes, sauces, seasonings, snack cakes, snack foods, spices, toast |
| JUST | 85/724,284 | 32:  Bottled water, energy drinks, fruit beverages, fruit juice, fruit-flavored beverages, herbal juices, lemonade, soft drinks, sports drinks, vegetable juice, vegetable-fruit juices |

12.     On March 8, 2016, the PTO issued to Just Goods a registration of JUST for bottled water (Reg. No. 4,914,140), and recently, on January 16, 2018, the PTO issued to Just Goods registrations of JUST for fruit-flavored beverages (Reg. No. 5,380,799), olive oil (Reg. No. 5,386,813), and cereal based snack food, snack cakes, and snack foods (Reg. No. 5,380,798).

13.     Just Goods owns registrations of JUST for goods in Classes 29, 30, and 32 in many foreign jurisdictions, including, but not limited to, Australia, Africa, the Caribbean, South Korea, Norway, and Switzerland, and pending applications to register JUST for goods in Classes 29, 30, and 32 in Canada, the European Union, India, and Israel.

///

///

4

**B.** **The PTO's Refusal to Register Hampton Creek's JUST Formative Marks Based on the JUST Applications and Hampton Creek's Willing Agreement to the Contract to Avoid a Likelihood of Confusion Between the Parties' Marks**

14.    In 2013 and 2014, Hampton Creek applied for trademark registrations of several composite marks that included the word JUST, namely, JUST SCRAMBLE, JUST MAYO, JUST COOKIES, and JUST COOKIE DOUGH (the "JUST Formative Marks"). The PTO refused to register Hampton Creek's application to register JUST MAYO based on certain of Just Goods' prior-filed JUST Applications on the grounds that Hampton Creek's JUST MAYO so resembled Just Goods' JUST mark so as to be likely to cause confusion, or to cause mistake, or deceive.

15.    Accordingly, in January 2014, Hampton Creek contacted Just Goods for a consent/coexistence agreement, which would allow Hampton Creek to obtain a registration of JUST MAYO. The parties discussed the terms of a possible consent/coexistence agreement. Unsatisfied with the terms that were being negotiated, Hampton Creek, on June 8, 2014, through its outside counsel, filed a notice of opposition to Just Goods' registration of the JUST Applications before the Trademark Trial and Appeal Board ("TTAB") of the PTO on the grounds that, *inter alia*, all of the JUST Applications were likely to confuse consumers into believing that Just Goods' JUST products identified in its Applications originate with, are sponsored by and/or are affiliated with Hampton Creek and that Just Goods' JUST products dilute Hampton Creek's famous JUST MAYO trademark. Before Just Goods' deadline to respond to the notice of opposition expired, Hampton Creek unilaterally dismissed the notice of opposition upon realizing that Just Goods, by virtue of the filing date for the JUST Applications, owned rights in the JUST mark prior to Hampton Creek's rights.

16.    Notably, Hampton Creek, at or around the time it filed the notice of opposition, was not precluded from opposing registration of the JUST Applications on the grounds that Just Goods did not have a bona fide intent to use the JUST mark for the goods set forth in its JUST Applications at the time it filed its trademark applications. However, Hampton Creek did not oppose registration of the JUST Applications on this basis, nor did it conduct discovery related to the same in connection with the notice of opposition.

17.     On October 31, 2014, after Hampton Creek had initiated – and unilaterally withdrawn – its notice of opposition to the JUST Applications, the parties entered into the Contract.  The Contract, which was designed to allow the parties' JUST marks to coexist in the marketplace without risk of consumer confusion, permitted the parties to use the JUST mark subject to certain restrictions and obligations.  A copy of the Contract is attached hereto as **Exhibit A** and incorporated by reference herein.

18.     Specifically, in Sections 2.1-2.5 of the Contract, Hampton Creek expressly agreed to limit its use of the JUST Formative Marks to a restricted number of specific goods, to not use JUST alone or with any other word other than the JUST Formative marks, and to always use the aforementioned JUST Formative marks in a certain script and font, an example of which is set forth below:

*just*
**MAYO**

**C.     Hampton Creek's Willful Breach of the Contract and Use of JUST in a Manner Likely to Cause Confusion with Just Goods' JUST Mark**

19.     On information and belief, after the execution of the Contract, Hampton Creek received a warning letter from the United States Food and Drug Administration ("FDA").  On information and belief, this FDA letter resulted in, or materially contributed to, Hampton Creek's inability to market as previously planned the goods it identified in Contract.  On information and belief, Hampton Creek could no longer capture the market share and/or investment for which it had hoped at the time it entered into the Contract.  Accordingly, around this same time, Hampton Creek's CEO, Josh Tetrick, publicly stated that Hampton Creek would change course and expand its use of JUST for business reasons.  To that end, in late 2015, Hampton Creek informed Just Goods that Hampton Creek would like to use the mark JUST in manners expressly prohibited by the Contract and likely to result in the consumer confusion against which the Contract was intended to guard.

20.     Just Goods did not agree to Hampton Creek's proposed expanded use of the JUST mark, nor did it agree to Hampton Creek's proposed changes to the Contract in order to facilitate

PLAINTIFF'S SECOND AMENDED COMPLAINT

that proposed expanded use.  Thus, Hampton Creek was faced with the decision either to honor the Contract, or to fabricate a purported justification for setting it aside.  It chose the latter.

21.  Notably, at all times before Just Goods chose not to accept Hampton Creek's proposed expanded use of the JUST mark, both Just Goods and Hampton Creek treated the Contract as fully valid and enforceable.  Hampton Creek submitted the Contract to the PTO in support of its argument that the PTO should withdraw its refusal to register Hampton Creek's JUST MAYO application based on the JUST Applications, which argument the PTO accepted, resulting in the issuance of the JUST MAYO Registration.  A true and correct copy of that submission is attached hereto as **Exhibit B**.  However, in mid-2016, Hampton Creek's counsel accused Just Goods of having lacked a bona fide intent to use the JUST mark at the time Just Goods filed the JUST Applications, thereby voiding the Contract.

22.  With respect to the foregoing, Hampton Creek argued that Just Goods either fraudulently or mistakenly led Hampton Creek to believe that Hampton Creek had no choice but to enter into the Contract because Just Goods was going to register its JUST mark for all goods identified in the JUST Applications.

23.  The Contract contains no such representation.  The Contract contains within the recitals, but not within the terms, a true and correct list of the parties' then-pending intent-to-use applications, i.e., Just Goods' JUST Applications and Hampton Creek's applications to register the JUST Formative Marks.  The Contract does not contain any affirmative representation by either party that any of their respective applications would ultimately mature into registered marks.  The Contract likewise does not contain any affirmative representation that the parties' respective applications were unassailable before the TTAB or otherwise.

24.  The Contract does not contain any contractual provision that altered or terminated the Contract's limitations with respect to the parties' respective uses of the JUST mark, or which permitted one party to expand its use of the JUST mark in the event the other party abandoned its trademark applications or in the event the PTO issued registrations for that party's trademark applications.

7

25.     On the contrary, Section 6.1 of the Contract states that the limitations on Hampton Creek's use of JUST as set forth in Sections 2.1-2.5 of that agreement "shall survive termination of this Agreement."

26.     The Contract was fully integrated and the product of negotiations by the parties, each of whom was represented by counsel.

27.     Just Goods substantially performed all of its material obligations under the terms of the Contract.  However, in 2016, based on its contention that the Contract was void or voidable, Hampton Creek refused to abide by the Contract and publicly represented that it would market and use the JUST mark in breach of that Contract.

28.     In or about May 2017, Hampton Creek began using the JUST mark in a manner likely to cause confusion in the minds of consumers as to the source of its products and/or within Just Goods' natural zone of expansion.  Notably, Hampton Creek adopted the word JUST alone as its corporate and market identity, prominently using it across all of its brands.  Hampton Creek's expanded use of the JUST mark clearly exceeds the scope of use permitted under the terms of the Contract.  As set forth in industry publications, true and correct copies of which are collectively attached hereto as **Exhibit C**, Hampton Creek remade its line of products in that "Just has been moved from a subtle script to a . . . wordmark that ends in a period, 'Just.' – the largest component of the design." (See **Exhibit C**, "Artisanal Branding Grows Up," 5/1/17.)  "The new design, which will begin arriving on shelves this month, emphasizes the word "Just" and minimizes the product description itself."  (**Exhibit C**, "Why Hampton Creek is Making Headlines" 5/9/17.) Photographs of Hampton Creek's redesigned use of JUST in contravention of the Contract, circa May 2017, are depicted below:



PLAINTIFF'S SECOND AMENDED COMPLAINT

1  More recently, Hampton Creek has further revised its use of JUST.  In this more recent redesign,

2  Hampton Creek depicts JUST in capitalized, sans serif letters, even more similar to the manner in

3  which Just Goods uses the JUST mark.  Photographs of Hampton Creek's more recent redesign

4  are depicted below:

 

14       29.    Hampton Creek's redesigned use of JUST – replacing the contractually-mandated,

15  subtle script with a larger, bolder sans serif "Just" that exceeds the use permitted of that mark

16  under the terms of the parties' Contract – is now prominently displayed on Hampton Creek's retail

17  websites and on its LinkedIn home page.  True and correct copies of these pages are collectively

18  attached hereto as **Exhibit D**.

19       30.    Furthermore, on information and belief, on or around January 16, 2018, Hampton

20  Creek merged with Just, Inc., one of its wholly-owned subsidiaries.  Hampton Creek's board

21  resolved that surviving corporation's name is Just, Inc.  Hampton Creek's recently redesigned

22  packaging specifically identifies "Just, Inc." as the source of its goods:

23

24

25

26

27

28

PLAINTIFF'S SECOND AMENDED COMPLAINT



This is a change from Hampton Creek's identification of "Hampton Creek, Inc." as the source of its products on the previous iteration of its packaging:




10

31.     Also, on information and belief, in or around December 2017/January 2018, Hampton Creek began hosting a website promoting its products offered under the JUST mark on <justforall.com>. The domain name <hamptoncreek.com> automatically forwards to <justforall.com>.

32.     On information and belief, Hampton Creek took all of the above actions at the direction, and with the approval and authorization, of Mr. Tetrick, its founder and CEO. It has been widely reported in the media that Mr. Tetrick is the primary decision-maker at Hampton Creek and, in fact, was the sole board member for Hampton Creek beginning around July 2017, when all of Hampton Creek's other board members reportedly resigned or were asked to leave by Mr. Tetrick, until around September 2017.

33.     Upon information and belief, Hampton Creek has engaged in the conduct alleged herein described, in whole or in part, in an effort to gain an unfair competitive advantage over Just Goods. According to one industry publication, Hampton Creek's redesign was done to give "the 'just' on its label . . . its own meaning instead of acting as a modifier." (See "Why Hampton Creek is Making Headlines," **Exhibit C**, *supra*.)

34.     On information and belief, Hampton Creek is selling its JUST branded products in violation of the Contract and Just Goods' trademark rights throughout the U.S. and in foreign territories in which Just Goods has prior rights.

## FIRST CLAIM

### Declaratory Relief – Against Hampton Creek

35.     Just Goods repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Second Amended Complaint.

36.     An actual controversy has arisen and now exists relating to the validity and enforceability of the Contract. Specifically, Just Goods contends that the Contract is fully valid and enforceable while Hampton Creek maintains that the Contract is void and unenforceable due to fraud or mistake.

11

37.     Further an actual controversy has arisen and now exists relating to the parties'
respective obligations pursuant to the Contract.  Specifically, Just Goods contends that Hampton
Creek remains obligated to comply with the terms and conditions of the Contract, while Hampton
Creek maintains that it has no legal obligation to comply with the Contract, and may set that
agreement aside as if it had never existed.

38.     Just Goods respectfully requests that the Court enter a declaratory judgment that
the Contract is fully valid and enforceable, and therefore that the parties thereto (Just Goods and
Hampton Creek) are legally obligated to abide by its terms.

### SECOND CLAIM

**Breach of Contract – Against Hampton Creek**

39.     Just Goods repeats, realleges, and incorporates herein by reference as though fully
set forth, the allegations contained in the preceding paragraphs of this Second Amended
Complaint.

40.     In 2014, pursuant to Sections 2.1-2.5 of the Contract, Hampton Creek agreed to
limit its use of the word JUST.  Specifically, pursuant to Sections 2.1-2.3 of the Contract,
Hampton Creek could use the JUST mark, and seek trademark registration of, only JUST
Formative Marks for certain products.

41.     Pursuant to Section 2.4 of the Contract, "Hampton Creek shall not use the mark
JUST alone as a brand for any food or beverage products; provided, however that Hampton Creek
shall have the right to use the word "just " in a non-trademark manner, *i.e.,* descriptively or
generically."

42.     Pursuant to Section 2.5 of the Contract, "Hampton Creek shall only use the JUST
Formative Marks substantially in the format currently used and as shown in **Exhibit A** [to the
Contract], in which the word JUST is stylized, is in lower case font type and is at least fifty
percent (50%) smaller in size than the words MAYO, SCRAMBLE, COOKIE and COOKIE
DOUGH.  Hampton Creek may change the stylization (but not the lower case font type or size
relationship) of the word 'JUST' shown in **Exhibit A** [to the Contract] only upon prior written
request to and prior written consent by Just Goods."

12

43.     In or about May 2017, Hampton Creek breached the Contract by:  (a) using JUST in connection with products other than those that were permitted by the express terms of the Contract; (b) using the JUST mark alone as a brand; and (c) using the JUST Formative Marks in a format substantially different than that which is permitted by Contract without the consent of Just Goods.  In January 2018, Hampton Creek further breached the Contract by changing its corporate name to Just, Inc. and removing the name "Hampton Creek, Inc." from its products' packaging and replacing it with "Just, Inc." to become Hampton Creek's house brand.

44.     Just Goods has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Contract, other than those obligations which Just Goods was excused from performing (if any) due to Hampton Creek's breach as set forth above.

45.     Hampton Creek's refusal and failure to abide by its obligations under the Contract has, *inter alia*, caused, and is likely to cause, consumer confusion for which pecuniary compensation would not afford Just Goods adequate relief.

46.     Based on the foregoing, Just Goods respectfully requests that this Court enter an order permanently enjoining Hampton Creek, its officers, agents and assigns from:  (a) using JUST in connection with products other than those expressly set forth in the Contract; (b) using the JUST mark alone as a brand for its products; (c) using the JUST Formative Marks in any manner or format that is different from than that which is expressly permitted by terms of the Contract; and (d) using the corporate name "Just, Inc."

47.     Just Goods is further entitled to recover from Hampton Creek the actual damages that Just Goods has sustained, is sustaining, and/or is likely to sustain as a result of Hampton Creek's breaches.  Just Goods is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Hampton Creek's breaches.

48.     Additionally, or alternatively, Just Goods is entitled to Hampton Creek's profits earned as a result of its breaches.  Just Goods is presently unable to ascertain the full extent of the profits and benefits Hampton Creek has earned as a result of its breaches.

PLAINTIFF'S SECOND AMENDED COMPLAINT

**THIRD CLAIM**

**Trademark Infringement and False Designation of Origin Pursuant to**

**15 U.S.C. §§ 1114, 1125 and the Common Law – Against Defendants**

49.     Just Goods repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Second Amended Complaint.

50.     Just Goods owns registered and common law rights in the JUST mark as used with food and beverage products.  Just Good's JUST mark is distinctive and strong.

51.     Hampton Creek, at the direction of Mr. Tetrick, has used Just Goods' JUST mark without the consent of Just Goods in a manner that is likely to cause confusion among the relevant consumers as to the affiliation, connection, or association of Hampton Creek with Just Goods, or as to the origin, sponsorship, or approval of Hampton Creek's goods, services, or commercial activities by Just Goods.

52.     As a direct and proximate result of Defendants' wrongful acts, Just Goods has suffered and continues to suffer and/or is likely to suffer damage to its JUST mark, business reputation, and goodwill.  Defendants will continue to use, unless restrained, the JUST mark or other marks confusingly similar thereto and will cause irreparable damage to Just Goods.  Just Goods has no adequate remedy at law and is entitled to an injunction restraining Hampton Creek, its officers, agents, and employees, including Mr. Tetrick, and all persons acting in concert with Hampton Creek, from engaging in further infringing acts.

53.     Just Goods is further entitled to recover from Defendants the actual damages that it sustained and/or is likely to sustain as a result of Defendants' wrongful acts.  Just Goods is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendants' infringement.

54.     Just Goods is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of its wrongful acts.  Just Goods is presently unable to ascertain the extent of the gains, profits, and advantages that Defendants have realized by reason of their infringement.

14

55.     Because of the willful and malicious nature of Defendants' wrongful acts, Just Goods is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117, destruction of the Infringing Products under 15 U.S.C. § 1118, and punitive damages under the common law.

56.     Just Goods is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

### FOURTH CLAIM

**Unfair Competition Pursuant to Cal. Bus. & Prof. Code §§ 17200, *et seq.*,**

**and the Common Law – Against Defendants**

57.     Just Goods repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Second Amended Complaint.

58.     By reason of the foregoing and, specifically, Defendants' infringement and unauthorized use of Just Goods' JUST trademark, Defendants have been, and are, engaged in unlawful practices in violation of §§ 17200 et seq. of the California Bus. & Prof. Code and acts of unfair competition in violation of the common law.

59.     Defendants' acts complained of herein have damaged and will continue to damage Just Goods irreparably.  Just Goods has no adequate remedy at law for these wrongs and injuries. The damage to Just Goods includes harm to its JUST mark, goodwill, and reputation in the marketplace that money cannot compensate.  Just Goods is therefore entitled to:  (a) injunctive relief restraining and enjoining Hampton Creek and its officers, members, agents, servants, and employees, including Mr. Tetrick, and all persons acting thereunder, in concert with, or on their behalf, from using the JUST mark or any mark, name, symbol, design, trade name, trade dress, or logo which is confusingly similar thereto, in connection with the marketing or sale of any goods or services by Hampton Creek; (b) Just Goods' actual damages sustained as a result of Defendants' wrongful acts; (c) an accounting of Defendants' profits earned from their unauthorized use of the JUST mark or any mark, name, symbol, design, trade name, trade dress, or logo confusingly similar thereto; (d) the award of Defendants' unjust profits, as well as sums sufficient to

15

compensate Just Goods for all harm suffered as a result of Defendants' conduct; and (e) punitive damages.

### FIFTH CLAIM

**Cancellation of Trademark Registrations Pursuant to 15 U.S.C. §§ 1064, 1119 –**

**Against Hampton Creek**

60.     Just Goods repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Second Amended Complaint.

61.     Hampton Creek's registered JUST Formative Marks – specifically, JUST MAYO (Reg. No. 4,786,403), JUST COOKIES (Reg. No. 4,778,598), JUST COOKIE DOUGH (Reg. No. 4,801,159), and JUST SCRAMBLE (Reg. No., 5,171,799) – so resemble Just Goods' JUST mark as to be likely, when used on or in connection with the goods identified in the registration, to cause confusion, or to cause mistake, or deceive.

62.     Hampton Creek procured its registration of JUST MAYO by committing fraud on the PTO.  Specifically, Hampton Creek submitted the Contract to the PTO for the specific purpose of convincing the PTO that the bar to registration posed by Just Goods' prior-filed JUST Applications in Classes 29 and 30 should be removed.  By submitting the Contract, Hampton Creek represented to the PTO that it would abide by the terms for coexistence identified therein, and also represented to the PTO that Just Goods did not object to registration of JUST MAYO provided Hampton Creek complied with its obligations under the Contract.  On information and belief, at the time Hampton Creek made these representations, it knew they were false because it had no intention of abiding by the terms of the Contract, as borne out by its recent actions.  The PTO reasonably relied on Hampton Creek's false representations and, accordingly, removed the bar to registration of JUST MAYO posed by Just Goods' prior-filed JUST Application.  As a consequence of Hampton Creek's fraud, Just Goods has been damaged because, among other things, it did not receive the benefit of its bargain for the Contract.

63.     Just Goods' agreement in the Contract to not interfere with the use and registration of the JUST Formative marks is expressly conditioned on "compliance by Hampton Creek of the

obligations, terms and conditions of this [Contract]" and Hampton Creek's use and registration of

the JUST Formative marks "consistent with the terms of this [Contract]."

64.     Alternatively, if the Contract is void, so, too, is any obligation of Just Goods to not

interfere with the use and registration of the JUST Formative marks.  Also, the premise upon

which Hampton Creek convinced the PTO to withdraw the refusal to register the JUST MAYO

application based on Just Goods' prior-filed JUST Applications in Classes 29 and 30 is void.

**PRAYER**

**WHEREFORE,** Just Goods respectfully requests the following relief:

1.     For a declaration that the Contract entered into between Just Goods and Hampton
        Creek is fully valid and enforceable;

2.     For a finding that Hampton Creek has breached the Contract; Defendants have
        violated 15 U.S.C. §§ 1114, 1125 and the common law; and Defendants have
        violated Cal. Bus. & Prof. Code § 17200 and the common law by engaging in
        unlawful, unfair, and fraudulent business practices;

3.     For a finding that Just Goods is the exclusive owner of the JUST mark and that
        such mark is valid, protectable, and distinctive;

4.     For an order permanently enjoining Hampton Creek, its officers, agents, and
        assigns, including Mr. Tetrick, from: (a) using JUST in connection with products
        other than those expressly set forth in the Contract; (b) using the mark JUST alone
        as a brand for its products; (c) using the JUST Formative Marks in any manner or
        format that is materially different from than that which is permitted under the
        express terms by Contract; and (d) using the corporate name "Just, Inc.";

5.     Additionally, or alternatively, for an order:

        a.     Permanently enjoining Hampton Creek, its officers, agents, and assigns,
                including Mr. Tetrick, on a worldwide basis, from:

                i.     Using, promoting, advertising, publicizing, distributing, and posting
                        the JUST mark or any other mark, name, symbol, or logo similar
                        thereto in any manner which is likely to cause confusion or to cause

17

mistake or to deceive persons into the erroneous belief that Hampton Creek, its business, or its goods or services are sponsored, licensed, or endorsed by Just Goods, are authorized by Just Goods, or are connected or affiliated in some way with Just Goods;

ii.     Falsely implying Just Goods' endorsement of Hampton Creeks' business or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Just Goods and from otherwise interfering with or injuring the JUST mark or the goodwill associated with the foregoing;

iii.    Representing or implying that Hampton Goods is in any way sponsored by, affiliated with, or endorsed or licensed by Just Goods; or

iv.     Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 5(i) to (iii) above; and

b.     Requiring Hampton Creek, its officers, agents, and assigns, including Mr. Tetrick, to recall from all distributors, wholesalers, retailers, manufacturers, printers, vendors, jobbers, and the like and deliver to Just Goods all products, printed graphics, promotional materials, labels, boxes, packaging, advertisements, patterns, and any other items, goods, or merchandise in any of their possession, custody, or control bearing or using the JUST mark or any other mark, name, symbol, or logo similar thereto in a manner that is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that Hampton Creek, its business, or its goods or services are sponsored, licensed, or endorsed by Just Goods, are authorized by Just Goods, or are connected or affiliated in some way with Just Goods;

18

1   6.    Ordering the cancellation of Hampton Creek's registrations of JUST MAYO (Reg.

2         No. 4,786,403), JUST COOKIES (Reg. No. 4,778,598), JUST COOKIE DOUGH

3         (Reg. No. 4,801,159), and JUST SCRAMBLE (Reg. No., 5,171,799);

4   7.    Ordering Hampton Creek, its successors, and assigns to change its corporate name

5         to one that does not include the word "Just";

6   8.    Granting an award of damages suffered by Just Goods according to proof at the

7         time of trial;

8   9.    Ordering that Hampton Creek and or Defendants, as applicable, account to Just

9         Goods for any and all profits earned as a result of Hampton Creek's breach of the

10        Contract and/or acts of infringement in violation Just Goods' rights under the

11        Lanham Act, Cal. Bus. & Prof. Code § 17200, et seq., and the common law;

12  10.   Granting an award of three times the amount of compensatory damages and

13        increased profits pursuant to 15 U.S.C. § 1117;

14  11.   Granting an award of punitive damages for the willful and wanton nature of

15        Defendants' aforesaid acts;

16  12.   For pre-judgment interest on any recovery by Just Goods;

17  13.   Granting an award of Just Goods' costs, expenses, and attorneys' fees; and

18  14.   For any such further legal and equitable relief as the Court deems proper.

19

20                                    SHEPPARD MULLIN RICHTER & HAMPTON, LLP

21

22  DATED: March 8, 2018          By:   /s/Jill M. Pietrini

23                                      JILL M. PIETRINI
                                        PAUL A. BOST
24                                      BENJAMIN O. AIGBOBOH
                                        Attorneys for Plaintiff JUST GOODS, INC.
25  SMRH:485580263.2

26

27

28

PLAINTIFF'S SECOND AMENDED COMPLAINT

# EXHIBIT A

## TRADEMARK COEXISTENCE AGREEMENT

THIS TRADEMARK COEXISTENCE AGREEMENT ("Agreement") is entered into as of October 31, 2014 ("Effective Date") by and between Hampton Creek, Inc., a Delaware corporation having a principal place of business at 371 10ᵗʰ Street, San Francisco, California 94103 ("Hampton Creek"), and Just Goods, Inc., a Delaware corporation having a principal place of business at 1800 Century Park East, Suite 1000, c/o Hertz, Lichtenstein & Young, LLP, Los Angeles, California 90067 ("Just Goods"). Hampton Creek and Just Goods may be referred to herein collectively as the "Parties" or each individually as a "Party."

### RECITALS

WHEREAS, Just Goods is the owner of the trademark JUST ("JUST Mark"), including the following trademark applications in the United States ("JUST Applications"):

| Mark | Class and Goods | Serial No. | Filing Date |
|------|-----------------|------------|-------------|
| JUST | **32:** Bottled water, energy drinks, fruit beverages, fruit juice, fruit-flavored beverages, herbal juices, lemonade, soft drinks, sports drinks, vegetable juice, vegetable-fruit juices | 85/724,284 | 9/9/2012 |
| JUST | **30:** Bakery goods, beverages made of coffee, beverages made of tea, candy, cereal based snack food, chewing gum, coffee and tea, condiments, custards, food flavourings, food seasonings, frozen yogurt, grits, ice cream, marinades, mixes for bakery goods, noodles, oatmeal, pasta, puddings, salad dressings, sauce mixes, sauces, seasonings, snack cakes, snack foods, spices, toast | 85/724,282 | 9/9/2012 |
| JUST | **29:** Antipasto, beverages consisting principally of milk, bottled fruits, butter, cheese, dairy-based dips, dairy-based spreads, dried fruits, eggs, fruit and soy based snack food, fruit spreads, fruit-based meal replacement bars, fruit-based organic food bars, jellies and jams, jerky, meat, milk, olive oil, pate, peanut butter, pickles, poultry, prepared nuts, seafood (not live), shakes, sliced meat, snack dips, soups, tofu, vegetable chips, yogurt-based beverages | 85/724,281 | 9/9/2012 |

WHEREAS, Hampton Creek is the owner of the following trademarks incorporating the word JUST ("JUST Formative Marks"), including the following trademark applications in the United States ("Just Formative Applications"):

| Mark | Class and Goods | Serial No. | Filing Date |
|------|-----------------|------------|-------------|
| JUST SCRAMBLE | **29:** Egg substitute | 86/014,923 | 7/19/2013 |
| JUST MAYO | **29:** Vegetable-based spreads<br><br>**30:** Egg- and dairy-free mayonnaise; salad dressing | 86/014,519 | 7/18/2013 |
| JUST COOKIES | **30:** Cookie dough; Cookies; Frozen cookie dough; Gluten-free desserts, namely, cookies; Vegan cookies | 86/282,713 | 5/15/2014 |
| JUST COOKIE DOUGH | **30:** cookie dough; frozen cookie dough | 86/421,107 | 10/10/2014 |

WHEREAS, Hampton Creek objects to the JUST Mark and the JUST Applications and Just Goods objects to the JUST Formative Marks and the JUST Formative Applications ("Dispute");

WHEREAS, on June 8, 2014, Hampton Creek filed a notice of opposition with the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office, Proceeding No. 91-216834 against Just Water, LLC opposing the JUST Applications and later withdrew the opposition on July 11, 2014;

WHEREAS, Just Water, LLC, the applicant of record for the JUST Applications, was merged into Just Goods, Inc. in 2014;

WHEREAS, the Parties, without admitting fault, liability or wrongdoing, wish to resolve any and all claims between them arising out of the Dispute, and to prevent any possible likelihood of confusion from arising among consumers as to their respective trademarks;

NOW THEREFORE, in consideration of the covenants and obligations recited herein, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## TERMS AND CONDITIONS

1.      No Likelihood Of Confusion. Hampton Creek and Just Goods agree and believe that there is no likelihood of confusion, mistake or deception between Hampton Creek's JUST Formative Marks and Just Goods' JUST Mark because, *inter alia*:

1.1      The JUST Mark is not used with the words MAYO, SCRAMBLE, COOKIE DOUGH or COOKIES; and

1.2      The JUST Formative Marks are used with the words MAYO, SCRAMBLE, COOKIE DOUGH and COOKIES with such words being substantially larger in size and font than the word JUST and being the dominant part of such marks.

2.      Covenants To Prevent Likelihood Of Confusion. Hampton Creek and Just Goods hereby acknowledge their mutual belief that confusion is not likely to result for the reasons set forth in Section 1 above. The Parties further acknowledge that it is in their best interests to avoid confusion. Therefore, the Parties agree to take all reasonable measures and precautions to avoid confusion in the marketplace, including:

### Hampton Creek's Obligations:

2.1      Hampton Creek shall only use and may register the mark JUST MAYO for a vegetable-based spread, egg- and dairy-free mayonnaise and salad dressing and the mark JUST SCRAMBLE for an egg substitute and shall not expand its business under the JUST MAYO mark or JUST SCRAMBLE mark or any other mark containing or incorporating the word JUST for any cheese, salt or candy products.

2.2      Hampton Creek shall only use and may register the mark JUST COOKIES for cookie dough; cookies; frozen cookie dough and the mark JUST COOKIE DOUGH for cookie dough and frozen cookie dough.

2.3      Hampton Creek shall not use or seek registration of any other JUST formative marks other than those set forth in Sections 2.1 and 2.2 above.

2.4      Hampton Creek shall not use the mark JUST alone as a brand for any food or beverage products; provided, however, that Hampton Creek shall have the right to use the word "just" in a non-trademark manner, i.e., descriptively or generically.

2.5    Hampton Creek shall only use the JUST Formative Marks substantially in the format currently used and as shown in **Exhibit A** attached hereto, in which the word JUST is stylized, is in lower case font type and is at least fifty percent (50%) smaller in size than the words MAYO, SCRAMBLE, COOKIE and COOKIE DOUGH. Hampton Creek may change the stylization (but not the lower case font type or size relationship) of the word "JUST" shown in **Exhibit A** only upon prior written request to and prior written consent by Just Goods.

Just Goods' Obligations:

2.6    Just Goods shall not use the mark JUST with the words "mayo", "scramble", "cookies" or "cookie dough" as a brand or source identifier; provided, however:

  2.6.1    Just Goods shall have the right to use the words "mayo", "scramble", "cookies" or "cookie dough" in a non-trademark manner, *i.e.*, descriptively or generically; and

  2.6.2    Just Goods shall have the right to use the mark JUST for any food or beverage products.

3.    Just Goods' Consent. Should any of Hampton Creek's applications to register any of the JUST Formative Marks as allowed herein be refused registration based on Just Goods' applications or registrations containing the word JUST and provided compliance by Hampton Creek of the obligations, terms and conditions of this Agreement, Just Goods will provide an appropriate letter of consent to the use and registration of the relevant JUST Formative Mark by Hampton Creek. Just Goods shall take no action to interfere with Hampton Creek's use and registration of the JUST Formative Marks for vegetable-based spread, egg- and dairy-free mayonnaise and salad dressing; egg substitute; cookie dough; cookies; frozen cookie dough, including, but not limited to, instituting any actions or proceedings to enjoin and/or recover damages and costs as a result of such use by Hampton Creek, or commencing any opposition, cancellation, invalidation, or concurrent use proceedings with respect to the registration and use of JUST Formative Marks by Hampton Creek, provided such use and registration is consistent with the terms of this Agreement.

4.    Hampton Creek's Consent. Should any of Just Goods' applications to register the mark JUST be refused registration based on any Hampton Creek JUST Formative application or registration and provided compliance by Just Goods of the obligations, terms and conditions of this Agreement, Hampton Creek will provide an appropriate letter of consent to the use and registration of the mark JUST and any such JUST application. Hampton Creek shall take no action to interfere with Just Goods' use and registration of the mark JUST for any food or beverage products, including, but not limited to, instituting any actions or proceedings to enjoin and/or recover damages and costs as a result of such use by Just Goods, or commencing any opposition, cancellation, invalidation, or concurrent use proceedings with respect to the registration and use of the mark JUST by Just Goods, provided such use and registration is consistent with the terms of this Agreement.

5.    Further Cooperation. The parties shall take any other reasonable steps to ensure that there is no likelihood of confusion between the parties' respective uses of JUST and Hampton Creek's JUST Formative Marks.

6.    Miscellaneous.

  6.1    Survival. The terms and conditions set forth in **Sections 2, 3-4** shall survive termination of this Agreement.

  6.2    Counterparts. This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement binding upon all of the Parties hereto. Signatures to this Agreement may be communicated and delivered by e-mail or facsimile transmission.

SMRH:433698884.4                              -3-

6.3    Costs:  Each Party bears its own costs in connection with the Dispute and with this Agreement.

6.4    Dispute Resolution.  The Parties shall make good faith efforts to resolve any disputes which may arise with respect to this Agreement and with respect to the coexistence of their respective marks.

6.5    Further Documents.  The Parties shall take any further actions and execute any further agreements reasonably needed to carry out the spirit and intent of this Agreement.

6.6    Entire Agreement.  This Agreement constitutes the entire agreement between the Parties relating to the coexistence between the trademarks described herein.  Any oral representations or modifications concerning this Agreement shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

HAMPTON CREEK, INC.                          JUST GOODS, INC.

By: _____                   By: _____

Name:  JOSH TETRICK                          Name: _____

Title:  CEO                                  Title: _____

Date:  10/31/14                              Date: _____

SMRH:433698884.4

6.3    Costs: Each Party bears its own costs in connection with the Dispute and with this Agreement.

6.4    Dispute Resolution. The Parties shall make good faith efforts to resolve any disputes which may arise with respect to this Agreement and with respect to the coexistence of their respective marks.

6.5    Further Documents. The Parties shall take any further actions and execute any further agreements reasonably needed to carry out the spirit and intent of this Agreement.

6.6    Entire Agreement. This Agreement constitutes the entire agreement between the Parties relating to the coexistence between the trademarks described herein. Any oral representations or modifications concerning this Agreement shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

HAMPTON CREEK, INC.                          JUST GOODS, INC.

By: _____             By: _____

Name: _____             Name: _____Grace Jeon_____

Title: _____            Title: _____CEO_____

Date: _____             Date: ____10/31/14_____

SMRH:433698884.4

-4-

## EXHIBIT A

Acceptable Formats for Hampton Creek's JUST Formative Marks:

*just*
**COOKIES**

*just*
**COOKIE DOUGH**

*just*
**MAYO**

*just*
**SCRAMBLE**

# EXHIBIT B

PTO Form 1522 (Rev 11/2007)
OMB No. 0651-0050 (Exp. 07/31/2017)

## Response to Suspension Inquiry or Letter of Suspension

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 86014519 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 103 |
| **MARK SECTION** | |
| **MARK** | http://tsdr.uspto.gov/img/86014519/large |
| **LITERAL ELEMENT** | JUST MAYO |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **OPPOSITION PROCEEDING(S)** | |
| Opposition No(s). 91-216834 has/have been terminated. The applicant hereby requests removal of this application from suspension for further action by the examining attorney. | |
| **COMMENT(S)/REMARK(S)** | |
| Applicant's mark and the registered marks are not likely to be confused given the differences in the goods and the marks themselves. Applicant hereby incorporates the arguments made previously in its 04/30/2014 response to office action. FURTHERMORE, Applicant and registrant have entered into a consent agreement whereby registrant agrees that the marks are not likely to be confused and registrant consents to the registration of the Applicant's mark. See attached Consent Agreement at Section 1. Wherefore, Applicant requests the Examining Attorney withdraw the refusal and approve the mark for publication. | |
| **REMARKS FILE NAME(S)** | |
| **ORIGINAL PDF FILE** | OPR_644714142-104021982_._stence_Agreement_-_Just_Water_and_Hampton_Creek_re_JUST_-....pdf |
| **CONVERTED PDF FILE(S) (6 pages)** | \\TICRS\EXPORT16\IMAGEOUT16\860\145\86014519\xml8\RSI0002.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\860\145\86014519\xml8\RSI0003.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\860\145\86014519\xml8\RSI0004.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\860\145\86014519\xml8\RSI0005.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\860\145\86014519\xml8\RSI0006.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\860\145\86014519\xml8\RSI0007.JPG |
| **SIGNATURE SECTION** | |
| **RESPONSE SIGNATURE** | /CBH 51817/ |
| **SIGNATORY'S NAME** | Chang B. Hong, Esq. |
| **SIGNATORY'S POSITION** | Attorney of record, PA bar member |
| **SIGNATORY'S PHONE NUMBER** | 610-937-5741 |
| **DATE SIGNED** | 11/20/2014 |
| **AUTHORIZED SIGNATORY** | YES |

| FILING INFORMATION SECTION | |
|---|---|
| SUBMIT DATE | Thu Nov 20 10:54:45 EST 2014 |
| TEAS STAMP | USPTO/RSI-XX.XX.XXX.XX-20 141120105445168393-860145 19-500d486a192a4d518b9eb0 e692ce93437f7e8f1528167f1 3797c2c1f1bf2da913-N/A-N/ A-20141120104021982631 |

PTO Form 1822 (Rev 11/2007)
OMB No. 0651-0050 (Exp: 07/31/2017)

### Response to Suspension Inquiry or Letter of Suspension
### To the Commissioner for Trademarks:

Application serial no. **86014519** JUST MAYO(Standard Characters, see http://tsdr.uspto.gov/img/86014519/large) has been amended as follows:
**OPPOSITION PROCEEDING(S)**
Opposition No(s). 91-216834 has/have been terminated. The applicant hereby requests removal of this application from suspension for further action by the examining attorney.
Comment(s)/Remark(s):
Applicant's mark and the registered marks are not likely to be confused given the differences in the goods and the marks themselves. Applicant hereby incorporates the arguments made previously in its 04/30/2014 response to office action. FURTHERMORE, Applicant and registrant have entered into a consent agreement whereby registrant agrees that the marks are not likely to be confused and registrant consents to the registration of the Applicant's mark. See attached Consent Agreement at Section 1. Wherefore, Applicant requests the Examining Attorney withdraw the refusal and approve the mark for publication.
Original PDF file:
OPR_644714142-104021982_._stence_Agreement_-_Just_Water_and_Hampton_Creek_re_JUST_-...pdf
**Converted PDF file(s)** (6 pages)
Opposition File1
Opposition File2
Opposition File3
Opposition File4
Opposition File5
Opposition File6

### Response Suspension Inquiry Signature
Signature: /CBH 51817/    Date: 11/20/2014
Signatory's Name: Chang B. Hong, Esq.
Signatory's Position: Attorney of record, PA bar member
Signatory's Phone Number: 610-937-5741

The signatory has confirmed that he/she is an attorney who is a member in good standing of the bar of the highest court of a U.S. state, which includes the District of Columbia, Puerto Rico, and other federal territories and possessions; and he/she is currently the applicant's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S. attorney or a Canadian attorney/agent not currently associated with his/her company/firm previously represented the applicant in this matter: (1) the applicant has filed or is concurrently filing a signed revocation of or substitute power of attorney with the USPTO; (2) the USPTO has granted the request of the prior representative to withdraw; (3) the applicant has filed a power of attorney appointing him/her in this matter; or (4) the applicant's appointed U.S. attorney or Canadian attorney/agent has filed a power of attorney appointing him/her as an associate attorney in this matter.

Serial Number: 86014519
Internet Transmission Date: Thu Nov 20 10:54:45 EST 2014
TEAS Stamp: USPTO/RSI-XX.XX.XXX.XX-20141120105445168
393-86014519-500d486a192a4d518b9eb0e692c

e93437f7e8f1528167f13797c2c1f1bf2da913-N
/A-N/A-20141120104021982631

## TRADEMARK COEXISTENCE AGREEMENT

THIS TRADEMARK COEXISTENCE AGREEMENT ("Agreement") is entered into as of October 31, 2014 ("Effective Date") by and between Hampton Creek, Inc., a Delaware corporation having a principal place of business at 371 10th Street, San Francisco, California 94103 ("Hampton Creek"), and Just Goods, Inc.,  a Delaware corporation having a principal place of business at 1800 Century Park East, Suite 1000, c/o Hertz, Lichtenstein & Young, LLP, Los Angeles, California 90067 ("Just Goods"). Hampton Creek and Just Goods may be referred to herein collectively as the "Parties" or each individually as a "Party."

## RECITALS

WHEREAS, Just Goods is the owner of the trademark JUST ("JUST Mark"), including the following trademark applications in the United States ("JUST Applications"):

| Mark | Class and Goods | Serial No. | Filing Date |
|------|-----------------|------------|-------------|
| JUST | **32:** Bottled water, energy drinks, fruit beverages, fruit juice, fruit-flavored beverages, herbal juices, lemonade, soft drinks, sports drinks, vegetable juice, vegetable-fruit juices | 85/724,284 | 9/9/2012 |
| JUST | **30:** Bakery goods, beverages made of coffee, beverages made of tea, candy, cereal based snack food, chewing gum, coffee and tea, condiments, custards, food flavourings, food seasonings, frozen yogurt, grits, ice cream, marinades, mixes for bakery goods, noodles, oatmeal, pasta, puddings, salad dressings, sauce mixes, sauces, seasonings, snack cakes, snack foods, spices, toast | 85/724,282 | 9/9/2012 |
| JUST | **29:** Antipasto, beverages consisting principally of milk, bottled fruits, butter, cheese, dairy-based dips, dairy-based spreads, dried fruits, eggs, fruit and soy based snack food, fruit spreads, fruit-based meal replacement bars, fruit-based organic food bars, jellies and jams, jerky, meat, milk, olive oil, pate, peanut butter, pickles, poultry, prepared nuts, seafood (not live), shakes, sliced meat, snack dips, soups, tofu, vegetable chips, yogurt-based beverages | 85/724,281 | 9/9/2012 |

WHEREAS, Hampton Creek is the owner of the following trademarks incorporating the word JUST ("JUST Formative Marks"), including the following trademark applications in the United States ("Just Formative Applications"):

| Mark | Class and Goods | Serial No. | Filing Date |
|------|-----------------|------------|-------------|
| JUST SCRAMBLE | **29:** Egg substitute | 86/014,923 | 7/19/2013 |
| JUST MAYO | **29:** Vegetable-based spreads<br><br>**30:** Egg- and dairy-free mayonnaise; salad dressing | 86/014,519 | 7/18/2013 |
| JUST COOKIES | **30:** Cookie dough; Cookies; Frozen cookie dough; Gluten-free desserts, namely, cookies; Vegan cookies | 86/282,713 | 5/15/2014 |
| JUST COOKIE DOUGH | **30:** cookie dough; frozen cookie dough | 86/421,107 | 10/10/2014 |

WHEREAS, Hampton Creek objects to the JUST Mark and the JUST Applications and Just Goods objects to the JUST Formative Marks and the JUST Formative Applications ("Dispute");

WHEREAS, on June 8, 2014, Hampton Creek filed a notice of opposition with the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office, Proceeding No. 91-216834 against Just Water, LLC opposing the JUST Applications and later withdrew the opposition on July 11, 2014;

WHEREAS, Just Water, LLC, the applicant of record for the JUST Applications, was merged into Just Goods, Inc. in 2014;

WHEREAS, the Parties, without admitting fault, liability or wrongdoing, wish to resolve any and all claims between them arising out of the Dispute, and to prevent any possible likelihood of confusion from arising among consumers as to their respective trademarks;

NOW THEREFORE, in consideration of the covenants and obligations recited herein, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

<u>TERMS AND CONDITIONS</u>

1.      <u>No Likelihood Of Confusion</u>.  Hampton Creek and Just Goods agree and believe that there is no likelihood of confusion, mistake or deception between Hampton Creek's JUST Formative Marks and Just Goods' JUST Mark because, *inter alia*:

1.1     The JUST Mark is not used with the words MAYO, SCRAMBLE, COOKIE DOUGH or COOKIES; and

1.2     The JUST Formative Marks are used with the words MAYO, SCRAMBLE, COOKIE DOUGH and COOKIES with such words being substantially larger in size and font than the word JUST and being the dominant part of such marks.

2.      <u>Covenants To Prevent Likelihood Of Confusion</u>.  Hampton Creek and Just Goods hereby acknowledge their mutual belief that confusion is not likely to result for the reasons set forth in <u>Section 1</u> above.  The Parties further acknowledge that it is in their best interests to avoid confusion.  Therefore, the Parties agree to take all reasonable measures and precautions to avoid confusion in the marketplace, including:

<u>Hampton Creek's Obligations</u>:

2.1     Hampton Creek shall only use and may register the mark JUST MAYO for a vegetable-based spread, egg- and dairy-free mayonnaise and salad dressing and the mark JUST SCRAMBLE for an egg substitute and shall not expand its business under the JUST MAYO mark or JUST SCRAMBLE mark or any other mark containing or incorporating the word JUST for any cheese, salt or candy products.

2.2     Hampton Creek shall only use and may register the mark JUST COOKIES for cookie dough; cookies; frozen cookie dough and the mark JUST COOKIE DOUGH for cookie dough and frozen cookie dough.

2.3     Hampton Creek shall not use or seek registration of any other JUST formative marks other than those set forth in Sections 2.1 and 2.2 above.

2.4     Hampton Creek shall not use the mark JUST alone as a brand for any food or beverage products; provided, however, that Hampton Creek shall have the right to use the word "just" in a non-trademark manner, *i.e.*, descriptively or generically.

SMRH:433698884.4                                        -2-

2.5     Hampton Creek shall only use the JUST Formative Marks substantially in the format currently used and as shown in **Exhibit A** attached hereto, in which the word JUST is stylized, is in lower case font type and is at least fifty percent (50%) smaller in size than the words MAYO, SCRAMBLE, COOKIE and COOKIE DOUGH.  Hampton Creek may change the stylization (but not the lower case font type or size relationship) of the word "JUST" shown in **Exhibit A** only upon prior written request to and prior written consent by Just Goods.

Just Goods' Obligations:

2.6     Just Goods shall not use the mark JUST with the words "mayo", "scramble", "cookies" or "cookie dough" as a brand or source identifier; provided, however:

    2.6.1     Just Goods shall have the right to use the words "mayo", "scramble", "cookies" or "cookie dough" in a non-trademark manner, *i.e.*, descriptively or generically; and

    2.6.2     Just Goods shall have the right to use the mark JUST for any food or beverage products.

3.     Just Goods' Consent.  Should any of Hampton Creek's applications to register any of the JUST Formative Marks as allowed herein be refused registration based on Just Goods' applications or registrations containing the word JUST and provided compliance by Hampton Creek of the obligations, terms and conditions of this Agreement, Just Goods will provide an appropriate letter of consent to the use and registration of the relevant JUST Formative Mark by Hampton Creek.  Just Goods shall take no action to interfere with Hampton Creek's use and registration of the JUST Formative Marks for vegetable-based spread, egg- and dairy-free mayonnaise and salad dressing; egg substitute; cookie dough; cookies; frozen cookie dough, including, but not limited to, instituting any actions or proceedings to enjoin and/or recover damages and costs as a result of such use by Hampton Creek, or commencing any opposition, cancellation, invalidation, or concurrent use proceedings with respect to the registration and use of JUST Formative Marks by Hampton Creek, provided such use and registration is consistent with the terms of this Agreement.

4.     Hampton Creek's Consent.  Should any of Just Goods' applications to register the mark JUST be refused registration based on any Hampton Creek JUST Formative application or registration and provided compliance by Just Goods of the obligations, terms and conditions of this Agreement, Hampton Creek will provide an appropriate letter of consent to the use and registration of the mark JUST and any such JUST application.  Hampton Creek shall take no action to interfere with Just Goods' use and registration of the mark JUST for any food or beverage products, including, but not limited to, instituting any actions or proceedings to enjoin and/or recover damages and costs as a result of such use by Just Goods, or commencing any opposition, cancellation, invalidation, or concurrent use proceedings with respect to the registration and use of the mark JUST by Just Goods, provided such use and registration is consistent with the terms of this Agreement.

5.     Further Cooperation.  The parties shall take any other reasonable steps to ensure that there is no likelihood of confusion between the parties' respective uses of JUST and Hampton Creek's JUST Formative Marks.

6.     Miscellaneous.

6.1     Survival.  The terms and conditions set forth in **Sections 2, 3-4** shall survive termination of this Agreement.

6.2     Counterparts.  This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement binding upon all of the Parties hereto.  Signatures to this Agreement may be communicated and delivered by e-mail or facsimile transmission.

6.3     Costs:  Each Party bears its own costs in connection with the Dispute and with this Agreement.

6.4     Dispute Resolution.  The Parties shall make good faith efforts to resolve any disputes which may arise with respect to this Agreement and with respect to the coexistence of their respective marks.

6.5     Further Documents.  The Parties shall take any further actions and execute any further agreements reasonably needed to carry out the spirit and intent of this Agreement.

6.6     Entire Agreement.  This Agreement constitutes the entire agreement between the Parties relating to the coexistence between the trademarks described herein.  Any oral representations or modifications concerning this Agreement shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.


IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

HAMPTON CREEK, INC.                    JUST GOODS, INC.

By: _____           By: _____

Name: __Josh Tetrick_____             Name: _____

Title: __CEO_____             Title: _____

Date: __10|31|14_____             Date: _____

SMRH:433698884.4

6.3     Costs:  Each Party bears its own costs in connection with the Dispute and with this Agreement.

6.4     Dispute Resolution.  The Parties shall make good faith efforts to resolve any disputes which may arise with respect to this Agreement and with respect to the coexistence of their respective marks.

6.5     Further Documents.  The Parties shall take any further actions and execute any further agreements reasonably needed to carry out the spirit and intent of this Agreement.

6.6     Entire Agreement.  This Agreement constitutes the entire agreement between the Parties relating to the coexistence between the trademarks described herein.   Any oral representations or modifications concerning this Agreement shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.


IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

HAMPTON CREEK, INC.                        JUST GOODS, INC.

By: _____               By: _____

Name: _____                Name:  __Grace . Jeon__

Title: _____              Title:  __CEO__

Date: _____               Date:  __10/31/14__

SMRH:433698884.4

## EXHIBIT A

Acceptable Formats for Hampton Creek's JUST Formative Marks:

*just* **COOKIES**

*just* **COOKIE DOUGH**

*just* **MAYO**

*just* **SCRAMBLE**

EXHIBIT C



ADVERTISEMENT

05.01.17

# Artisanal Branding Grows Up

The darling vegan brand Just by Hampton Creek wants to appeal to Walmart shoppers—without getting shut down by the FDA.



**1/12** Hampton Creek has remade its Just line of products. [Photo: courtesy Hampton Creek]

f

**BY MARK WILSON**

5 MINUTE READ

Josh Tetrick was standing in a Dollar Tree in Oakland, California, when he asked a customer which brand of mayo was best. The woman pointed to a gleaming white jar of Kraft.

But Tetrick asked, "What about the Just Mayo?"—the flagship product of his company Hampton Creek—which sat nearby.



The old line of Just products. [Photo: courtesy Hampton Creek]

"She said, 'No, that's the private-label brand at the Dollar Tree,'" Tetrick recounts. In other words, Just Mayo's craft paper label—a label that had first been X-Acto-knifed, one at a time, for its initial appearance on shelves at Whole Foods—it didn't register as some Brooklyn-inspired, vegan artisanal good to this bargain shopper in Oakland. It looked like the generic stuff sold by a budget retailer.

"That was an important learning for me," says Tetrick. "It shows how important context is in design." And it cemented a hunch, that Hampton Creek, with the lofty, sometimes controversial goal of bringing sustainable, transparent, healthier processed foods to the mainstream consumer, simply didn't make sense where many low-income and middle-class consumers were shopping: Walmart and Dollar Tree.



It's one of many issues that prompted Hampton Creek to revamp its Just brand of mayo, dressings, and cookie dough. Hampton Creek was also grappling with everything from an evolving business model to a scuffle with the FDA over potentially false claims.

So Hampton Creek—having raised $120 million to date, but not yet reporting revenue —brought in designer Sean Wolcott to lead a multiyear redevelopment of the entire Just brand, starting with the packaging. It will begin arriving on store shelves this May.

What you'll notice first is that Just has been moved from a subtle script to a, frankly, more generic sans serif wordmark that ends in a period, "Just."—the largest component of the design. It's an atypical move in the field of food branding, which would generally shrink the greater brand name like "Kraft" while supersizing the franchise "Macaroni and Cheese." That's because the power of these major sub brands of a company like Kraft,

including Oreo, Maxwell House, and Cadbury, aggregate to something far more recognizable than Kraft alone.

f

y

in

✉

Pages of the new 100-plus-page brand identity book. [Photo: courtesy Hampton Creek]

Meanwhile, each item has a photo of its respective food on the cover—but often, sent through a liberal wave of quasi-illustrative post-processing to make a single color pop.

"I would call it photographical treatments, something that didn't look real and didn't look fake, something in the middle," says Wolcott. "We wanted it to look like real food, but sort of abstracting something but where it became half realism, half art." Having studied under famed designer Massimo Vignelli, before making his name designing products across Microsoft, Wolcott lead his team of in-house designers with an almost obsessive approach. Some packages had as many as 500 iterations of photography, color, and design.

But that still doesn't answer the question of the giant "Just." mark—an approach that looks a lot like a generic house brand that might be sold at Target. Indeed, it's the "Just." that reveals how complicated Hampton Creek's competitive strategy has to be in a field where a few conglomerates own almost every brand of food on the shelf.

f
𝕐
in
✉

Notice the prominence of "Just." [Photo: courtesy Hampton Creek]

For one, it offers a way to consolidate the Just line of products. The Krafts of the world are motivated to look smaller than they are, because their size and scope would either terrify or bore many consumers. But Hampton Creek wants to leverage the Just brand as a signifier that can help connect its products with a smaller foothold on the market across a store. And as Tetrick explained, many customers believe that Just Mayo is the entire

company—one event he attended even served his company's cookies labeled "Just Mayo Cookies." By emphasizing Just visually, the company might circumvent that limiting assumption, and expand its fan base out of the mayo and dressing aisle.

The company was also essentially forced to expand Just into something more than a signifier of mayo. Hampton Creek faced a (since dropped) lawsuit from competitor Unilever and a subsequent investigation from the FDA, following its use of "Just Mayo" on a product that was, literally, not traditional mayonnaise because it contained no eggs. Of course, even Tetrick seems to admit that his approach had a certain subversive appeal to shoppers skeptical of eating more ethically, healthily, or green. "If my friends in Alabama see 'Just vegan mayonnaise,' they literally won't buy it," he says.

f
🐦
in
✉

Jewel tones are welcome. [Photo: courtesy Hampton Creek]

But in a face-to-face meeting with the FDA, the FDA made it clear that if Hampton Creek was to keep Just on the label, it had to operate differently on the package than as a modifier—it had to have its own meaning. "They said, 'what's the idea of the name Just, and I said, 'it's fairness, equity, etc.'" Tetrick recounts. "They said, 'That doesn't come

through on the packaging.'" Just had to be defined, to the consumer on the package itself, if it was to stay.

Visually, the new design makes the term "just" less of a modifier, and more of a self-standing brand. On top of that, Just's impossibly broad definition—that seemed ever-changing even in our single conversation with Tetrick—is something that Hampton Creek intends to continue to play with over time. But for now, it's defined as "a moment of justice for everyone" on all goods.

f
v
in
✉

Don't be surprised if you see the "Just." mark on other foods soon. [Photo: courtesy Hampton Creek]

## THE EVEN BIGGER PLAY

Beyond mass appeal and FDA requirements, the new, giant "Just" on packaging gives Hampton Creek one last advantage in its future expansion: It's a brand that can label the company's proprietary ingredients that make their way into the products of other companies. This strategy is relatively unheard of by a startup like Hampton Creek, but it's

a page right out of the playbook of a Kraft, which might pack Oscar Meyer salami and a Capri Sun juice in a box of Lunchables—stacking these three brand equities (all owned by Kraft!) into a single irresistible product.

Currently, Hampton Creek provides an ingredient to General Mills—and it is in discussions with many big food companies to reach similar arrangements. This would allow Just to compete using would-be competitive products as a microphone, and revenue source, for its own brand.

"How do we find a way to reflect the better thing we're providing on their food packaging as well?" Tetrick asks. "You can imagine Pillsbury cookie dough, Pepperidge Farm cookies —is there a simple, clean, understandable mark we could have that gives people the feeling that this product is a little bit better. Not perfect, but a little bit better?"

And Just's new brand may be just that.

ABOUT THE AUTHOR

Mark Wilson is a senior writer at Fast Company. He started Philanthroper.com, a simple way to give back every day. More

## Co.Design Daily Newsletter

YOUR EMAIL ADDRESS                                        SIGN UP

☑ Receive special Fast Company offers                    See All Newsletters

## VIDEO

## Why Hampton Creek Is Making Headlines

May. 9, 2017 at 6:11 PM by Meagan McGinnes

Tweet    Like 20         submit    Share   42

Hampton Creek



Plant-based mayo brand Hampton Creek may be vegan but after some news reports this week, it's got egg on its face.

The San Francisco-based startup's apparent turmoil has been splashed across headlines over the past year after both a run-in with the FDA about the product's marketing and a buyback investigation by the SEC. But this week Hampton Creek is making headlines again amid reported funding struggles and layoffs. Here's everything we know so far about what is going on with Hampton Creek.

# Hampton Creek is having a hard time finding investors.

In March, Hampton Creek CEO Josh Tetrick launched a $150 million raise after the brand announced that it had been valued at greater than $1 billion. However, since beginning the raise months ago, the company has only brought in $7 million, insiders told Bloomberg.

The slow raise was a shift for the brand, which reportedly has raised over $120 million of funding.

Bloomberg speculates that some of the investors may be gun shy due to the reported turmoil surrounding the company. Hampton Creek first faced costly expenses from its lawsuit battle with Unilever in 2014 and faceoff with the FDA in 2015 regarding its use of the term "mayonnaise." It then received federal scrutiny when Bloomberg reported last year that the company hired contractors, going back to 2014, to buy its products from store shelves in large quantities to boost sales.

Though the SEC ultimately decided Hampton Creek had not actually broken the law, the investigation still seems to have impacted the company. Hampton Creek saw losses as high as $10 million a month in 2016, Bloomberg reports. Tetrick has reportedly since been on a cost-cutting streak, narrowing losses to about $4 million in the last month.

Tetrick told reporters in an interview with Fortune that the company has raised funds and is valued at over $1 billion, but he would not disclose the actual amount of capital received. A spokesperson from the company added that the company is not struggling for finances, and disputed the reported $7 million figure. Still, Hampton Creek has yet to release details about what the condiment and cookie dough company has actually raised so far.

## Tetrick fired a bunch of executive-level employees.

One of the ways Tetrick is cutting costs is through layoffs– and a lot of them according to some. Tetrick fired Hampton Creek's CFO, COO and HR Chief last week, according to Bloomberg. Following the cuts, the company's vice president of business affairs put in his own resignation Monday.

These executive-level exits come shortly after the recent departures of the company's head of finance and logistics, and "at least" 11 other senior level members of the leadership team, New York Magazine's food site Grubstreet reports.

"These people made us a better company while they were here," Tetrick wrote in an emailed statement to Bloomberg on Tuesday. "Some changes were made due to structural reasons, and some changes were made due to performance reasons. Out of respect for the individuals who helped build this company, we won't comment further."

In regards to the changes in his management team, told Fortune he's looking for leaders who are "very resilient."

## Erez Simha has been added as the new CFO amid budget cuts.

It seems Erez Simha is one of the "resilient leaders" Tetrick is bringing on to help him write a new chapter for the company, according to Fortune. Simha is replacing Axel Martinez in a newly created joint CFO and COO position.

This is Simha's first foray into food. He previously worked as the COO and CFO at Stratasys, a 3D printing technology company, as well as companies such as Orbotech and Wisebrand Communications.

Still, it is unclear how new much power new hires will have in shaping the direction of the company. Tetrick's leadership style has been questioned in the past, especially after giving himself majority voting power over the company's board in 2015, Bloomberg reports.

## The brand has redone all its packaging.

Changes at Hampton Creek aren't just internal. The company is engaging in a multi-year rebrand to better consolidate its line of products, starting with its packaging, according to Fast Company's Design side, Fast Code Design.

The new design, which will begin arriving on shelves this month, emphasizes the word "Just" and minimizes the product description itself. Tetrick told Fast Code that he hopes the rebranding will better connect his line of products throughout the store.

However, the design created by Sean Wolcott is also the company's effort to please the FDA, which clearly stated that if Hampton Creek was going to stay out of trouble, the "just" on its label needed to have its own meaning instead of acting as a modifier.

"They said, 'What's the idea of the name Just?' And I said, 'It's fairness, equity, etc.,'" Tetrick said to Fast Code. "They said, 'That doesn't come through on the packaging.'"

**0 Comments**                                                        Sort by   Oldest

Add a comment...

Facebook Comments Plugin

## TOP NEWS



**Caulipower Takes Piece of Retail Pie**



**NOSH Live 2017 Highlight Reel: Afternoon Edition**



**NOSH Live 2017 Highlight Reel: Morning Edition**

All News     Submit News

## MARKETPLACE

**Hard Cider & Wine Contract Packaging**



www.bevnet.com



# Expand Your Industry Knov

# Innovation Fueling 15 Most Well-Funded Startups

**Martín Caballero**

*Jun. 1, 2017 at 3:55 pm*

Venture capital firms are hungry for innovation.

A list compiled by market research firm CB Insights of the 15 most well-funded venture capital-backed food and beverage startups (https://www.cbinsights.com/blog/food-beverage-startups-most-well-funded-vc-backed/), which together have raised a total of $1.49 billion, reveals the increasing value placed on brands that are offering healthier choices and disrupting established categories like meat and dairy and innovating with plant-based offerings.



Two out of the top three spots on the list feature startups focusing on using plant-based proteins. Hampton Creek, which markets a line of plant-based egg substitutes and condiments, topped the list with $240 million in total disclosed funding. The San Francisco-based company, which has been mired in controversy in recent months (https://www.projectnosh.com/news/2017/hampton-creek-ceo-talks-lessons-learned-new-chapters) and in the midst of rebranding as "Just", sells its products in over 20,000 stores nationwide.

Impossible Foods, a maker of of animal-free meat substitutes that has captured plenty of media headlines (http://www.newsweek.com/burger-veggie-burger-vegetarianism-impossible-burger-bareburger-616648) as well as investors, ranked third on the list, with $183 million in total disclosed funding. The brand, which completed its most recent funding round last December, is backed by the likes of Khosla Ventures, Bill Gates, GV (formerly Google Ventures) and Horizon Ventures.

There was also room on the list for two companies pushing to expand the cold-pressed juice market in markedly different ways. Counting Coca-Cola, Boulder Brands Investment Group and actor Leonardo DiCaprio among its investors, Suja Life ranked in second place with $196 million in total disclosed funding. Along with several lines of cold-pressed fruit and vegetables juices, the Oceanside, Calif.-based brand has introduced coconut drinking vinegars and probiotic waters in recent years.

Meanwhile, Juicero has taken the opposite approach, allowing consumers to make their own fresh cold-pressed juice at home with its $400 tabletop appliance. Despite weathering criticism following a recent Bloomberg story (https://www.bevnet.com/news/2017/juicero-pressure-internet-wringing) that revealed its fruit and vegetable packets could be squeezed into juice by hand, the company has raised $100 million in total disclosed funding from GV, Kleiner Perkins Caufield & Byers, First Beverage Group, Thrive Capital and others.

Other brands on the list ranged from the boutique — like high-end roastery Blue Bottle Coffee of Oakland, ranked fifth with $116 million in total disclosed funding — to the truly disruptive, like Soylent, the futuristic plant-based meal replacement smoothie that has captured the imagination of Silicon Valley VC firms to the tune of $72 million in total disclosed funding, including $50 million (https://www.bevnet.com/news/2017/soylent-raises-50m-venture-capital-funding) from a Series B financing round led by GV just last month.

Yet most brands on the list share the common theme of using plant-based ingredients to create better-for-you food or drinks. Ripple Foods, makers of plant-based non-dairy milk products, brought in $44 million in total disclosed funding, ranking fourteenth on the list, followed by plant-based foods startup Beyond Meat with $40 million. In beverage, notable names include Body Armor Nutrition, the coconut water-based sports drink led by vitaminwater co-founder Mike Repole, which landed in the number 10 spot with $55 million raised, and Califia Farms, makers of a line of nut milk-based drinks, in the twelfth spot with $50 million.

The brands on the list are supported by a range of investors, ranging from Academy Award-winning actors like DiCaprio and Jared Leto to large-scale VC firms. Kholsa Ventures, GV, Kleiner Perkins Caufield & Byers are all listed as backers for multiple startups included on the list.

# Latest News





**BevNET Live Day Two Recap**



# EXHIBIT D



Musu is my next-door neighbor. She's a mom who wants to feed her kids good food. Musu lives in Liberia and is among the millions of parents who struggle to provide healthy food for their families.

It's a hidden kind of hunger that affects over 2.1 billion people around the world, particularly children and pregnant mothers. This isn't the same as the pictures we see of kids with distended bellies. It's a lack of nutrients, not a lack of food. Rice is food. Potato chips are food. Both are widely available but insufficient to nourish Musu and her family.




The resulting effects on mental and physical development are the difference between realizing one's potential in life–or not. Between becoming football stars, doctors, lawyers, and teachers–or not. Musu's youngest daughter should have the chance to become Liberia's second female president, but as a student in class today, she struggles to process information quickly enough. Her son has the potential to be an extraordinary athlete, but the lack of nutrients is stunting his growth.

We need an approach that ends this enormous justice gap.



The product we're launching this month, Just Power Gari (like oatmeal), is produced by our Liberian partner Kawadah Farms with ingredients sourced locally from small-scale farmers, most of them women. It's priced to be affordable and made to be delicious and nutrient-rich, while guaranteeing that our partner can run a sustainable business.

Over 650 kids are eating Just Power Gari today, and more will be eating it tomorrow. Millions of meals will be served this year.

 

Today, Musu can go to her local open-air market and buy a package of Just Power Gari on her modest daily food budget. Students at the Monrovia Football Academy, just a short walk down the road from her house, are eating a nutritious, delicious breakfast of Just Power Gari every morning. Young women at a girl's academy are eating and laughing, and we hope, learning more about the world they'll someday lead.

What we're doing in Liberia–and soon many countries–is not rocket science, but the simplest approaches are often the most enduring.

*Taylor Quinn*
*February 2018*

Sign in    Join

Jobs    Companies    Salaries

# JU ST

Food Production · San Francisco, CA · 8,974 followers

See jobs

See all 64 employees on LinkedIn →

Overview    Jobs    Life

Interested in jobs at JUST?

View Job openings at JUST

**Keep up with JUST**

See more information about JUST, find and apply to jobs that match your skills, and connect with people to advance your career.

**Join LinkedIn**    **Sign In**

2018
ODYSSEY
Wish available.

HONDA

## About us

Our mission is to build a food system where everyone is eating well. Eating well means eating food that nourishes our bodies. Eating food that strengthens the planet. Eating food that tastes exceptionally good—and is accessible to everyone.

Our technology, which is based upon understanding plants from every corner of the planet, enables consumers, food manufacturers, and the largest retailers around the world to offer better, healthier products, at a more affordable cost.

## Recent update    See all

San Franciso 2018 - Home
https://worldsfairnano.com

16 Likes    2d

**People also viewed**

**Impossible Foods**
Food &amp; Beverages
51-200 employees

**Beyond Meat**
Food &amp; Beverages
51-200 employees

**Memphis Meats**
Food Production
1-10 employees

**gardein™**
Food &amp; Beverages
201-500 employees

**Green Common**
Food &amp; Beverages
51-200 employees

**Finless Foods**
Food &amp; Beverages
1-10 employees

See more

## Employees at JUST

**Cassie Capano**
Director of People Operations
View profile

**Wayne Szeto**
View profile

**Thomas Vialle**
FP&A Director
View profile

**Michael Dorame**
View profile



Talent Manager

**Andrew Noyes**
Senior Director of Communications

View profile

Sign in    Join

**Sign in to find employee connections**

## Recent updates

 **JUST**
8,974 followers

Follow JUST to stay up-to-date with news, articles and jobs.

Follow

 **JUST**
2d

Don't miss our CEO Josh Tetrick speaking at Worlds Fair Nano SF this weekend, March 10-11. And come meet our team at booth #46! Snag tickets before they sell out—https://lnkd.in/gKxBfRM



**San Franciso 2018 - Home**
https://worldsfairnano.com

16 Likes

      

**JUST**
3d

Just Power Gari is cooked and eaten like oatmeal or porridge. It's made primarily of locally-sourced cassava root and fortified with protein, vitamins, and micronutrients for a fully nutritious meal. Learn more—ju.st/garistory

30 Likes



**JUST**
1w

Our Liberian partner Kawadah Farms is now selling nutritious Just Power Gari to local organizations like the Monrovia Football Academy, helping kids there realize their full potential.

Sign in          Join

23 Likes

Join Linkedin to see all updates and stay up-to-date with news, articles and jobs at JUST.

**Join LinkedIn**          Sign In

Sign in    Join

© 2017   About   User Agreement   Privacy Policy   Cookie Policy   Copyright Policy   Brand Policy   Manage Subscription   Community Guidelines   Language ⌄

**CALIFORNIA STATE COURT PROOF OF SERVICE**

Just Goods, Inc. v. Hampton Creek, Inc. - Case No. CGC-17-559876

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and not a party to the action. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111.

On April 5, 2018, I served the following document(s): **SECOND AMENDED COMPLAINT**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**Dennis Wilson**  
**Kilpatrick Townsend & Stockton LLP**  
**Two Embarcadero Center, Suite 1900**  
**San Francisco, CA 94111**

Email: dwilson@kilpatricktownsend.com  
*Attorneys for Defendant Hampton Creek, Inc.*

The documents were served by the following means:

☒ (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and:

☒ Placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope or package with the postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 5, 2018, at San Francisco, California.

_____  
Devin McGahey

SMRH:485918309.1

-1-

SMRH:485918309.1                                                      SECOND AMENDED COMPLAINT

EXHIBIT 2



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HAMPTON CREEK, INC., a Delaware Corporation, and DOES 1–10,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JUST GOODS, INC., a Delaware Corporation

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* **CGC 17-559876** |

SAN FRANCISCO SUPERIOR COURT
Civic Center Courthouse
400 McAllister St.
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JONATHAN S. PINK, SB# 179685 DANIEL R. LEWIS, SB# 260106 GRIFFEN J. THORNE, SB# 306152
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000, Los Angeles, California 90071 Telephone 213.250.1800

| DATE: | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* JUN 3 0 2017 **DEPUTY CLERK** | *(Secretario)* **BOWMAN LIU** | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

---

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

FAXED

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   JONATHAN S. PINK, SB# 179685
2    E-Mail: Jonathan.Pink@lewisbrisbois.com
   DANIEL R. LEWIS, SB# 260106
3    E-Mail: Daniel.Lewis@lewisbrisbois.com
   GRIFFEN J. THORNE, SB# 306152
4    E-Mail: Griffen.Thorne@lewisbrisbois.com
   633 West 5th Street, Suite 4000
5  Los Angeles, California 90071
   Telephone:   213.250.1800
6  Facsimile:   213.250.7900

7  Attorneys for Plaintiff
   JUST GOODS, INC., a Delaware Corporation
8

**F I L E D**
Superior Court of California
County of San Francisco

JUN 3 0 2017

CLERK OF THE COURT
BY: _____
    BOWMAN LIU

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF SAN FRANCISCO

11  JUST GOODS, INC., a Delaware Corporation,   CASE NO.  **CGC – 1 7 – 5 5 9 8 7 6**

12            Plaintiff,                         **COMPLAINT FOR DECLARATORY
                                                 RELIEF**
13       vs.

14  HAMPTON CREEK, INC., a Delaware
    Corporation, and DOES 1–10,
15
              Defendants.
16

17

18         Plaintiff JUST GOODS, INC. ("Just Goods"), by and through its undersigned counsel, hereby

19  complains and alleges against as follows:

20                         **NATURE OF THE CASE**

21         1.     This action arises out of Defendant Hampton Creek, Inc.'s ("Hampton Creek") refusal to

22  comply with its contractual obligations.  In 2014, Just Goods and Hampton Creek executed a

23  TRADEMARK COEXISTENCE AGREEMENT (the "Coexistence Agreement") that permitted each

24  party to use marks containing the word "JUST" on goods in commerce, albeit with certain limitations.

25  Just Goods was the senior user and applicant for its JUST marks, one of which has since registered, and

26  the remaining of which are expected to register within the next several months.

27         2.     After executing the Coexistence Agreement, Hampton Creek, encountered legal and/or

28  marketing difficulties and decided to expand its sales efforts beyond what was permitted in the

4852-9877-3833.1
                                              1
                        COMPLAINT FOR DECLARATORY RELIEF

1  Coexistence Agreement.  To that end, Hampton Creek proposed an amendment to the Coexistence
2  Agreement, which Just Goods did not accept.

3      3.     Up until this time, Hampton Creek had treated the Coexistence Agreement as fully valid
4  and enforceable.  However, as soon as Just Goods declined to amend the Coexistence Agreement,
5  Hampton Creek began to accuse Just Goods of fraud in the inducement of the Coexistence Agreement.
6  Thereafter, Hampton Creek began moving forward with its marketing and sales efforts in violation of
7  the Coexistence Agreement and in violation of Just Goods' trademark rights.  Its justification for the
8  same is its contention that the Coexistence Agreement is void due to mistake or fraud.  As a result, Just
9  Goods seeks a judgment from this court deeming the Coexistence Agreement to be valid and
10  enforceable.

11                                    **PARTIES**

12     4.     Plaintiff Just Goods is a Delaware corporation with its principal place of business
13  located at 311 West 43rd Street, New York, New York 10036.

14     5.     Just Goods is informed and believes that Defendant Hampton Creek is a Delaware
15  corporation with its principal place of business located at 371 10th Street, San Francisco, California
16  94103.

17     6.     Defendants DOES 1 through 10, inclusive, are other parties not yet identified who have
18  engaged in or contributed to the engagement in one or more of the wrongful practices alleged herein.
19  The true names, whether corporate, individual or otherwise, of DOES 1 through 10, inclusive, are
20  presently unknown to Just Goods, which therefore sues said Defendants by such fictitious names, and
21  will seek leave to amend this Complaint to show their true names and capacities when the same have
22  been ascertained.

23                              **GENERAL ALLEGATIONS**

24     7.     In 2012, Just Goods filed an intent-to-use ("ITU") trademark application on a variety of
25  food and beverage products.  The underlying marks sought to be registered included variations of food and
26  beverage products containing the word JUST before the name of the product.

27     8.     Just Goods obtained trademark registration 4,914,140 on March 8, 2016 (the "Just Good
28  Trademark Registration").

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4852-9877-3833.1
                              2

9. In 2013 and 2014, respectively Hampton Creek applied for trademark registrations on several composite marks, including, JUST SCRAMBLE, JUST MAYO, JUST COOKIES, and JUST COOKIE DOUGH.

10. In 2014, Hampton Creek filed a trademark opposition action against Just Goods before the Trademark Trial and Appeal Board ("TTAB") in the United States Patent and Trademark Office ("USPTO"). Notably, Hampton Creek had the ability at that time to argue before the TTAB, or conduct discovery in connection with its opposition, that Just Goods' proposed uses of the JUST mark as set forth in its ITUs were not bona fide at the time Just Goods filed its trademark applications. However, Hampton Creek did not make such an argument to the TTAB, nor did it conduct such discovery in connection with that trademark opposition proceeding.

11. On October 31, 2014, after Hampton Creek had initiated the trademark opposition action, Just Goods and Hampton Creek entered into the Coexistence Agreement. The Coexistence Agreement permitted both parties to use "JUST" in certain contexts and with certain restrictions. A copy of the Coexistence Agreement is attached hereto as **Exhibit A** and incorporated by reference herein.

12. Specifically, in Sections 2.1-2.5 of the Coexistence Agreement, Hampton Creek expressly agreed to limit its use of JUST to a small number of specific goods, to always use the mark in a certain script and font, and to always use JUST in connection with the words "Hampton Creek."

13. On information and belief, after the execution of the Coexistence Agreement, Hampton Creek received a warning letter from the United States Food and Drug Administration ("FDA"). On information and belief, this FDA letter resulted in, or materially contributed to, Hampton Creek's inability to market as previously planned the goods it identified in Coexistence Agreement. On information and belief, Hampton Creek could no longer capture the market share and/or investment for which it had hoped at the time it entered into the Coexistence Agreement. Accordingly, around this same time, Hampton Creek's CEO publicly stated that Hampton Creek would change course and expand its use of JUST for business reasons. To that end, in late 2015, Hampton Creek informed Just Goods that Hampton Creek would like to use the mark JUST in a manner prohibited by the Coexistence Agreement.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4852-9877-3833.1                                   3
COMPLAINT FOR DECLARATORY RELIEF

14.     Just Goods did not agree to Hampton Creek's proposed expanded use of the JUST mark, nor did it agree to Hampton Creek's proposed changes to the Coexistence Agreement in order to facilitate that proposed expanded use.  Thus, Hampton Creek was faced with the decision either to honor the Coexistence Agreement, or to assert a purported justification for setting it aside.  It chose the latter.

15.     Notably, at all times before Just Goods chose not to accept Hampton Creek's proposed expanded use of the JUST mark, both Just Goods and Hampton Creek treated the Coexistence Agreement as fully valid and enforceable.  However, in mid-2016, Hampton Creek's counsel accused Just Goods of having lacked a bona fide intent to use the JUST mark at the time Just Goods filed its ITUs as identified in the Coexistence Agreement.

16.     With respect to the foregoing, Hampton Creek argued that Just Goods either defrauded and/or led Hampton Creek to mistakenly believe that Hampton Creek had no choice but to enter into the Coexistence Agreement because Just Goods was going to obtain registered marks for all classes/goods identified within the Coexistence Agreement.

17.     The Coexistence Agreement contains no such representation.  The Coexistence Agreement contains within the recitals, but not within the terms, a list of ITU applications then being advanced by each of the parties.  The Coexistence Agreement does not contain any affirmative representation by either party that their respective ITUs would ultimately mature into registered marks. The Coexistence Agreement likewise does not contain any affirmative representation that the parties' respective ITUs were unassailable before the TTAB or otherwise.

18.     The Coexistence Agreement does not contain any contractual provision that altered or terminated the parties' contractual limitations with respect to their use of JUST, or which permitted one party to use the marks underlying the other party's ITU applications in the event the latter party abandoned its trademark applications, or in the event the USPTO denied that party's trademark applications.

19.     Section 6.1 of the Coexistence Agreement states that the limitations on Hampton Creek's use of JUST as set forth in Sections 2.1-2.5 of that agreement "shall survive termination of this Agreement."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

20.     The Coexistence Agreement was fully integrated and the product of negotiations by the parties, each of whom was represented by counsel.

21.     Just Goods substantially performed all of its material obligations under the terms of the Coexistence Agreement that parties entered into on October 31, 2014. However, in 2016, based on its contention that the Coexistence Agreement was void or voidable, Hampton Creek refused to abide by that agreement and publicly represented that it (Hampton Creek) would market goods in breach of that Coexistence Agreement.

22.     In or about May 2017, Hampton Creek began using a JUST mark on retail goods that are likely to cause confusion in the minds of consumers about the source of those products, and/or are within Just Goods' natural zone of expansion. Hampton Creek's use of a JUST mark on such retail goods exceeds the use permitted under the terms of the Coexistence Agreement.

23.     Specifically, as set forth industry publications, true and correct copies of which are collectively attached hereto as Exhibit B, Hampton Creek remade its line of products in that "Just has been moved from a subtle script to a . . . wordmark that ends in a period, 'Just.' – the largest component of the design." (See **Exhibit B**, "Artisanal Branding Grows Up," 5/1/17.) "The new design, which will begin arriving on shelves this month, emphasizes the word "Just" and minimizes the product description itself." (**Exhibit B**, "Why Hampton Creek is Making Headlines" 5/9/17.)

24.     This same redesign – replacing the contractually approved, subtle script with a larger, bolder and more simply written "Just" that exceeds the use permitted of that mark under the terms of the parties' Coexistence Agreement – is now prominently displayed as well on Hampton Creek's retail website (www.eatjust.com), and on its LinkedIn home page. (True and correct copies of these pages are collectively attached hereto as **Exhibit C**.)

25.     Upon information and belief, Hampton Creek has engaged in the conduct alleged herein described, in whole or in part, in an effort to gain an unfair competitive advantage over Just Goods. According to one industry publication, Hampton Creek's redesign was done to give "the 'just' on its label . . . its own meaning instead of acting as a modifier." (See "Why Hampton Creek is Making Headlines," **Exhibit B**, *supra*.)

/ / /


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4852-9877-3833.1

## FIRST CLAIM

### Declaratory Relief

26.     Just Goods repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

27.     An actual controversy has arisen and now exists relating to the validity and enforceability of the Coexistence Agreement. Specifically, Just Goods contends that the Coexistence Agreement is fully valid and enforceable, while Hampton Creek maintains that the Coexistence Agreement is void and unenforceable due to fraud or mistake.

28.     Further an actual controversy has arisen and now exists relating to the parties' respective obligations pursuant to the Coexistence Agreement. Specifically, Just Goods contends that Hampton Creek remains obligated to comply with the terms and conditions of the Coexistence Agreement, while Hampton Creek maintains that it has no legal obligation to comply with the Coexistence Agreement, and may set that agreement aside as if it had never existed.

29.     Just Goods respectfully requests that the Court enter a declaratory judgment that the Coexistence Agreement is fully valid and enforceable, and therefore that the parties thereto (Just Goods and Hampton Creek) are legally obligated to abide by its terms.

## PRAYER

**WHEREFORE**, Just Goods respectfully requests the following relief:

1.      For a declaration that the Coexistence Agreement entered into between Just Goods and Hampton Creek is fully valid and enforceable; and,

2.      For any such further legal and equitable relief as the Court deems proper.


DATED: June 30, 2017                               LEWIS BRISBOIS BISGAARD & SMITH LLP


By: _____
JONATHAN S. PINK
DANIEL R. LEWIS
GRIFFEN J. THORNE
Attorneys for Plaintiff JUST GOODS, INC.

# Exhibit A

## TRADEMARK COEXISTENCE AGREEMENT

THIS TRADEMARK COEXISTENCE AGREEMENT ("Agreement") is entered into as of October 31, 2014 ("Effective Date") by and between Hampton Creek, Inc., a Delaware corporation having a principal place of business at 371 10th Street, San Francisco, California 94103 ("Hampton Creek"), and Just Goods, Inc., a Delaware corporation having a principal place of business at 1800 Century Park East, Suite 1000, c/o Hertz, Lichtenstein & Young, LLP, Los Angeles, California 90067 ("Just Goods"). Hampton Creek and Just Goods may be referred to herein collectively as the "Parties" or each individually as a "Party."

### RECITALS

WHEREAS, Just Goods is the owner of the trademark JUST ("JUST Mark"), including the following trademark applications in the United States ("JUST Applications"):

| Mark | Class and Goods | Serial No. | Filing Date |
|------|-----------------|------------|-------------|
| JUST | 32: Bottled water, energy drinks, fruit beverages, fruit juice, fruit-flavored beverages, herbal juices, lemonade, soft drinks, sports drinks, vegetable juice, vegetable-fruit juices | 85/724,284 | 9/9/2012 |
| JUST | 30: Bakery goods, beverages made of coffee, beverages made of tea, candy, cereal based snack food, chewing gum, coffee and tea, condiments, custards, food flavourings, food seasonings, frozen yogurt, grits, ice cream, marinades, mixes for bakery goods, noodles, oatmeal, pasta, puddings, salad dressings, sauce mixes, sauces, seasonings, snack cakes, snack foods, spices, toast | 85/724,282 | 9/9/2012 |
| JUST | 29: Antipasto, beverages consisting principally of milk, bottled fruits, butter, cheese, dairy-based dips, dairy-based spreads, dried fruits, eggs, fruit and soy based snack food, fruit spreads, fruit-based meal replacement bars, fruit-based organic food bars, jellies and jams, jerky, meat, milk, olive oil, pate, peanut butter, pickles, poultry, prepared nuts, seafood (not live), shakes, sliced meat, snack dips, soups, tofu, vegetable chips, yogurt-based beverages | 85/724,281 | 9/9/2012 |

WHEREAS, Hampton Creek is the owner of the following trademarks incorporating the word JUST ("JUST Formative Marks"), including the following trademark applications in the United States ("Just Formative Applications"):

| Mark | Class and Goods | Serial No. | Filing Date |
|------|-----------------|------------|-------------|
| JUST SCRAMBLE | 29: Egg substitute | 86/014,923 | 7/19/2013 |
| JUST MAYO | 29: Vegetable-based spreads<br><br>30: Egg- and dairy-free mayonnaise; salad dressing | 86/014,519 | 7/18/2013 |
| JUST COOKIES | 30: Cookie dough; Cookies; Frozen cookie dough; Gluten-free desserts, namely, cookies; Vegan cookies | 86/282,713 | 5/15/2014 |
| JUST COOKIE DOUGH | 30: cookie dough; frozen cookie dough | 86/421,107 | 10/10/2014 |

WHEREAS, Hampton Creek objects to the JUST Mark and the JUST Applications and Just Goods objects to the JUST Formative Marks and the JUST Formative Applications ("Dispute");

WHEREAS, on June 8, 2014, Hampton Creek filed a notice of opposition with the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office, Proceeding No. 91-216834 against Just Water, LLC opposing the JUST Applications and later withdrew the opposition on July 11, 2014;

WHEREAS, Just Water, LLC, the applicant of record for the JUST Applications, was merged into Just Goods, Inc. in 2014;

WHEREAS, the Parties, without admitting fault, liability or wrongdoing, wish to resolve any and all claims between them arising out of the Dispute, and to prevent any possible likelihood of confusion from arising among consumers as to their respective trademarks;

NOW THEREFORE, in consideration of the covenants and obligations recited herein, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

<u>TERMS AND CONDITIONS</u>

1.      <u>No Likelihood Of Confusion</u>.  Hampton Creek and Just Goods agree and believe that there is no likelihood of confusion, mistake or deception between Hampton Creek's JUST Formative Marks and Just Goods' JUST Mark because, *inter alia*:

1.1      The JUST Mark is not used with the words MAYO, SCRAMBLE, COOKIE DOUGH or COOKIES; and

1.2      The JUST Formative Marks are used with the words MAYO, SCRAMBLE, COOKIE DOUGH and COOKIES with such words being substantially larger in size and font than the word JUST and being the dominant part of such marks.

2.      <u>Covenants To Prevent Likelihood Of Confusion</u>.  Hampton Creek and Just Goods hereby acknowledge their mutual belief that confusion is not likely to result for the reasons set forth in <u>Section 1</u> above.  The Parties further acknowledge that it is in their best interests to avoid confusion.  Therefore, the Parties agree to take all reasonable measures and precautions to avoid confusion in the marketplace, including:

<u>Hampton Creek's Obligations</u>:

2.1      Hampton Creek shall only use and may register the mark JUST MAYO for a vegetable-based spread, egg- and dairy-free mayonnaise and salad dressing and the mark JUST SCRAMBLE for an egg substitute and shall not expand its business under the JUST MAYO mark or JUST SCRAMBLE mark or any other mark containing or incorporating the word JUST for any cheese, salt or candy products.

2.2      Hampton Creek shall only use and may register the mark JUST COOKIES for cookie dough; cookies; frozen cookie dough and the mark JUST COOKIE DOUGH for cookie dough and frozen cookie dough.

2.3      Hampton Creek shall not use or seek registration of any other JUST formative marks other than those set forth in Sections 2.1 and 2.2 above.

2.4      Hampton Creek shall not use the mark JUST alone as a brand for any food or beverage products; provided, however, that Hampton Creek shall have the right to use the word "just" in a non-trademark manner, *i.e.*, descriptively or generically.

2.5     Hampton Creek shall only use the JUST Formative Marks substantially in the format currently used and as shown in **Exhibit A** attached hereto, in which the word JUST is stylized, is in lower case font type and is at least fifty percent (50%) smaller in size than the words MAYO, SCRAMBLE, COOKIE and COOKIE DOUGH. Hampton Creek may change the stylization (but not the lower case font type or size relationship) of the word "JUST" shown in **Exhibit A** only upon prior written request to and prior written consent by Just Goods.

Just Goods' Obligations:

2.6     Just Goods shall not use the mark JUST with the words "mayo", "scramble", "cookies" or "cookie dough" as a brand or source identifier; provided, however:

2.6.1    Just Goods shall have the right to use the words "mayo", "scramble", "cookies" or "cookie dough" in a non-trademark manner, *i.e.*, descriptively or generically; and

2.6.2    Just Goods shall have the right to use the mark JUST for any food or beverage products.

3.     <u>Just Goods' Consent</u>. Should any of Hampton Creek's applications to register any of the JUST Formative Marks as allowed herein be refused registration based on Just Goods' applications or registrations containing the word JUST and provided compliance by Hampton Creek of the obligations, terms and conditions of this Agreement, Just Goods will provide an appropriate letter of consent to the use and registration of the relevant JUST Formative Mark by Hampton Creek. Just Goods shall take no action to interfere with Hampton Creek's use and registration of the JUST Formative Marks for vegetable-based spread, egg- and dairy-free mayonnaise and salad dressing; egg substitute; cookie dough; cookies; frozen cookie dough, including, but not limited to, instituting any actions or proceedings to enjoin and/or recover damages and costs as a result of such use by Hampton Creek, or commencing any opposition, cancellation, invalidation, or concurrent use proceedings with respect to the registration and use of JUST Formative Marks by Hampton Creek, provided such use and registration is consistent with the terms of this Agreement.

4.     <u>Hampton Creek's Consent</u>. Should any of Just Goods' applications to register the mark JUST be refused registration based on any Hampton Creek JUST Formative application or registration and provided compliance by Just Goods of the obligations, terms and conditions of this Agreement, Hampton Creek will provide an appropriate letter of consent to the use and registration of the mark JUST and any such JUST application. Hampton Creek shall take no action to interfere with Just Goods' use and registration of the mark JUST for any food or beverage products, including, but not limited to, instituting any actions or proceedings to enjoin and/or recover damages and costs as a result of such use by Just Goods, or commencing any opposition, cancellation, invalidation, or concurrent use proceedings with respect to the registration and use of the mark JUST by Just Goods, provided such use and registration is consistent with the terms of this Agreement.

5.     <u>Further Cooperation</u>. The parties shall take any other reasonable steps to ensure that there is no likelihood of confusion between the parties' respective uses of JUST and Hampton Creek's JUST Formative Marks.

6.     <u>Miscellaneous</u>.

6.1     <u>Survival</u>.   The terms and conditions set forth in **Sections 2, 3-4** shall survive termination of this Agreement.

6.2     <u>Counterparts</u>.   This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement binding upon all of the Parties hereto.   Signatures to this Agreement may be communicated and delivered by e-mail or facsimile transmission.

6.3     Costs:  Each Party bears its own costs in connection with the Dispute and with this Agreement.

6.4     Dispute Resolution.  The Parties shall make good faith efforts to resolve any disputes which may arise with respect to this Agreement and with respect to the coexistence of their respective marks.

6.5     Further Documents.  The Parties shall take any further actions and execute any further agreements reasonably needed to carry out the spirit and intent of this Agreement.

6.6     Entire Agreement.  This Agreement constitutes the entire agreement between the Parties relating to the coexistence between the trademarks described herein.   Any oral representations or modifications concerning this Agreement shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.


IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

HAMPTON CREEK, INC.                     JUST GOODS, INC.

By: _____              By: _____

Name: __Josh Tetrick__                  Name: _____

Title: __CEG__                          Title: _____

Date: __10/31/14__                      Date: _____


SMRH:433698884.4

6.3     Costs:  Each Party bears its own costs in connection with the Dispute and with this Agreement.

6.4     Dispute Resolution.  The Parties shall make good faith efforts to resolve any disputes which may arise with respect to this Agreement and with respect to the coexistence of their respective marks.

6.5     Further Documents.  The Parties shall take any further actions and execute any further agreements reasonably needed to carry out the spirit and intent of this Agreement.

6.6     Entire Agreement.  This Agreement constitutes the entire agreement between the Parties relating to the coexistence between the trademarks described herein.  Any oral representations or modifications concerning this Agreement shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.


IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

HAMPTON CREEK, INC.                  JUST GOODS, INC.

By: _____      By: _____

Name: _____      Name: _____Grace Jeon_____

Title: _____      Title: _____CEO_____

Date: _____      Date: ___10/31/14_____

SMRH:433698884.4

## EXHIBIT A

Acceptable Formats for Hampton Creek's JUST Formative Marks:

*just*
**COOKIES**

*just*
**COOKIE DOUGH**

*just*
**MAYO**

*just*
**SCRAMBLE**

# Exhibit B

# CO.DESIGN



NEWSLETTERSUBSCRIBE

Cities
Graphics
Innovation By Design
Interactive
Product
Spaces

05.01.17

# Artisanal Branding Grows Up

The darling vegan brand Just by Hampton Creek wants to appeal to Walmart shoppers—without getting shut down by the FDA.



**1/12** Hampton Creek has remade its Just line of products. [Photo: courtesy Hampton Creek]

f

**BY MARK WILSON**

5 MINUTE READ

Josh Tetrick was standing in a Dollar Tree in Oakland, California, when he asked a customer which brand of mayo was best. The woman pointed to a gleaming white jar of Kraft.

But Tetrick asked, "What about the Just Mayo?"–the flagship product of his company Hampton Creek–which sat nearby.



The old line of Just products. [Photo: courtesy Hampton Creek]

"She said, 'No, that's the private-label brand at the Dollar Tree,'" Tetrick recounts. In other words, Just Mayo's craft paper label–a label that had first been X-Acto-knifed, one at a time, for its initial appearance on shelves at Whole Foods–it didn't register as some Brooklyn-inspired, vegan artisanal good to this bargain shopper in Oakland. It looked like the generic stuff sold by a budget retailer.

"That was an important learning for me," says Tetrick. "It shows how important context is in design." And it cemented a hunch, that Hampton Creek, with the lofty, sometimes controversial goal of bringing sustainable, transparent, healthier processed foods to the mainstream consumer, simply didn't make sense where many low-income and middle-class consumers were shopping: Walmart and Dollar Tree.

in



It's one of many issues that prompted Hampton Creek to revamp its Just brand of mayo, dressings, and cookie dough. Hampton Creek was also grappling with everything from an evolving business model to a scuffle with the FDA over potentially false claims.

So Hampton Creek–having raised $120 million to date, but not yet reporting revenue –brought in designer Sean Wolcott to lead a multiyear redevelopment of the entire Just brand, starting with the packaging. It will begin arriving on store shelves this May.

What you'll notice first is that Just has been moved from a subtle script to a, frankly, more generic sans serif wordmark that ends in a period, "Just."–the largest component of the design. It's an atypical move in the field of food branding, which would generally shrink the greater brand name like "Kraft" while supersizing the franchise "Macaroni and Cheese." That's because the power of these major sub brands of a company like Kraft,

including Oreo, Maxwell House, and Cadbury, aggregate to something far more recognizable than Kraft alone.

f

𝕍

in

✉

Pages of the new 100-plus-page brand identity book. [Photo: courtesy Hampton Creek]

Meanwhile, each item has a photo of its respective food on the cover—but often, sent through a liberal wave of quasi-illustrative post-processing to make a single color pop.

"I would call it photographical treatments, something that didn't look real and didn't look fake, something in the middle," says Wolcott. "We wanted it to look like real food, but sort of abstracting something but where it became half realism, half art." Having studied under famed designer Massimo Vignelli, before making his name designing products across Microsoft, Wolcott lead his team of in-house designers with an almost obsessive approach. Some packages had as many as 500 iterations of photography, color, and design.

But that still doesn't answer the question of the giant "Just." mark–an approach that looks a lot like a generic house brand that might be sold at Target. Indeed, it's the "Just." that reveals how complicated Hampton Creek's competitive strategy has to be in a field where a few conglomerates own almost every brand of food on the shelf.

f
y
in
✉

Notice the prominence of "Just." [Photo: courtesy Hampton Creek]

For one, it offers a way to consolidate the Just line of products. The Krafts of the world are
motivated to look smaller than they are, because their size and scope would either
terrify or bore many consumers. But Hampton Creek wants to leverage the Just brand as
a signifier that can help connect its products with a smaller foothold on the market across
a store. And as Tetrick explained, many customers believe that Just Mayo is the entire

company—one event he attended even served his company's cookies labeled "Just Mayo Cookies." By emphasizing Just visually, the company might circumvent that limiting assumption, and expand its fan base out of the mayo and dressing aisle.

The company was also essentially forced to expand Just into something more than a signifier of mayo. Hampton Creek faced a (since dropped) lawsuit from competitor Unilever and a subsequent investigation from the FDA, following its use of "Just Mayo" on a product that was, literally, not traditional mayonnaise because it contained no eggs. Of course, even Tetrick seems to admit that his approach had a certain subversive appeal to shoppers skeptical of eating more ethically, healthily, or green. "If my friends in Alabama see 'Just vegan mayonnaise,' they literally won't buy it," he says.

f
y
in
✉

Jewel tones are welcome. [Photo: courtesy Hampton Creek]

But in a face-to-face meeting with the FDA, the FDA made it clear that if Hampton Creek was to keep Just on the label, it had to operate differently on the package than as a modifier—it had to have its own meaning. "They said, 'what's the idea of the name Just, and I said, 'it's fairness, equity, etc.'" Tetrick recounts. "They said, 'That doesn't come

through on the packaging.'" Just had to be defined, to the consumer on the package itself, if it was to stay.

Visually, the new design makes the term "just" less of a modifier, and more of a self-standing brand. On top of that, Just's impossibly broad definition–that seemed ever-changing even in our single conversation with Tetrick–is something that Hampton Creek intends to continue to play with over time. But for now, it's defined as "a moment of justice for everyone" on all goods.

f
y
in
✉

Don't be surprised if you see the "Just." mark on other foods soon. [Photo: courtesy Hampton Creek]

## THE EVEN BIGGER PLAY

Beyond mass appeal and FDA requirements, the new, giant "Just" on packaging gives Hampton Creek one last advantage in its future expansion: It's a brand that can label the company's proprietary ingredients that make their way into the products of other companies. This strategy is relatively unheard of by a startup like Hampton Creek, but it's

a page right out of the playbook of a Kraft, which might pack Oscar Meyer salami and a Capri Sun juice in a box of Lunchables—stacking these three brand equities (all owned by Kraft!) into a single irresistible product.

Currently, Hampton Creek provides an ingredient to General Mills—and it is in discussions with many big food companies to reach similar arrangements. This would allow Just to compete using would-be competitive products as a microphone, and revenue source, for its own brand.

"How do we find a way to reflect the better thing we're providing on their food packaging as well?" Tetrick asks. "You can imagine Pillsbury cookie dough, Pepperidge Farm cookies —is there a simple, clean, understandable mark we could have that gives people the feeling that this product is a little bit better. Not perfect, but a little bit better?"

And Just's new brand may be just that.

---

**ABOUT THE AUTHOR**

Mark Wilson is a senior writer at Fast Company. He started Philanthroper.com, a simple way to give back every day. More

---

## Co.Design Daily Newsletter

YOUR EMAIL ADDRESS

SIGN UP

☑ Receive special Fast Company offers

See All Newsletters

---

# VIDEO

## Why Hampton Creek Is Making Headlines

May. 9, 2017 at 6:11 PM by Meagan McGinnes

Tweet    | Like 20 |         |  ▲ ▼  submit |    | **Share** |  42

**Hampton Creek**



Plant-based mayo brand Hampton Creek may be vegan but after some news reports this week, it's got egg on its face.

The San Francisco-based startup's apparent turmoil has been splashed across headlines over the past year after both a run-in with the FDA about the product's marketing and a buyback investigation by the SEC. But this week Hampton Creek is making headlines again amid reported funding struggles and layoffs. Here's everything we know so far about what is going on with Hampton Creek.

# Hampton Creek is having a hard time finding investors.

In March, Hampton Creek CEO Josh Tetrick launched a $150 million raise after the brand announced that it had been valued at greater than $1 billion. However, since beginning the raise months ago, the company has only brought in $7 million, insiders told Bloomberg.

The slow raise was a shift for the brand, which reportedly has raised over $120 million of funding.

Bloomberg speculates that some of the investors may be gun shy due to the reported turmoil surrounding the company. Hampton Creek first faced costly expenses from its lawsuit battle with Unilever in 2014 and faceoff with the FDA in 2015 regarding its use of the term "mayonnaise." It then received federal scrutiny when Bloomberg reported last year that the company hired contractors, going back to 2014, to buy its products from store shelves in large quantities to boost sales.

Though the SEC ultimately decided Hampton Creek had not actually broken the law, the investigation still seems to have impacted the company. Hampton Creek saw losses as high as $10 million a month in 2016, Bloomberg reports. Tetrick has reportedly since been on a cost-cutting streak, narrowing losses to about $4 million in the last month.

Tetrick told reporters in an interview with Fortune that the company has raised funds and is valued at over $1 billion, but he would not disclose the actual amount of capital received. A spokesperson from the company added that the company is not struggling for finances, and disputed the reported $7 million figure. Still, Hampton Creek has yet to release details about what the condiment and cookie dough company has actually raised so far.

## Tetrick fired a bunch of executive-level employees.

One of the ways Tetrick is cutting costs is through layoffs– and a lot of them according to some. Tetrick fired Hampton Creek's CFO, COO and HR Chief last week, according to Bloomberg. Following the cuts, the company's vice president of business affairs put in his own resignation Monday.

These executive-level exits come shortly after the recent departures of the company's head of finance and logistics, and "at least" 11 other senior level members of the leadership team, New York Magazine's food site <u>Grubstreet</u> reports.

"These people made us a better company while they were here," Tetrick wrote in an emailed statement to Bloomberg on Tuesday. "Some changes were made due to structural reasons, and some changes were made due to performance reasons. Out of respect for the individuals who helped build this company, we won't comment further."

In regards to the changes in his management team, told Fortune he's looking for leaders who are "very resilient."

# Erez Simha has been added as the new CFO amid budget cuts.

It seems Erez Simha is one of the "resilient leaders" Tetrick is bringing on to help him write a new chapter for the company, according to Fortune. Simha is replacing Axel Martinez in a newly created joint CFO and COO position.

This is Simha's first foray into food. He previously worked as the COO and CFO at Stratasys, a 3D printing technology company, as well as companies such as Orbotech and Wisebrand Communications.

Still, it is unclear how new much power new hires will have in shaping the direction of the company. Tetrick's leadership style has been questioned in the past, especially after giving himself majority voting power over the company's board in 2015, Bloomberg reports.

# The brand has redone all its packaging.

Changes at Hampton Creek aren't just internal. The company is engaging in a multi-year rebrand to better consolidate its line of products, starting with its packaging, according to Fast Company's Design side, <u>Fast Code Design</u>.

The new design, which will begin arriving on shelves this month, emphasizes the word "Just" and minimizes the product description itself. Tetrick told Fast Code that he hopes the rebranding will better connect his line of products throughout the store.

However, the design created by Sean Wolcott is also the company's effort to please the FDA, which clearly stated that if Hampton Creek was going to stay out of trouble, the "just" on its label needed to have its own meaning instead of acting as a modifier.

"They said, 'What's the idea of the name Just?' And I said, 'It's fairness, equity, etc.,'" Tetrick said to Fast Code. "They said, 'That doesn't come through on the packaging.'"

**0 Comments**

Sort by   Oldest

Add a comment...

Facebook Comments Plugin

## TOP NEWS


**Caulipower Takes Piece of Retail Pie**


**NOSH Live 2017 Highlight Reel: Afternoon Edition**


**NOSH Live 2017 Highlight Reel: Morning Edition**

All News    Submit News

## MARKETPLACE

**Hard Cider & Wine Contract Packaging**



www.bevnet.com



# Expand Your Industry Knov

# Innovation Fueling 15 Most Well-Funded Startups

**Martín Caballero**

*Jun. 1, 2017 at 3:55 pm*

Venture capital firms are hungry for innovation.

A list compiled by market research firm CB Insights of the 15 most well-funded venture capital-backed food and beverage startups (https://www.cbinsights.com/blog/food-beverage-startups-most-well-funded-vc-backed/), which together have raised a total of $1.49 billion, reveals the increasing value placed on brands that are offering healthier choices and disrupting established categories like meat and dairy and innovating with plant-based offerings.



Two out of the top three spots on the list feature startups focusing on using plant-based proteins. Hampton Creek, which markets a line of plant-based egg substitutes and condiments, topped the list with $240 million in total disclosed funding. The San Francisco-based company, which has been mired in controversy in recent months (https://www.projectnosh.com/news/2017/hampton-creek-ceo-talks-lessons-learned-new-chapters) and in the midst of rebranding as "Just", sells its products in over 20,000 stores nationwide.

Impossible Foods, a maker of of animal-free meat substitutes that has captured plenty of media headlines (http://www.newsweek.com/burger-veggie-burger-vegetarianism-impossible-burger-bareburger-616648) as well as investors, ranked third on the list, with $183 million in total disclosed funding. The brand, which completed its most recent funding round last December, is backed by the likes of Khosla Ventures, Bill Gates, GV (formerly Google Ventures) and Horizon Ventures.

There was also room on the list for two companies pushing to expand the cold-pressed juice market in markedly different ways. Counting Coca-Cola, Boulder Brands Investment Group and actor Leonardo DiCaprio among its investors, Suja Life ranked in second place with $196 million in total disclosed funding. Along with several lines of cold-pressed fruit and vegetables juices, the Oceanside, Calif.-based brand has introduced coconut drinking vinegars and probiotic waters in recent years.

Meanwhile, Juicero has taken the opposite approach, allowing consumers to make their own fresh cold-pressed juice at home with its $400 tabletop appliance. Despite weathering criticism following a recent Bloomberg story (https://www.bevnet.com/news/2017/juicero-pressure-internet-wringing) that revealed its fruit and vegetable packets could be squeezed into juice by hand, the company has raised $100 million in total disclosed funding from GV, Kleiner Perkins Caufield & Byers, First Beverage Group, Thrive Capital and others.

Other brands on the list ranged from the boutique — like high-end roastery Blue Bottle Coffee of Oakland, ranked fifth with $116 million in total disclosed funding — to the truly disruptive, like Soylent, the futuristic plant-based meal replacement smoothie that has captured the imagination of Silicon Valley VC firms to the tune of $72 million in total disclosed funding, including $50 million (https://www.bevnet.com/news/2017/soylent-raises-50m-venture-capital-funding) from a Series B financing round led by GV just last month.

Yet most brands on the list share the common theme of using plant-based ingredients to create better-for-you food or drinks. Ripple Foods, makers of plant-based non-dairy milk products, brought in $44 million in total disclosed funding, ranking fourteenth on the list, followed by plant-based foods startup Beyond Meat with $40 million. In beverage, notable names include Body Armor Nutrition, the coconut water-based sports drink led by vitaminwater co-founder Mike Repole, which landed in the number 10 spot with $55 million raised, and Califia Farms, makers of a line of nut milk-based drinks, in the twelfth spot with $50 million.

The brands on the list are supported by a range of investors, ranging from Academy Award-winning actors like DiCaprio and Jared Leto to large-scale VC firms. Kholsa Ventures, GV, Kleiner Perkins Caufield & Byers are all listed as backers for multiple startups included on the list.

## Latest News



**BevNET Live Day Two Recap**



# Exhibit C



●●●● Verizon 🤝     8:07 AM     ↑ ⚡ 94% ▭▸

‹   Q **Hampton Creek**

just.

# Hampton Creek

Food & Beverages

San Francisco · 7,474 followers

| See jobs | + Follow |

Overview     **Jobs**     Life

## About us

Hampton Creek is bringing healthier and more affordable food to everyone, everywhere. Our technology, which is based upon understanding plants from every corner of the planet, enables consumers, food manufacturers, and the largest ret…


Home


My Network


Messaging


Notifications


Jobs

http://www.eatjust.com/en-us



CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
JONATHAN S. PINK, SB# 179685 DANIEL R. LEWIS, SB# 260106
GRIFFEN J. THORNE, SB# 306152
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000, Los Angeles, California 90071
TELEPHONE NO.: 213.250.1800          FAX NO.:
ATTORNEY FOR (Name): Plaintiff JUST GOODS, INC.

**FOR COURT USE ONLY**

**F I L E D**
Superior Court of California
County of San Francisco

**JUN 3 0 2017**

CLERK OF THE COURT
BY: _____
BOWMAN LY   Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN FRANCISCO**
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS: Same
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME: JUST GOODS, INC.v. HAMPTON CREEK, INC., ET AL.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: **CGC-17-559876** |
|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder   Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☒ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. ☐ monetary b. ☒ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify): 1
5. This case ☐ is ☒ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case.
Date: June 30, 2017
Jonathan S. Pink
_____                    ►    _____
(TYPE OR PRINT NAME)                                             (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]               **CIVIL CASE COVER SHEET**               Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT 3

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:**    **NOV-29-2017**

**TIME:**    **10:30AM**

**PLACE:**    **Department 610**
        **400 McAllister Street**
        **San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

---

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

---

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.  **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

> **IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
> (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3869

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

EXHIBIT 4

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*<br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>JONATHAN S. PINK, ESQ. (179685)<br>633 W. FIFTH STREET 39TH FL. MAILROOM<br>LOS ANGELES, CA 90071<br>    TELEPHONE NO: 714-545-9200    FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>    ATTORNEY FOR *(Name)*:  Plaintiff | FOR COURT USE ONLY<br><br>ELECTRONICALLY<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**07/26/2017**<br>Clerk of the Court<br>BY: EDWARD SANTOS<br>Deputy Clerk |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO<br>  STREET ADDRESS:  400 McALLISTER STREET<br>  MAILING ADDRESS:<br>  CITY AND ZIP CODE:  SAN FRANCISCO, 94102<br>  BRANCH NAME:  SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO- CIVIC CENTER<br>    COURTHOUSE |
|---|

| PLAINTIFF / PETITIONER:  JUST GOODS, INC., a Delaware Corporation<br>DEFENDANT / RESPONDENT:  HAMPTON CREEK, INC., a Delaware Corporation | CASE NUMBER:<br>CGC-17-559876 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>40277-2 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   - a. [X] summons
   - b. [ ] complaint
   - c. [ ] Alternative Dispute Resolution (ADR) package
   - d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   - e. [ ] cross-complaint
   - f. [X] other *(specify documents)*:   COMPLAINT FOR DECLARATORY RELIEF , CIVIL CASE COVER SHEET, NOTICE TO PLAINTIFF
3. a. Party served *(specify name of party as shown on documents served)*:
      HAMPTON CREEK, INC., a Delaware Corporation
   - b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      WAYNE SZETO, VICE PRESIDENT
4. Address where the party was served:
   2000 FOLSOM STREET, SAN FRANCISCO, CA 94110
5. I served the party *(check proper box)*
   - a. [X] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:  Wednesday, July, 12 2017     (2) at *(time)*:   12:20 PM
   - b. [ ] by substituted service. On *(date)*:                    at *(time)*:                    I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      - (1) [ ] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      - (2) [ ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      - (3) [ ] (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      - (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
         from *(city)*:                    or [ ] a declaration of mailing is attached.
      - (5) [ ] I attach a declaration of diligence stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: JUST GOODS, INC., a Delaware Corporation | CASE NUMBER: |
|---|---|
| DEFENDANT / RESPONDENT: HAMPTON CREEK, INC., a Delaware Corporation | CGC-17-559876 |

5.  c.  ☐  by mail and acknowledgment of receipt of service. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1)  on *(date):*                    (2)  from *(city):*
   (3)  ☐  with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
   (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)
   d.  ☐  by other means *(specify means of service and authorizing code section):*

      ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
   a.  ☐  as an individual defendant.
   b.  ☐  as the person sued under the fictitious name of *(specify):*
   c.  ☐  as occupant.
   d.  ☒  On behalf of *(specify):*  HAMPTON CREEK, INC., a Delaware Corporation
      under the following Code of Civil Procedure section:
      ☒  416.10 (corporation)                    ☐  415.95 (business organization, form unknown)
      ☐  416.20 (defunct corporation)            ☐  416.60 (minor)
      ☐  416.30 (joint stock company/association) ☐  416.70 (ward or conservatee)
      ☐  416.40 (association or partnership)      ☐  416.90 (authorized person)
      ☐  416.50 (public entity)                  ☐  415.46 (occupant)
      ☐  other:

7.  Person who served papers
   a.  Name:                Andy Esquer
   b.  Address:             600 W. Santa Ana Blvd., Suite #101, Santa Ana, CA. 92701
   c.  Telephone number:    714-541-1110
   d.  The fee for service was:  $105.54
   e.  I am:
      (1)  ☐  not a registered California process server.
      (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).
      (3)  ☒  a registered California process server:
         (i)  ☐  owner  ☐  employee  ☒  independent contractor
         (ii)  Registration No:  2013-0001009
         (iii)  County:  San Francisco County

8.  ☒  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   or
9.  ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  07/19/2017

Andy Esquer

_____
(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

_____
(SIGNATURE)

EXHIBIT 5

RAOUL KENNEDY (SBN 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:    (650) 470.4500
Facsimile:    (650) 470.4570
Email:        Raoul.kennedy@skadden.com

Attorneys for HAMPTON CREEK, INC.

ELECTRONICALLY
F I L E D
Superior  Court of California,
County of San Francisco

08/11/2017
Clerk of the Court
BY:ROSSALY DELAVEGA
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| JUST GOODS, INC., a Delaware Corporation, | Case No. CGC-17-559876 |
| Plaintiff, | **ANSWER TO COMPLAINT FOR DECLARATORY RELIEF** |
| v. | |
| HAMPTON CREEK, INC., a Delaware Corporation, and DOES 1-10, | |
| Defendants. | |

1      Defendant Hampton Creek, Inc. ("Hampton Creek" or "Defendant") for its Answer to the

2   June 30, 2017 Complaint for Declaratory Relief (the "Complaint"), alleges as follows:

3                                    **NATURE OF THE CASE**

4      1.      Defendant denies the allegations of paragraph 1 of the Complaint, except admits

5   that on or about October 31, 2014 Plaintiff Just Goods, Inc. ("JGI") and Hampton Creek entered

6   into an agreement styled as a "Trademark Coexistence Agreement" (the "TCA"), a copy of which

7   is attached to the Complaint as Exhibit A thereto, and respectfully refers to Court to said document

8   for its contents.

9      2.      Defendant denies the allegations of paragraph 2 of the Complaint, except admits

10   that at various times after the execution of the TCA Hampton Creek proposed that the parties

11   renegotiate the TCA, to which proposal JGI did not agree.

12     3.      Defendant denies the allegations of paragraph 3 of the Complaint, except admits

13   that JGI seeks a judgment from this Court deeming the TCA to be valid and enforceable.

14                                        **PARTIES**

15     4.      Defendant denies knowledge or information sufficient to form a belief as to the truth

16   of the allegations of paragraph 4 of the Complaint.

17     5.      Defendant admits the allegations of paragraph 5 of the Complaint.

18     6.      Defendant denies the allegations of paragraph 6 of the Complaint, except admits

19   that the Complaint names 'DOES 1-10" as purported defendants.

20                                 **GENERAL ALLEGATIONS**

21     7.      Defendant denies the allegations of paragraph 7 of the Complaint, except admits

22   that on September 9, 2012, JGI filed with the United States Patent and Trademark Office ("PTO")

23   three intent-to-use ("ITU") trademark applications covering 70 food and beverage products.  More

24   specifically, ITU Serial Number 85/724,281 identified 31 products in International Class 29 (the

25   "Class 29 ITU"), ITU Serial Number 85/724,282 identified 28 products in International Class 30

26   (the "Class 30 ITU"), and ITU Serial Number 85/724,284 identified 11 products in International

27   Class 32 (the "Class 32 ITU", and collectively with the Class 29 ITU and the Class 30 ITU, the

28   "JGI ITUs").

ANSWER TO COMPLAINT

8.      Defendant admits the allegations of paragraph 8 of the Complaint, and alleges further that trademark registration 4,914,140 covered only a single product, bottled water, in International Class 32.

9.      Defendant denies the allegations of paragraph 9 of the Complaint, except admits that Hampton Creek filed the following trademark applications on the following dates: on July 18, 2013 Hampton Creek filed Serial Number 86/014,519 for vegetable-based spreads in International Class 29 and for egg- and dairy-free mayonnaise and salad dressing in International Class 30 ("JUST MAYO"); on July 19, 2013 Hampton Creek filed Serial Number 86/014,923 for egg substitute in International Class 29 ("JUST SCRAMBLE"); on May 15, 2014 Hampton Creek filed Serial Number 86/282,713 for cookies, gluten-free desserts, namely, cookies, and vegan cookies in International Class 30 ("JUST COOKIES"); and on October 10, 2014 Hampton Creek filed Serial Number 86/421,107 for cookie dough and frozen cookie dough in International Class 30 ("JUST COOKIE DOUGH").

10.     Defendant denies the allegations of paragraph 10 of the Complaint, except admits that on June 8, 2014, Hampton Creek filed a Notice of Opposition at the Trademark Trial and Appeal Board ("TTAB") regarding the JGI ITUs (the "Opposition Action"), and respectfully refers the Court to the Notice of Opposition for its contents.  Defendant further admits that no discovery was conducted in the Opposition Action.

11.     Defendant denies the allegations of paragraph 11 of the Complaint, except admits that the TCA is attached to the Complaint as Exhibit A thereto and respectfully refers the Court to the TCA for its terms.

12.     Defendant denies the allegations of paragraph 12 of the Complaint, and respectfully refers the Court to the TCA for its terms.

13.     Defendant denies the allegation of paragraph 13 of the Complaint, except admits that the U.S. Food and Drug Administration sent a warning letter dated August 12, 2015 to Hampton Creek and respectfully refers the Court to said letter for its contents.

14.     Defendant denies the allegations of paragraph 14 of the Complaint, except admits that JGI and Hampton Creek did not reach agreement on changes to the TCA.

15.     Defendant denies the allegations of paragraph 15 of the Complaint, except admits that in a letter dated June 28, 2016, in response to protest letters sent by outside counsel for JGI, counsel for Hampton Creek explained why the TCA was void and unenforceable, thus rescinding the TCA.

16.     Defendant denies the allegations of paragraph 16 of the Complaint, except admits that counsel for Hampton Creek in a letter dated June 28, 2016 advised counsel for JGI that the TCA was void and unenforceable, thus rescinding the TCA.

17.     Defendant denies the allegations of paragraph 17 of the Complaint, and respectfully refers the Court to the TCA for its terms.

18.     Defendant denies the allegations of paragraph 18 of the Complaint, and respectfully refers the Court to the TCA for its terms.

19.     Defendant denies the allegations of paragraph 19 of the Complaint, and respectfully refers the Court to the TCA for its terms.

20.     Defendant denies the allegations of paragraph 20 of the Complaint, except admits that the parties to the TCA were represented by counsel, and respectfully refers the Court to the TCA for its terms.

21.     Defendant denies the allegations of paragraph 21 of the Complaint.

22.     Defendant denies the allegations of paragraph 22 of the Complaint.

23.     Defendant denies the allegations of paragraph 23 of the Complaint, and respectfully refers the Court to the documents in Exhibit B to the Complaint for their contents.

24.     Defendant denies the allegations of paragraph 24 of the Complaint, and respectfully refers the Court to the documents in Exhibit C to the Complaint for their contents.

25.     Defendant denies the allegations of paragraph 25 of the Complaint.

## FIRST CLAIM

### Declaratory Relief

26.     Defendant repeats and realleges its factual assertions set forth above in paragraphs 1-25.

27.     Paragraph 27 of the Complaint contains legal conclusions to which no response is

1  necessary, except Defendant admits that an actual controversy has arisen relating to the validity
2  and enforceability of the TCA.

3       28.    Paragraph 28 of the Complaint contains legal conclusions to which no response is
4  necessary, except Defendant admits that an actual controversy has arisen relating to the parties'
5  respective obligations, if any, pursuant to the TCA.

6       29.    Paragraph 29 of the Complaint contains only allegations concerning relief requested
7  by Plaintiff to which no response is necessary.

8                          **FIRST AFFIRMATIVE DEFENSE**
9                            **(Fraud in the Inducement)**

10      30.    Defendant repeats and realleges its factual assertions set forth above in paragraphs
11 1-29.

12      31.    The TCA is unenforceable because it was procured by JGI's fraud, and thus
13 voidable, and was rescinded by Hampton Creek by at least June, 2016.

14                             **JGI's Fraud on the PTO**

15      32.    Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), allows an applicant to file for
16 a trademark registration covering a mark which the applicant has not yet used in commerce, if that
17 applicant "has a bona fide intention, under circumstances showing the good faith of such
18 [applicant], to use a trademark in commerce . . . ." *Id.*

19      33.    When JGI filed the JGI ITU applications on September 9, 2012, it was required to
20 affirm that it had a bona fide intention to use the JUST mark in commerce on or in connection with
21 each of the goods identified in the three applications.

22      34.    Each of the JGI ITUs included a declaration from outside trademark counsel for JGI
23 stating that all statements in the ITUs were true to the best of her knowledge, including the
24 statement regarding JGI's bona fide intent to use.

25      35.    On September 18, 2012, the JGI ITUs were amended to add a declaration from
26 Miguel Melendez stating on behalf of JGI that the facts set forth in the three ITU applications were
27 true.

28      36.    With respect to the Class 29 ITU and the Class 30 ITU, said intent-to-use

---
4

1  declarations were false and fraudulent, and constituted fraud on the PTO, in that JGI in fact did not

2  at the time of the declarations have a good faith intent to use any of the items identified in the Class

3  29 ITU or the Class 30 ITU.  Rather, these two ITU filings represented a "wish-list" of speculative

4  uses for the JUST mark, with JGI seeking to block other companies from acquiring rights in the

5  JUST mark on a broad variety of food and beverage products for several years while JGI attempted

6  to start a bottled water business.

7       37.     Upon information and belief, one purpose of JGI's fraudulent filings with the PTO

8  was to advance JGI's efforts to secure funding for its bottled-water business.

9       38.     Crediting the truth of the declarations of good faith intent-to-use, on November 11,

10  2014 the PTO granted notices of allowance for the three JGI ITUs.  These notices gave JGI three

11  years from that date to file a statement of use and an example showing that JGI was using the JUST

12  mark on goods covered by the JGI ITUs.  Thus, JGI had a priority date of September 9, 2012 for all

13  70 items.

14       39.     In order to maintain its priority date, JGI was required every six months to file a

15  request to extend the time to file a statement of use.  Thus, on May 4, 2015, October 1, 2015, May

16  9, 2016, November 7, 2016, and April 27, 2017, JGI filed with the PTO requests to extend the time

17  to file a statement of use for the three JGI ITUs.

18       40.     For each such extension request, JGI, through its outside trademark counsel,

19  declared that JGI continued to have a bona fide intent to use the mark JUST for each of the 59

20  products listed in the Class 29 and Class 30 ITUs.  Each of these sworn statements were fraudulent,

21  in that JGI in reality had no good faith intent to use the JUST mark in association with the 59 items

22  identified in these two ITUs.

23                 **Negotiation of the TCA and JGI's Fraud Against Hampton Creek**

24       41.     On October 31, 2013, the PTO issued an office action with respect to Hampton

25  Creek's JUST MAYO trademark application, initially refusing registration of that mark on the

26  ground of likelihood of confusion with JGI's Class 29 and Class 30 ITUs.  However, the PTO did

27  not refuse registration on the basis of likelihood of confusion with the Class 32 ITU.

28       42.     After receiving the office action regarding its JUST MAYO trademark application,

Hampton Creek initiated the Opposition Action against the JGI ITUs.

43.     Shortly after Hampton Creek initiated the Opposition Action, the parties began negotiating the terms of what would become the TCA.  During these negotiations, JGI relied on both its ownership of the JGI ITUs as well as the priority dates of those applications which, it asserted, established its superior rights to use the JUST trademark on the 59 food items in International Classes 29 and 30.

44.     The material importance of JGI's priority date is expressly reflected in the TCA itself, which lists such priority date in the Recitals, with the representation concerning JGI that it was "the owner of the trademark JUST, including . . . trademark applications in the United States." Said statements constituted a representation by JGI that the JGI ITUs were valid and not fraudulent.

45.     JGI was aware during the TCA negotiations that its claim of priority posed a serious risk to the business and survival of Hampton Creek, because the priority date of the JGI ITUs was earlier than Hampton Creek's use of the JUST mark on a product arguably covered by the Class 29 ITU and the Class 30 ITU, and Hampton Creek, a start-up, had launched its first product under a JUST mark.

46.     In view of the foregoing, Hampton Creek reasonably concluded that it had no choice but to accept JGI's terms, no matter how unfavorable, in order to protect Hampton Creek's start-up business.

47.     In agreeing to the terms of the TCA, Hampton Creek relied on JGI having valid ITU rights on the products listed in the Class 29 and Class 30 ITUs because JGI had a good faith bona fide intent to use the JUST mark on the goods covered by those ITUs.

48.     JGI knew at the time of the TCA negotiations that it did not have valid ITU rights in the Class 29 and Class 30 ITUs because it did not have a good faith bona fide intent to use the JUST mark on the goods covered by those ITUs, but did not disclose this information.

**Hampton Creek's Discovery of JGI's Fraud and Rescission of the TCA**

49.     In early 2016, Josh Tetrick, Chief Executive Officer of Hampton Creek, reached out to Grace Jeon, then-Chief Executive Officer of JGI, to discuss Hampton Creek's plans for

1  expansion and possible renegotiations of the terms of the TCA.

2      50.    By that point, JGI had launched just one product out of the 70 total covered by the
3  JGI ITUs—bottled water, covered by the Class 32 ITU, and Mr. Tetrick surmised that JGI had
4  decided that it would not be expanding into any of the Class 29 or Class 30 items.

5      51.    In the course of their conversation, Ms. Jeon confirmed Mr. Tetrick's surmise,
6  advising him that JGI was not likely to launch any additional products in the near future, and that if
7  it did, such products would be in the beverage category, *i.e.*, products covered by the Class 32 ITU.

8      52.    By letter dated April 15, 2016, counsel for JGI demanded strict compliance with the
9  TCA from Hampton Creek.  In a letter dated May 13, 2016, JGI counsel threatened a lawsuit in
10  Los Angeles federal court for non-compliance.  In preparing to respond to JGI threats, Hampton
11  Creek assessed available information, and concluded that it had been defrauded into entering into
12  the TCA.

13      53.    During the course of subsequent discussions, Hampton Creek specifically asked JGI
14  for evidence of its good faith intent to use the JUST mark on any of the goods covered by the Class
15  29 and Class 30 ITUs.  In response, JGI never produced any satisfactory evidence of such good
16  faith intent.

17      54.    JGI made material misrepresentations to Hampton Creek concerning JGI trademark
18  rights knowing that such representations were false, with intent to induce Hampton Creek to rely
19  on those misrepresentations, and Hampton Creek did, in fact, rely to its detriment on those
20  misrepresentations in entering into the TCA.

21      55.    Accordingly, the TCA was procured by fraud and was therefore voidable, and was
22  rescinded by Hampton Creek no later than June, 2016.

23                    **SECOND AFFIRMATIVE DEFENSE**

24      56.    Defendant repeats and realleges its factual assertions set forth above in paragraphs
25  1-55.

26      57.    JGI first became aware of Hampton Creek's intentions to expand its use of its Just
27  mark in early 2016.

28      58.    However, JGI waited almost a year and a half before bringing the instant lawsuit.

1   59.   By virtue of JGI's delay, under the doctrine of laches JGI is prevented from seeking

2 injunctive relief or damages against Hampton Creek.

3

4                                **PRAYER FOR RELIEF**

5   WHEREFORE, Defendant respectfully request that the Court enter an Order:

6   1.   Denying all of the relief requested by Plaintiff;

7   2.   Declaring that the TCA entered into between JGI and Hampton Creek is void and

8 unenforceable, and was properly rescinded by Hampton Creek;

9   3.   Awarding costs and reasonable attorneys' fees of this lawsuit to Defendant; and

10   4.   Granting Defendant all other and further relief that the Court deems just and proper.

11

12

13 DATED:  August 10, 2017          By:  /s/ Raoul Kennedy
                                         Raoul Kennedy
14                                       SKADDEN, ARPS, SLATE, MEAGHER
                                          & FLOM LLP
15                                       525 University Avenue
                                         Palo Alto, CA  94301
16                                       Telephone:  (650) 470-4500
                                         Facsimile:   (650) 470-4570
17                                       Email:    Raoul.kennedy@skadden.com

18
                                         *Attorneys for Defendants*
19                                       *Hampton Creek, Inc.*

20

21

22

23

24

25

26

27

28

ANSWER TO COMPLAINT

EXHIBIT 6

RAOUL KENNEDY (SBN 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:     (650) 470.4500
Facsimile:     (650) 470.4570
Email:          Raoul.kennedy@skadden.com

Attorneys for HAMPTON CREEK, INC.

ELECTRONICALLY
F I L E D
*Superior Court of California,*
*County of San Francisco*

**08/11/2017**
Clerk of the Court
BY:ROSSALY DELAVEGA
Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JUST GOODS, INC., a Delaware Corporation, | Case No. CGC-17-559876 |
| Plaintiff, | **PROOF OF SERVICE** |
| v. | |
| HAMPTON CREEK, INC., a Delaware Corporation, and DOES 1-10, | |
| Defendants. | |

**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

I am employed in the County of Santa Clara, State of California.  I am over the age of 18 and not a party to the within action; my business address is 525 University Avenue, Palo Alto, CA 94301; and my email address is alissa.turnipseed@skadden.com.

On August 10, 2017, I caused to be served the following document(s) described as:

**ANSWER TO COMPLAINT FOR DECLARATORY RELIEF**

on the interested parties in this action by placing a true copy thereon enclosed/attached in/to a sealed envelope/facsimile cover sheet addressed as follows:

Jonathan S. Pink
Daniel R. Lewis
Griffen J. Thorne
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Jonathan.Pink@lewisbrisbois.com
Daniel.Lewis@lewisbrisbois.com
Griffen.Thorne@lewisbrisbois.com

*Attorneys for Plaintiff,*
JUST GOODS, INC.

☒ (BY EMAIL) I am readily familiar with the firm's practice of email transmission; on this date, I caused the above-referenced document(s) to be transmitted by email as noted above and that the transmission was reported as complete and without error.

☐ (BY E-FILING) I am readily familiar with the firm's practice of transmitting through the court's automated e-filing transmission of documents; on this date, I caused the above-referenced document(s) to be transmitted by e-filing same as noted above and that the transmission was reported as complete and without error.

☐ (BY MAIL) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Palo Alto, California and placed for collection and mailing following ordinary business practices. (AS NOTED)

☒ (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the daily collection and processing of correspondence for deliveries with the Federal Express delivery service and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced document was placed for deposit at Palo Alto, California and placed for collection and overnight delivery following ordinary business practices. (AS NOTED)

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 10, 2017,  at Palo Alto, California.

*Alissa Turnipseed*
Alissa Turnipseed

1

PROOF OF SERVICE

EXHIBIT 7

CM-110

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Jonathan S. Pink, Esq. SBN 179685<br>Lewis Brisbois Bisgaard & Smith LLP<br>633 West 5th Street, Suite 4000<br>Los Angeles, CA 90012<br>  TELEPHONE NO.: 213-250-1800     FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>  ATTORNEY FOR *(Name)*: Plaintiff, Just Goods, Inc. | FOR COURT USE ONLY<br><br>ELECTRONICALLY<br>**FILED**<br>Superior Court of California,<br>County of San Francisco<br>**11/14/2017**<br>Clerk of the Court<br>BY:KENNETH HUNT<br>Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF **San Francisco** |
|---|
| STREET ADDRESS: 400 McAllister Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: San Francisco, CA  94102 |
| BRANCH NAME: Northern District |

| PLAINTIFF/PETITIONER: Just Goods, Inc. |
|---|
| DEFENDANT/RESPONDENT: Hampton Creek, Inc. |

| **CASE MANAGEMENT STATEMENT**<br>*(Check one):*  ☒ **UNLIMITED CASE**<br>     (Amount demanded<br>     exceeds $25,000)     ☐ **LIMITED CASE**<br>     (Amount demanded is $25,000<br>     or less) | CASE NUMBER:<br>CGC-17-559876 |
|---|---|

| A **CASE MANAGEMENT CONFERENCE** is scheduled as follows: |
|---|
| Date: November 29, 2017     Time: 10:30 a.m.     Dept.: 610     Div.:     Room: |
| Address of court *(if different from the address above)*: |
| ☐   **Notice of Intent to Appear by Telephone, by** *(name)*: |

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
    a. ☐   This statement is submitted by party *(name)*: .
    b. ☒   This statement is submitted **jointly** by parties *(names)*: Plaintiff Just Goods, Inc and Defendant Hampton Creek, Inc.

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
    a.   The complaint was filed on *(date)*: June 30, 2017
    b. ☐   The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
    a. ☒   All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
    b. ☐   The following parties named in the complaint or cross-complaint
        (1) ☐   have not been served *(specify names and explain why not)*:

        (2) ☐   have been served but have not appeared and have not been dismissed *(specify names)*:

        (3) ☐   have had a default entered against them *(specify names)*:

    c. ☐   The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4. **Description of case**
    a.   Type of case in  ☒ complaint     ☐ cross-complaint     *(Describe, including causes of action)*:
        Declaratory Relief

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. July 1, 2011] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov |

American LegalNet, Inc.
www.FormsWorkFlow.com

CM-110

| PLAINTIFF/PETITIONER: Just Goods, Inc. | CASE NUMBER: CGC-17-559876 |
|---|---|
| DEFENDANT/RESPONDENT: Hampton Creek, Inc. | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Plaintiff condends that the parties' 2014 Trademark Coexistence Agreement ("Agreement") remains valid and enforceable.  Defendant contends that the Agreement is void and unenforceable due to, inter alia, fraud in the inducement and other alleged defects.  It is also Defendant's understanding that Plaintiff seeks neither damages nor injunctive relief through this action.

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request   ☒  a jury trial   ☐  a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):* Plaintiff is requesting a jury trial.

6.  **Trial date**
a.  ☐   The trial has been set for *(date):*
b.  ☒   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):* Defendant does not believe this case will be ready for trial within 12 months.  By stipulation of the parties, no substantive discovery has yet commenced and Plaintiff plans to move for summary judgment.
c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*
Plaintiff unavailable: 4/30-5/18; 7/16-31; 8/1-24 of 2018.

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☒   days *(specify number):* 7 days
b.  ☐   hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial   ☒  by the attorney or party listed in the caption   ☒  by the following:
a.  Attorney: Amy S. Park
b.  Firm: Skadden, Arps, Slate, Meagher & Flom LLP
c.  Address: 525 University Avenue, Suite 1400, Palo Alto, California  94301-1908
d.  Telephone number: 650-470-4511                     f.  Fax number: 650-798-6503
e.  E-mail address: amy.park@skadden.com          g.  Party represented: Defendant
☐   Additional representation is described in Attachment 8.

9.  **Preference**
☒   This case is entitled to preference *(specify code section):* California Civil Code 1062.3

10.  **Alternative dispute resolution (ADR)**
a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☒  has      ☐  has not      provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐  has      ☐  has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).
(1) ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

American LegalNet, Inc.
www.FormsWorkFlow.com

CM-110

| PLAINTIFF/PETITIONER: Just Goods, Inc. | CASE NUMBER:<br>CGC-17-559876 |
|---|---|
| DEFENDANT/RESPONDENT: Hampton Creek, Inc. | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☒ | ☒ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☒ | ☒ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)* :<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

American LegalNet, Inc.<br>www.FormsWorkFlow.com

CM-110

| PLAINTIFF/PETITIONER: Just Goods, Inc. | CASE NUMBER: CGC-17-559876 |
|---|---|
| DEFENDANT/RESPONDENT: Hampton Creek, Inc. | |

11. **Insurance**
  a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
  b. Reservation of rights: ☐ Yes ☐ No
  c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

12. **Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
  ☐ Bankruptcy ☐ Other *(specify):*
Status:

13. **Related cases, consolidation, and coordination**
  a. ☐ There are companion, underlying, or related cases.
    (1) Name of case:
    (2) Name of court:
    (3) Case number:
    (4) Status:
    ☐ Additional cases are described in Attachment 13a.
  b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

14. **Bifurcation**
  ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

15. **Other motions**
  ☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*
Motions for Summary Judgment; Motions in Limine

16. **Discovery**
  a. ☐ The party or parties have completed all discovery.
  b. ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| Just Goods, Inc. | Written Discovery | 2/16/2018 |
| Just Goods, Inc | Oral Depositions | 2/16/2018 |
| Hampton Creek, Inc.. | Third Party Discovery | 6/1/2018 |
| Hampton Creek, Inc. | Party Discovery | 6/1/2018 |
| Just Goods, Inc and Hampton Creek, Inc | Expert Discovery | Per Code |

  c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*
No particular issues are known at this time. The Parties will seek a Stipulated Protective Order to govern discovery.

American LegalNet, Inc.
www.FormsWorkFlow.com

| | CM-110 |
|---|---|
| PLAINTIFF/PETITIONER: Just Goods, Inc. | CASE NUMBER:<br>CGC-17-559876 |
| DEFENDANT/RESPONDENT: Hampton Creek, Inc. | |

**17. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):* Unknown at this time, but the parties reserve the right to amend this response.

**19. Meet and confer**

   a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20.** Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: November 14/2017

Jonathan S. Pink
     (TYPE OR PRINT NAME)

▷ _____
     (SIGNATURE OF PARTY OR ATTORNEY)

Amy S. Park
     (TYPE OR PRINT NAME)

▷ _____
     (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**CASE MANAGEMENT STATEMENT**


American LegalNet, Inc.<br>www.FormsWorkFlow.com

1             **CALIFORNIA STATE COURT PROOF OF SERVICE**

2        Just Goods, Inc. v. Hampton Creek, Inc. - Case No. CGC-17-559876

3   STATE OF CALIFORNIA, COUNTY OF ORANGE

4       At the time of service, I was over 18 years of age and not a party to the action. My business address is 650 Town Center Drive, Suite 1400, Costa Mesa, CA 92626.

5

6       On November 14, 2017, I served the following document(s): CASE MANAGEMENT STATEMENT

7       I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

8

9

10 Amy Park                            *Attorneys for Defendant  Hampton Creek, Inc.*
    Skadden, Arps, Slate, Meagher & Flom LLP
    525 University Avenue

11 Palo Alto, California 94301
    Tel:   (650) 470.4500

12 Fax:  (650) 470.4570
    Email: Raoul.kennedy@skadden.com

13

14       The documents were served by the following means:

15   ☒    (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and:

16

17       ☒    Placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, on the same day that correspondence is placed

18 for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope or package with the postage fully prepaid.

19

20       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

21       Executed on November 14, 2017, at Costa Mesa, California.

22

23

24                           Joe Mills

25

26

27

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    **CALIFORNIA STATE COURT PROOF OF SERVICE**

2           Just Goods, Inc. v. Hampton Creek, Inc. - Case No. CGC-17-559876

3    STATE OF CALIFORNIA, COUNTY OF ORANGE

4           At the time of service, I was over 18 years of age and not a party to the action.  My
     business address is 650 Town Center Drive, Suite 1400, Costa Mesa, CA 92626.

5
           On November 14, 2017, I served the following document(s): CASE MANAGEMENT
6    STATEMENT

7           I served the documents on the following persons at the following addresses (including fax
     numbers and e-mail addresses, if applicable):

8

9
     Amy Park                                            *Attorneys for Defendant  Hampton Creek, Inc.*
10   Skadden, Arps, Slate, Meagher & Flom LLP
     525 University Avenue
11   Palo Alto, California 94301
     Tel:     (650) 470.4500
12   Fax:     (650) 470.4570
     Email: amy.park@skadden.com

13

14          The documents were served by the following means:

15   ☒     (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to
           the persons at the addresses listed above and:

16
           ☒      Placed the envelope or package for collection and mailing, following our ordinary
17   business practices.  I am readily familiar with the firm's practice for collection and processing
     correspondence for mailing.  Under that practice, on the same day that correspondence is placed
18   for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal
     Service, in a sealed envelope or package with the postage fully prepaid.

19
           I declare under penalty of perjury under the laws of the State of California that the
20   foregoing is true and correct.

21          Executed on November 14, 2017, at Costa Mesa, California.

22

23                                                     _____
                                                       Joe Mills
24

25

26

27

28

EXHIBIT 8

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
### 400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

JUST GOODS, INC.

PLAINTIFF (S)

VS.

HAMPTON CREEK, INC. et al

DEFENDANT (S)

**Case Management Department 610**
**Case Management Order**

**NO. CGC-17-559876**

**Notice of Time and Place of Trial**

TO: ALL COUNSEL AND SELF-REPRESENTED LITIGANTS

The Nov-29-2017 CASE MANAGEMENT CONFERENCE is canceled.

YOU ARE HEREBY NOTIFIED that this case is set for Court TRIAL on Oct-01-2018 at 9:30 am in Department 206.

If any party objects to this order, written notice of the objection must be filed with the Court; a courtesy copy must be delivered to Department 610 and served on all parties; and all counsel must appear for an objection hearing on Nov-29-2017 in Department 610 at 10:30 am.

After Nov-29-2017, ALL REQUESTS FOR CONTINUANCE MUST BE SUBMITTED TO THE PRESIDING JUDGE in Department 206, 400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514.

If an Interpreter has been requested, contact the Interpreter Coordinator at InterpreterRequests@sftc.org. If you do not have access to email please call 415-551-0654.

DATED:  NOV-16-2017                           TERI L. JACKSON
_____
                                              JUDGE OF THE SUPERIOR COURT

CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on NOV-16-2017 I served the attached Notice of Time and Place of Trial by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.

Dated :  NOV-16-2017                                    By: DARLENE LUM


RAOUL DION KENNEDY (040892)
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
525 UNIVERSITY AVE
PALO ALTO, CA  94301

JONATHAN PINK, ESQ. (179685)
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 WEST 5TH STREET, #4000
LOS ANGELES, CA  90071


RAOUL DION KENNEDY (040892)
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
525 UNIVERSITY AVE
PALO ALTO, CA  94301

CERTIFICATE OF SERVICE BY MAIL
Form 000001

EXHIBIT 9

1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   JONATHAN S. PINK, SB# 179685
2    E-Mail: Jonathan.Pink@lewisbrisbois.com
   DANIEL R. LEWIS, SB# 260106
3    E-Mail: Daniel.Lewis@lewisbrisbois.com
   GRIFFEN J. THORNE, SB# 306152
4    E-Mail: Griffen.Thorne@lewisbrisbois.com
   633 West 5ᵗʰ Street, Suite 4000
5  Los Angeles, California 90071
   Telephone:    213.250.1800
6  Facsimile:    213.250.7900

7  Attorneys for Plaintiff
   JUST GOODS, INC., a Delaware Corporation
8

ELECTRONICALLY
**FILED**
*Superior Court of California,*
*County of San Francisco*
**12/04/2017**
**Clerk of the Court**
BY:SANDRA SCHIRO
Deputy Clerk

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF SAN FRANCISCO

11

| 12  JUST GOODS, INC., a Delaware Corporation, | CASE NO.  CGC-17-559876 |
|---|---|
| 13        Plaintiff, | **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |
| 14     vs. | |
| 15  HAMPTON CREEK, INC., a Delaware Corporation, and DOES 1–10, | **Reservation No.: 11300108-14** |
| 16        Defendants. | Date:      January 8, 2018 |
| 17 | Time:    9:30 a.m. |
| 18 | Dept.:     302 |
| 19 | Hon. Teri L. Jackson |
| 20 | Action Filed:      June 30, 2017 |
| 21 | Trial Date:      October 1, 2018 |

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-8490-1719.1                                                            1
NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

1     **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

2     **PLEASE TAKE NOTICE THAT** on January 8, 2018, at 9:30 a.m. or as soon thereafter

3  as counsel may be heard, in Department 302 of the above-captioned Court, located at 400

4  McAllister St., San Francisco, California  94102-4514, Plaintiff JUST GOODS, INC. ("Just

5  Goods") will and hereby does move this Court for leave to file a First Amended Complaint.

6     This Motion is based on this Notice of Motion, Memorandum of Points and Authorities,

7  the Declaration of Jonathan S. Pink and attached proposed First Amended Complaint, filed

8  concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters

9  of which the Court may take judicial notice, and any argument or evidence that may be presented

10  to or considered by the Court prior to its ruling.

11

12  DATED: December 1, 2017                    LEWIS BRISBOIS BISGAARD & SMITH LLP

13

14

15                                                    By: _____
                                                             JONATHAN S. PINK
16                                                           DANIEL R. LEWIS
                                                             GRIFFEN J. THORNE
17                                                           Attorneys for Plaintiff JUST GOODS, INC.

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4822-8490-1719.1                                   2
NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

1    **CALIFORNIA STATE COURT PROOF OF SERVICE**

2         Just Goods, Inc. v. Hampton Creek, Inc. - Case No. CGC-17-559876

3    STATE OF CALIFORNIA, COUNTY OF ORANGE

4         At the time of service, I was over 18 years of age and not a party to the action. My
     business address is 650 Town Center Drive, Suite 1400, Costa Mesa, CA 92626.

5
          On December 1, 2017, I served the following document(s): **NOTICE OF MOTION
6    AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

7         I served the documents on the following persons at the following addresses (including fax
     numbers and e-mail addresses, if applicable):

8

9
     Amy S. Park                                        *Attorneys for Defendant  Hampton Creek, Inc.*
10   Skadden, Arps, Slate, Meagher & Flom LLP
     525 University Avenue
11   Palo Alto, California 94301
     Tel:   (650) 470.4500
12   Fax:   (650) 470.4570
     Email: amy.park@skadden.com
13

14        The documents were served by the following means:

15   ☒    (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to
          the persons at the addresses listed above and:
16
          ☒     Placed the envelope or package for collection and mailing, following our ordinary
17   business practices. I am readily familiar with the firm's practice for collection and processing
     correspondence for mailing. Under that practice, on the same day that correspondence is placed
18   for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal
     Service, in a sealed envelope or package with the postage fully prepaid.
19
          I declare under penalty of perjury under the laws of the State of California that the
20   foregoing is true and correct.

21        Executed on December 1, 2017, at Costa Mesa, California.

22

23                                                         Joe Mills

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD      4822-8490-1719.1                          3
& SMITH LLP        NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT
ATTORNEYS AT LAW

EXHIBIT 10

1  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   JONATHAN S. PINK, SB# 179685
2    E-Mail: Jonathan.Pink@lewisbrisbois.com
   DANIEL R. LEWIS, SB# 260106
3    E-Mail: Daniel.Lewis@lewisbrisbois.com
   GRIFFEN J. THORNE, SB# 306152
4    E-Mail: Griffen.Thorne@lewisbrisbois.com
   633 West 5th Street, Suite 4000
5  Los Angeles, California 90071
   Telephone:    213.250.1800
6  Facsimile:    213.250.7900

7  Attorneys for Plaintiff
   JUST GOODS, INC., a Delaware Corporation
8

ELECTRONICALLY
**FILED**
*Superior Court of California,*
*County of San Francisco*
**12/04/2017**
**Clerk of the Court**
BY:**SANDRA SCHIRO**
**Deputy Clerk**

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                     COUNTY OF SAN FRANCISCO

11

12  JUST GOODS, INC., a Delaware Corporation,    CASE NO. CGC-17-559876

13                 Plaintiff,                    **MEMORANDUM OF POINTS AND**
                                                 **AUTHORITIES IN SUPPORT OF**
14          vs.                                  **MOTION FOR LEAVE TO FILE FIRST**
                                                 **AMENDED COMPLAINT**
15  HAMPTON CREEK, INC., a Delaware
    Corporation, and DOES 1–10,
16                                               **Reservation No.: 11300108-14**
                 Defendants.
17                                               Date:    January 8, 2018
                                                 Time:    9:30 a.m.
18                                               Dept.:   302

19
                                                 Hon. Teri L. Jackson
20

21                                               Action Filed:    June 30, 2017
                                                 Trial Date:      October 1, 2018
22

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff JUST GOODS, INC. ("Just Goods") seeks leave to amend its Complaint to include a cause of action for breach of contract against Defendant HAMPTON CREEK, INC. ("Hampton Creek").

Just Goods originally filed its Complaint on June 30, 2017.  That Complaint sought a declaratory judgment that a Trademark Coexistence Agreement (the "Coexistence Agreement") entered into between Just Goods and Hampton Creek on October 31, 2014 remained valid and enforceable notwithstanding Hampton Creek's trumped up claim to the contrary.  (Just Goods' Complaint attached as Exhibit 1; "Declaration of Jonathan Pink ["Pink Decl."] ¶ 2.)

However, while this lawsuit in its original incarnation principally involved Hampton Creek's refusal to acknowledge the validity of the Coexistence Agreement, it has expanded due to Hampton Creek's market penetration in breach of that same Coexistence Agreement.  (See Contract between Just Goods and Hampton Creek attached as Exhibit 2; Pink Decl. ¶ 3.)

The Coexistence Agreement controls the scope of the parties' permitted marketplace activities.  It permitted each party to use marks containing the word "JUST" on goods in commerce *with certain limitations*.  Pursuant to Sections 2.1-2.3 of the agreement, Hampton Creek could use JUST only with JUST MAYO, JUST SCRAMBLE, JUST COOKIES AND JUST COOKIE DOUGH (collectively, the "Just Formative Marks").  Section 2.5 dictates that "JUST" be written in a lower case font type and at least *fifty percent smaller* in size than MAYO, SCRAMBLE, COOKIE or COOKIE DOUGH.  Hampton Creek also was prohibited from making any change to this stylization without the prior written consent of Just Goods, the senior applicant for its own JUST marks with the United States Patent and Trademark Office.

After executing the Coexistence Agreement, Hampton Creek, encountered legal difficulties with its JUST MAYO product.  The Food and Drug Administration objected to the name, claiming the product was not "just mayo" as it contained no egg – a requirement for products claiming to be mayonnaise.

As a result, Hampton Creek sought to extricate itself from the Coexistence Agreement.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4836-4438-0503.1

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

1  When Just Goods would not agree to this, Hampton Creek concocted an argument that the

2  Coexistence Agreement was invalid because Hampton Creek mistakenly believed (or, as it claims,

3  Just Goods falsely represented) that Just Goods' then-pending JUST trademark applications would

4  unequivocally mature into valid, federally issued trademarks. Nothing in the Coexistence

5  Agreement makes such a claim. Nonetheless, Hampton Creek used this argument as justification

6  for announcing a planned, unilateral redesign of the Just Formative Marks, emphasizing JUST as

7  its own, stand alone mark.

8  Hampton Creek's position in this regard was mostly theoretical when Just Goods filed its

9  initial Complaint with few – if any – stores carrying product with that redesigned mark. As such,

10  Just Goods styled this action as one for declaratory relief. (Pink Decl. ¶ 4.) This made sense

11  particularly given the expedited trial permitted by Cal. Civ. Code § 1062.3(a) which Just Goods

12  hoped would allow for a rapid affirmation that the Coexistence Agreement  remained valid and

13  enforceable. (Pink Decl. ¶ 4.) However, this court has now set a trial for October 2018 – much

14  later than Just Goods expected. Moreover, since June, Hampton Creek has achieved market

15  penetration with the redesigned Just Formative Marks. Based on both such facts, Just Goods now

16  seeks to assert a claim for breach. (Pink Decl. ¶ 4.)

17  Just Goods promptly reserved the date of January 8, 2018 for hearing on this motion

18  shortly after receiving notice of the trial date. (Pink Decl. ¶5.) Likewise, at or about the same

19  time, Just Goods sought defendant's consent to the filing of this motion and learned from

20  Hampton Creek's counsel that it does *not* intend oppose. (Pink Decl. ¶5.)

21  **II.    THE COURT SHOULD ALLOW JUST GOODS TO AMEND ITS COMPLAINT**

22  **TO INCLUDE THE ONE NEW CAUSE OF ACTION**

23  The court may grant leave to amend the pleadings at any state of the action. Typically, a

24  party will discover the need to amend after all pleadings are completed, and new information

25  requires a change in the nature of the claims or defenses previously pleaded. Such changes cannot

26  be made on an ex parte procedure. Rather, a formal motion to amend must be served and filed.

27  Dye v. Caterpillar, Inc. (2011) 195 Cal.App.4th 1366, 1380.

28  Motions for leave to amend the pleadings are directed to the sound discretion of the judge.

4836-4438-0503.1

3

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   "The court may, in furtherance of justice, and on any terms as may be proper, allow a party to
2   amend any pleading."  Code of Civil Procedure § 473(a)(1).  The court's discretion will usually be
3   exercised liberally to permit amendment of the pleadings.  Nestle v. Santa Monica (1972) 6 Cal.3d
4   920, 939.  The policy favoring amendment is so strong that denial of leave to amend can rarely be
5   justified.  "If the motion to amend is timely made and the granting of the motion will not prejudice
6   the opposing party, it is error to refuse permission to amend and where the refusal also results in a
7   party being deprived of the right to assert a meritorious cause of action or a meritorious defense, it
8   is not only error but an abuse of discretion."  Morgan v. Sup. Ct. (1959) 172 Cal.App.2d 527, 530.

9          This court should permit the proposed amended pleading  as it has been timely filed,
10  creates no prejudice for the defendant, and ample grounds exist to justify it given Hampton
11  Creek's use of its redesigned Just Formative Marks.  (A copy of the proposed Amended
12  Complaint is attached to the Declaration of Jonathan Pink as Exhibit 3.  A redlined comparison
13  between it and the original Complaint is attached as Exhibit 4.)  Just Goods timely filed this
14  Motion on December 1st, approximately one week after having received notice that this court had
15  taken the parties' Case Management Conference off calendar and issued a trial date *sua sponte*.
16  That trail date was substantially later than Just Goods anticipated especially given the treatment
17  declaratory relief actions are typically afforded under Cal. Civ. Code § 1062.3(a).  As such, and
18  with a trial date nearly a year away, Just Goods felt it prudent to expand this lawsuit beyond that
19  single cause of action. [1]

20         Hampton Creek will suffer no prejudice from the proposed amendment.  Given that both
21  the original and proposed additional claims turn on facts related the same Coexistence Agreement,
22  adding a claim for breach will not materially change the scope of discovery for either party.  Even
23  if some additional discovery is needed, the October 1, 2018 trial date fully accommodates such
24  needs.  But the lack of prejudice is most evident by the fact that Hampton Creek's counsel has

25

26  _____
27  [1] That is, absent this amendment, Just Goods would have to wait nearly a year for a ruling on the
    original claim before it could even commence a separate action for breach and injunctive relief.  A
    ruling on such a subsequent action would take no less time, and quite possibly longer.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   indicated no objection to Just Goods amending the pleading.[2]

2          Finally, ample grounds exist to justify the proposed amendment given Hampton Creek's

3   use in the marketplace of its unilaterally redesigned Just Formative Marks. This usage has

4   increased significantly since Just Goods filed the original Complaint to a level that provides a

5   sound bases for alleging breach at this time. Coupled with the trial date and the lack of prejudice

6   to Hampton Creek, this court should permit Just Goods' proposed amended pleading

7   **III.    CONCLUSION**

8          For the reasons set forth above, Just Goods respectfully requests that this court grant this

9   motion and deem the proposed Amended Complaint served on Hampton Creek as of January 8,

10  2018.

11  DATED: December 1, 2017              LEWIS BRISBOIS BISGAARD & SMITH LLP

12

13

                                        By: _____
14                                          JONATHAN S. PINK
15                                          DANIEL R. LEWIS
                                            GRIFFEN J. THORNE
16                                          Attorneys for Plaintiff JUST GOODS, INC.

17

18

19

20

21

22

23

24

25

26  _____
    [2] Conversely, Just Goods would face prejudice if this motion were denied due to the lengthy delay
27  explained in Note 1, *supra* (assuming, of course, Just Goods prevails on its original claim and
    Hampton Creek again ignores its legal obligations).
28
    4836-4438-0503.1                          5
    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST
                              AMENDED COMPLAINT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**CALIFORNIA STATE COURT PROOF OF SERVICE**

Just Goods, Inc. v. Hampton Creek, Inc. - Case No. CGC-17-559876

STATE OF CALIFORNIA, COUNTY OF ORANGE

At the time of service, I was over 18 years of age and not a party to the action. My business address is 650 Town Center Drive, Suite 1400, Costa Mesa, CA 92626.

On December 1, 2017, I served the following document(s): **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Amy S. Park                                  *Attorneys for Defendant  Hampton Creek, Inc.*
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Palo Alto, California 94301
Tel:    (650) 470.4500
Fax:    (650) 470.4570
Email: amy.park@skadden.com

The documents were served by the following means:

☒     (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and:

☒     Placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope or package with the postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 1, 2017, at Costa Mesa, California.

Joe Mills

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

