SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JILL M. PIETRINI (Cal. Bar No. 138335)
  jpietrini@sheppardmullin.com
PAUL A. BOST (Cal. Bar No. 261531)
  pbost@sheppardmullin.com
BENJAMIN O. AIGBOBOH (Cal. Bar No. 268531)
  baigboboh@sheppardmullin.com
BRIDGET J. RUSSELL (Cal. Bar No. 288107)
  brussell@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310.228.3700
Facsimile:    310.228.3701

Attorneys for Plaintiff and Counter-Defendant
Just Goods, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JUST GOODS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JUST, INC., F/K/A/ HAMPTON CREEK, INC., a Delaware corporation, et al.,<br><br>Defendants.<br><br><br>AND COUNTERCLAIMS. | Case No. 18-cv-02198-WHO<br><br>**PLAINTIFF AND COUNTER-DEFENDANT JUST GOODS, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE AND/OR STRIKE THE EXPERT REPORT AND TESTIMONY OF SUZANNE HARRISON; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  June 26, 2019<br>Hearing Time: 2:00 p.m.<br>Courtroom:      2 |

## NOTICE OF MOTION

TO THE HONORABLE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 26, 2019, at 2:00 p.m. or thereafter as the matter may be heard, in Courtroom 2, 17th Floor, of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick presiding, plaintiff and counter-defendant Just Goods, Inc. ("Just Goods" or "JGI") will and hereby does move to exclude and/or strike that portion of the expert report and testimony of Defendants' proffered "rebuttal" expert, Suzanne Harrison ("Ms. Harrison") that is irrelevant. Moreover, the entire report is unreliable.

Ms. Harrison was designated by defendant and counterclaimant Just, Inc. f/k/a Hampton Creek, Inc. ("Hampton Creek") and defendant Joshua Tetrick ("Defendants") as a rebuttal expert to JGI's expert, David Nolte, on HC's gross revenue. (Pietrini Decl., Ex. A[1], p.1.) Ms. Harrison's report was also submitted with Defendants' motion for summary judgment to support Defendants' argument that ███████████████████████████████████████████████ ████████████ (Dkt. 74, 15:4-13, 27:25-28:9.)

The majority of Ms. Harrison's report is not in rebuttal to Mr. Nolte's affirmative report. Specifically, Ms. Harrison's report is not directed to the opinions offered by Mr. Nolte concerning Hampton Creek's gross revenue, but at costs and profitability of Hampton Creek, which is outside the scope of Mr. Nolte's reports[2]. As such, Ms. Harrison's report is an untimely affirmative expert report and should be excluded and/or stricken under Federal Rule of Civil Procedure ("FRCP") Rules 26 and 37. Specifically, JGI seeks to exclude and/or strike pages 9-28 of Ms. Harrison's report, starting with Section III, and any references thereto in her testimony or in the summary of her report in Section I.

---

[1]  Ms. Harrison's report is attached as Exhibit A to the Declaration of Jill Pietrini ("Pietrini Decl.") filed concurrently herewith.

[2]  Mr. Nolte's initial report and supplemental report are attached as Exhibit B to the Pietrini Decl. Mr. Nolte supplemented his initial report with the updated sales information that Hampton Creek produced with Ms. Harrison's report.

1     The report and related testimony should also be excluded and/or stricken because Ms.

2  Harrison's report does not meet the exacting standards of Federal Rule of Evidence ("FRE") 702.

3     This motion is based on this Notice of Motion, the Memorandum of Points & Authorities

4  herein, the Declaration of Jill M. Pietrini, the papers and pleadings on file, and any such additional

5  papers and arguments as may be presented at or before a hearing on this matter.

6                                         Respectfully submitted,

7                                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8

9  Dated:  May 17, 2019

By /s/Bridget J. Russell
10                                            Jill M. Pietrini
                                              Paul A. Bost
11                                            Benjamin O. Aigboboh
                                              Bridget J. Russell
12
                                              Attorneys for Plaintiff and Counter-Defendant
13                                            JUST GOODS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND BACKGROUND ................................................................. 1

II.     THE COURT SHOULD EXCLUDE AND/OR STRIKE MS. HARRISON'S
        REPORT AND RELATED TESTIMONY ................................................................. 3

        A.      The Majority of Ms. Harrison's Report is Not Offered in Rebuttal ............... 3

        B.      The Non-Rebuttal Portion Should be Excluded and/or Stricken as
                Untimely ...................................................................................................... 7

        C.      Ms. Harrison's Report Does Not Meet the Exacting Standards of FRE
                702 ............................................................................................................... 9

III.    CONCLUSION ....................................................................................................... 13

1

# TABLE OF AUTHORITIES

2

Page(s)

3

Cases

4

*Amos v. Makita U.S.A.*
   2011 WL 43092 (D. Nev. Jan. 6, 2011) ..................................................................4, 6

5

*In re Apex Oil Co.*
   958 F.2d at 245 ..................................................................................................6

6

7

*Chaffey Joint Union High Sch. Dist. v. Fieldturf USA, Inc.*
   2017 WL 3049567 (C.D. Cal. Mar. 10, 2017) .........................................................4, 5

8

*Daly v. Fesco Agencies NA Inc.*
   108 F. App'x 476 (9th Cir. 2004) ..............................................................................4

9

10

*Daubert v. Merrel Dow Pharm.*
   509 U.S. 579 (1993) ........................................................................................8, 10

11

12

*Ellis v. Costco Wholesale Corp.*
   657 F.3d 970 (9th Cir. 2011) ....................................................................................9

13

*Fed. Trade Comm'n v. Qualcomm Inc.*
   2018 WL 6522134 (N.D. Cal. Dec. 11, 2018) .............................................................4

14

15

*FTC v. Innovative Designs, Inc.*
   2018 WL 3611510 (W.D. Pa. July 27, 2018) ..............................................................4

16

17

*Hellmann-Blumberg v. Univ. of Pac.*
   2013 WL 3422699 (E.D. Cal. July 8, 2013) ...............................................................4

18

*Hernandez ex rel. Telles–Hernandez v. Sutter Med. Ctr. of Santa Rosa*
   2008 WL 2156987 (N.D. Cal. May 20, 2008) .............................................................7

19

20

*Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*
   1995 WL 115421 (N.D. Cal. Mar. 15, 1995) ............................................................4, 7

21

22

*Kumho Tire Co. v. Carmichael*
   526 U.S. 137 (1999) ........................................................................................9, 10

23

24

*Obrey v. Johnson*
   400 F.3d 691 (9th Cir. 2005) ....................................................................................9

25

*Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*
   427 F. Supp.2d 1022 (D. Kan. 2006) ........................................................................9

26

27

*United States v. Downing*
   733 F.2d 1224 (2d Cir. 1985) ..................................................................................13

28

*Vu v. McNeil-PPC, Inc.*
    2010 WL 2179882 (C.D. Cal. May 7, 2010)..............................................................6

*Winterland Concessions Co. v. Fenton*
    835 F. Supp. 529 (N.D. Cal. 1993) .........................................................................12

*Wolfe v. National Lead Co.*
    272 F.2d 867 (9th Cir. 1959)...................................................................................12

*Wong v. Regents of University of California*
    410 F.3d 1052 (9th Cir. 2005)...................................................................................7

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*
    259 F.3d 1101 (9th Cir. 2001)...................................................................................7

Statutes

Lanham Act ...................................................................................................1, 6, 11

Other Authorities

FRCP 26 ................................................................................................3, 4, 6, 7, 8

FRCP 30(b)(6)................................................................................................................2

FRCP 37(b)(2)(A)(ii) ....................................................................................................7

FRE 702..........................................................................................................................8, 9

Plaintiff's Motion to Exclude the Expert Report and Testimony of Suzanne Harrison

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION AND BACKGROUND

3      Just Goods designated Mr. Nolte as its affirmative expert witness on damages.  Mr. Nolte's

4   reports, per the burden of proof assigned under the Lanham Act and relevant cases, opined on the

5   gross sales earned by Hampton Creek that are attributable to its infringement of the JUST

6   trademark.  Defendants designated Ms. Harrison in "rebuttal" to Mr. Nolte's initial report.

7      Mr. Nolte's reports, directed at determining the amount of Hampton Creek's sales

8   attributable to its use of JUST, analyze the financial data that was produced by Hampton Creek

9   from 2011 until 2018, as well as the circumstances surrounding those sales.  (Pietrini Decl., Ex. B,

10  pp. 3-4.)  Mr. Nolte first notes, based on the deposition testimony of Mr. Tetrick, other evidence of

11  record (or *not* of record), and on his own personal experience with food service, that Hampton

12  Creek's gross food service sales are not attributable to Hampton Creek's use of the JUST

13  trademark.  Mr. Nolte thus excludes food service sales from his analysis.  (*Id.* at pp. 4-5.)  Mr.

14  Nolte then calculates the gross amount of Hampton Creek's retail sales from 2013 until 2018 at two

15  relevant periods:  (1) from inception to 2018, and (2) from May 2017 – the date that Hampton

16  Creek changed its label in contravention of the coexistence agreement entered between the parties

17  on October 31, 2014 (the "Contract") – to 2018.  (*Id.* at pp. 5-6.)  Both calculations focused on the

18  amount of sales that are attributable to Hampton Creek's use of the JUST trademark and thus

19  subject to disgorgement.  (*Id.* at p.6.)  Mr. Nolte's reports do not analyze Hampton Creek's

20  allowable costs or claimed deductions, because, as he notes in his initial report (*id.* at p.3), pursuant

21  to the Lanham Act, 15 U.S.C. § 1117(a), *Hampton Creek has the burden of proving allowable*

22  *costs and claimed deductions*.  Also, Defendants have never identified the specific costs and

23  deductions they are claiming from Hampton Creek's gross revenue by way of Hampton Creek's

24

25

26

27

28

interrogatory response or in the deposition of its FRCP 30(b)(6) witness on costs and deductions. (Pietrini Decl., Ex. C[3]  and Ex. D[4].)

Ms. Harrison only casually addresses the opinions set forth in Mr. Nolte's initial report. (Pietrini Decl., Ex. A., pp. 4-9.)  She does not attack or respond to Mr. Nolte's core opinion – that is, the amount of Hampton Creek's gross retail sales at the two time periods identified in his reports – and admits that she found no meaningful fault with these amounts.  (Pietrini Decl., Ex. E[5], 151:25-152:24.)  Instead, in her brief rebuttal, she takes issue with Mr. Nolte's:  (1) failure to address Hampton Creek's costs; (2) failure to include Hampton Creek's gross food service sales in his analysis; and (3) ███████████████████████████████████████████████████████████████████████████████████████████████████ (Pietrini Decl., Ex. A, pp. 5-9.)  The remainder of Ms. Harrison's report constitutes improper rebuttal testimony regarding:  (1) Hampton Creek's profitability; and (2) ██████████████████████████ ████████████████████████████ (the "Non-Rebuttal Portion").  (*Id.* at pp. 9-28.)

The Non-Rebuttal Portion is unquestionably outside the scope of evidence permitted on rebuttal.  To present expert testimony on Hampton Creek's profitability or its comparability to Beyond Meat (both irrelevant), Defendants were required to designate Ms. Harrison as an affirmative expert on these issues by the initial expert disclosure cutoff.  Having not done so, Ms. Harrison had to limit her report to a rebuttal of the specific opinions stated in Mr. Nolte's initial report.  Ms. Harrison's report went well beyond Mr. Nolte's initial report and opined on Hampton Creek's profitability on which Mr. Nolte did not make any statements or conclusions.  Because the Non-Rebuttal Portion is not offered in rebuttal to Mr. Nolte's report, it is an untimely affirmative expert report and should be excluded and/or stricken.

---

[3]   Hampton Creek's Answer to Interrogatory No. 6 directed to costs and deductions claimed is attached as Exhibit C to the Pietrini Decl.

[4]   Excerpts from the deposition of Beverley Chadwick, Hampton Creek's FRCP 30(b)(6) witness on revenue and costs and deductions, are attached as Exhibit D to the Pietrini Decl.

[5]   Excerpts of Ms. Harrison's deposition are attached as Exhibit E to the Pietrini Decl.

Ms. Harrison's report is also unreliable because she is not qualified to provide the opinion she purports to give, and the opinions in her report are irrelevant to the factual matters that must be determined in this case.  Ms. Harrison admitted during her deposition that she is not a certified public accountant ("CPA"), has *never* calculated trademark damages as an expert (let alone performed an apportionment analysis) and has not worked on trademark damages as a consultant in more than twenty years.  (Pietrini Decl., Ex. E, 8:6-9:6, 15:19-17:3, 18:2-20:10, 39:14-16, & 67:6-68:6.)  Before being retained, Ms. Harrison had no knowledge of the standards applicable to calculating and apportioning trademark damages.  (*Id.* at 41:14-57:22.)  Her lack of expertise infects her entire report, rendering it unreliable.  Her generalized profitability analysis (and the Beyond Meat comparison) is also irrelevant as it does not assist the fact-finder in deciding the amount of Hampton Creek's profits to which Just Goods is entitled if it prevails in this case.  Ms. Harrison's entire report should therefore be excluded and/or stricken for not meeting the standards of Rule 702.

For these reasons, Just Goods requests that the Court exclude and/or strike Ms. Harrison's report and her related testimony in its entirety or, at a minimum, exclude and/or strike the Non-Rebuttal Portion.

II.     **THE COURT SHOULD EXCLUDE AND/OR STRIKE MS. HARRISON'S REPORT AND RELATED TESTIMONY**

A.     **The Majority of Ms. Harrison's Report is Not Offered in Rebuttal**

FRCP 26 governs the disclosure of expert testimony.  Pursuant to FRCP 26(a)(2)(A), parties must disclose any person who they may call as an expert witness during trial, and provide a report of her opinions and their basis.  FRCP 26(a)(2)(B).  The court directs the timing and sequence of expert disclosures, but generally rebuttal expert reports are due thirty days after the opposing party's expert disclosure.  FRCP 26(a)(2)(C).  Here, the deadline for the designation of expert witnesses was February 20, 2019, with rebuttal reports due on March 20, 2019.[6]  (Dkt. No. 65.)  Both Just Goods and Defendants made affirmative expert designations in accordance with that

---

[6]     The parties stipulated to continue the deadline for rebuttal expert reports to March 27, 2019 because of a death in the family of one of Defendants' counsel.

deadline.  Relevant here, Just Goods affirmatively designated Mr. Nolte as a damages expert regarding Defendants' gross sales attributable to the use of the JUST trademark.  (Pietrini Decl., Ex. B.)[7]  On March 27, 2019, Defendants designated Ms. Harrison in rebuttal to Mr. Nolte.  (*Id.* at Ex. A.)  However, the majority of Ms. Harrison's report does not rebut Mr. Nolte's initial report.

A rebuttal expert "does not receive *carte blanche* to address the broad subject matter of the case."  *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 6522134, at *4 (N.D. Cal. Dec. 11, 2018) (internal citation omitted).  Instead, FRCP 26(a)(2)(C) defines rebuttal experts as presenting "evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified' by an initial expert witness."  Rebuttal reports that do not "respond[] directly to claims made by" the expert they are rebutting, do not present "rebuttal evidence as defined by 26(a)(2)."  *Daly v. Fesco Agencies NA Inc.*, 108 F. App'x 476, 480 (9th Cir. 2004); *accord FTC v. Innovative Designs, Inc.*, 2018 WL 3611510, at *3 (W.D. Pa. July 27, 2018) ("[E]xpert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports.").  In other words, "'rebuttal' experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts."  *Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995); *see also Hellmann-Blumberg v. Univ. of Pac.*, 2013 WL 3422699, at *2 (E.D. Cal. July 8, 2013) ("[If] the rebuttal expert attempts to add supplemental opinions outside of the existing report, such testimony must be excluded.").  "Rebuttal experts cannot testify in their parties' case-in-chief."  *Amos v. Makita U.S.A.*, 2011 WL 43092, at *2 (D. Nev. Jan. 6, 2011), *citing Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Haw. 2008).

Evaluating whether an expert witness has submitted a legitimate rebuttal report poses "a more procedural than substantive" question.  *Chaffey Joint Union High Sch. Dist. v. Fieldturf USA, Inc.*, 2017 WL 3049567, at *1 (C.D. Cal. Mar. 10, 2017) (citation omitted).  "In performing this analysis, the court 'does not ask whether the designating party has designated a rebuttal expert

---

[7]    On April 19, 2019, Mr. Nolte supplemented his report to add updated retail sales revenue that was produced with Ms. Harrison's report.

whose opinions have probative value or even whether they will be admissible at trial,' but focuses on:  (1) the evidence the rebuttal expert purports to contradict or rebut; (2) whether the rebuttal evidence is on the same subject matter as the opposing expert's report; and (3) whether the rebuttal evidence is intended solely to rebut or contradict the opposing expert's evidence." *Id.*  Ms. Harrison's Non-Rebuttal Portion of her report (1) does not purport to rebut Mr. Nolte's initial report; (2) concerns a broader subject matter than Mr. Nolte's reports; and (3) does not directly contradict or rebut the contents of Mr. Nolte's reports.

First, Ms. Harrison *admitted* at her deposition that the Non-Rebuttal Portion of her report was **not** in rebuttal to Mr. Nolte's initial report.  (Pietrini Decl., Ex. E, 150:17-151:7.)  Ms. Harrison's report as a whole only addresses three points in Mr. Nolte's initial report:  (1) his failure to address Hampton Creek's costs; (2) his failure to include Hampton Creek's gross food service sales in his analysis[8]; and (3) ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████  (Pietrini Decl., Ex. A, pp. 5-9.)  Her complaints with these three points – the unreliability of which is addressed below – are contained in a single section, and are not mentioned at all[9] in the Non-Rebuttal Portion that makes up the majority of her report.  (*Id.* at pp. 9-28.) As Ms. Harrison concedes that the Non-Rebuttal Portion does not purport to rebut Mr. Nolte's reports, it should be excluded and/or stricken.

Second, the Non-Rebuttal Portion does not cover the same subject matter as Mr. Nolte's reports.  As Ms. Harrison admits, Mr. Nolte's reports only address the amount of Hampton Creek's gross sales attributable to its infringement.  (Pietrini Decl., Ex. E, 150:17-22.)  Mr. Nolte's reports

---

[8]  Ms. Harrison attaches pictures to support her rebuttal that the "JUST" trademark was used on its food service process.  However, the pictures she attaches are of Hampton Creek's former, non-infringing use of the "JUST" trademark, which is irrelevant.  (Pietrini Decl., Ex. A, pp 5-9).

[9]  Ms. Harrison only otherwise mentions Mr. Nolte's initial report once.  She purports to clarify an ambiguity noted by Mr. Nolte in his initial report.  Just Goods does not contend that this single purported clarification in the Non-Rebuttal Portion of her report (*id.* p.14 at III.2.B.2) is improper rebuttal testimony.

explicitly do not address Hampton Creek's allowable costs or claimed deductions, because, as noted by Mr. Nolte, "Hampton Creek must prove all elements of cost or deduction claimed." (Pietrini Decl., Ex. B, p.3.)  Additionally, Hampton Creek did not identify with any reasonable specificity what costs or deductions it was claiming from gross revenue in discovery.  Therefore, even if it were Just Goods' burden to establish both revenue and costs to arrive at profits to be disgorged (it is not), Just Goods could not make that calculation without knowing exactly what Hampton Creek was claiming by way of costs and deductions.[10]  Moreover, the Non-Rebuttal Portion of Ms. Harrison's report goes on to set forth a profitability analysis of Hampton Creek and ████████████████████████████████████████████ that Ms. Harrison admits was included for non-rebuttal reasons.  (Pietrini Decl. Ex. A., pp. 9-28 & Ex. E, 150:17-153:13.)

Simply put, the subject matter of Mr. Nolte's reports cannot be "read broadly to encompass" Ms. Harrison's profitability and comparison analysis.  *Vu v. McNeil-PPC, Inc.*, 2010 WL 2179882, at *3 (C.D. Cal. May 7, 2010) ("If the phrase 'same subject matter' is read broadly to encompass any possible topic that relates to the subject matter at issue, it will blur the distinction between 'affirmative expert' and 'rebuttal expert.'  More importantly, such broad reading of Rule 26(a)(2)(C)(ii) will render the scope of the subject matter limitless and will lead to unjust results….").  The amount of Hampton Creek's gross sales for a specific subset of products or a specific channel of trade, during a specifically delineated time, is not the same subject matter as an analysis of Hampton Creek's profitability, much less a comparison analysis between Hampton Creek and another company.  This is particularly true here because the Lanham Act specifically provides that a plaintiff has the burden of proving gross sales and a defendant has the burden to prove its claimed allowable costs and deductions.  15 U.S.C. §1117(a).  Thus, the Non-Rebuttal Portion of Ms. Harrison's report is actually presented to "contradict an expected and anticipated portion of the other party's case-in-chief" and, as a result, Ms. Harrison "*is not a rebuttal witness or*

---

[10]   It appears through Ms. Harrison's report and testimony that Hampton Creek is now claiming every single cost incurred by Hampton Creek, from inception to date, as a deduction from gross revenue in this case.

1   *anything analogous to one*."  *In re Apex Oil Co.*, 958 F.2d at 245; *see also Amos*, 2011 WL 43092,

2   at *2 (quoting same); *Century Indem. Co.*, 2015 WL 5521986, at *3 (same).

3        Finally, even if the Non-Rebuttal Portion of Ms. Harrison's report is found to address the

4   same subject matter as Mr. Nolte's reports, it does not actually rebut or contradict them.  The Non-

5   Rebuttal Portion does not respond to Mr. Nolte's calculation of gross sales with an alternative

6   calculation.  Instead, Ms. Harrison ignores Mr. Nolte's gross sales calculation and undertakes an

7   entirely new analysis of whether Hampton Creek is generally profitable and how it matches up to a

8   purportedly comparable company.  (Pietrini Decl., Ex. A, pp. 9-28.)  This is not an analysis

9   undertaken by Mr. Nolte's initial report, and it therefore cannot be offered by Ms. Harrison in her

10  rebuttal report.  *Int'l Bus. Machines Corp.*, 1995 WL 115421, at *3.

11       In short, the Non-Rebuttal Portion of Ms. Harrison's report does not purport to, or actually

12  rebut or contradict, the subject matter of Mr. Nolte's reports.  Instead, the Non-Rebuttal Portion of

13  Ms. Harrison's report performs an unrelated profitability and comparison analysis.

14       **B.    The Non-Rebuttal Portion Should be Excluded and/or Stricken as Untimely**

15       FRCP 37(c)(1) gives "teeth" to the above requirements by providing that "[i]f a party fails

16  to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

17  allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial,

18  unless the failure was substantially justified or is harmless."  *See also Yeti by Molly, Ltd. v.*

19  *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  In addition to or instead of this

20  sanction, the court may "prohibit[] the disobedient party . . . from introducing designated matters in

21  evidence."  FRCP 37(b)(2)(A)(ii).  The moving party bears the burden of showing a discovery

22  violation has occurred.  *See Hernandez ex rel. Telles–Hernandez v. Sutter Med. Ctr. of Santa Rosa*,

23  2008 WL 2156987, at *13 (N.D. Cal. May 20, 2008).  Once that burden is satisfied, the burden

24  shifts and the nonmoving party must prove that its failure to comply with FRCP 26 was either

25  justified or harmless. *Yeti by Molly*, 259 F.3d at 1107.

26       Because the Non-Rebuttal Portion of Ms. Harrison's report is not a proper rebuttal report,

27  as detailed above, it is an untimely affirmative report, and Defendants have violated FRCP 26 by

28

failing to timely disclose it.  The Non-Rebuttal Portion of Ms. Harrison's report should be excluded because it is not "substantially justified" or "harmless."

Defendants' untimely expert witness designation has prejudiced Just Goods, and therefore is harmful.  As the Ninth Circuit has recognized, courts enter scheduling orders "to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to."  *Wong v. Regents of University of California*, 410 F.3d 1052, 1062 (9th Cir. 2005).  When a party fails to provide the disclosures required by FRCP 26(a)(2) in accordance with the court's scheduling order, "[d]isruption to the schedule of the court and other parties in that manner is not harmless."  *Id.*  The initial date set for expert disclosures in the Court's Scheduling Order was extended by stipulation of the parties.  (Dkt. No. 65.)

Defendants failed to comply with this extended deadline, and waited until the time for rebuttal expert disclosures to designate Ms. Harrison.  Defendants should not be allowed to ignore the Court's deadlines to the detriment of Just Goods.   By waiting to claim all costs and deductions associated with Hampton Creek's business until its rebuttal report and testimony from its rebuttal expert, Just Goods was unable to challenge these costs and deductions on rebuttal.  Had Hampton Creek designated an expert to affirmatively opine as to its costs and deductions, Just Goods could have designated Mr. Nolte or another expert to rebut this testimony.  As it stands, Just Goods is afforded no rebuttal opportunity and is prejudiced.  It was not even clear until Ms. Harrison's testimony that Hampton Creek was claiming every single cost incurred by it as a deduction from gross revenue in this case, and even then, Ms. Harrison testified that she was not asked to address cost and deductions claimed.  This failure to timely disclose clearly prejudices Just Goods in challenging the costs and deductions claimed.

Defendants have no justification – let alone "substantial justification" – for failing to timely disclose Ms. Harrison as one of their initial expert witnesses.  The expert disclosure deadline was extended and stipulated to by the parties.  The subject of the Ms. Harrison's report – i.e., whether Hampton Creek is or has been profitable – is not new or unforeseen.

The Non-Rebuttal Portion of Ms. Harrison's report and related testimony should be excluded and/or stricken because it is untimely.

## C.   Ms. Harrison's Report Does Not Meet the Exacting Standards of FRE 702

FRE 702 governs the admissibility of expert testimony.  It permits a party to offer testimony by a "witness who is qualified as an expert by knowledge, skill, experience, training, or education."  FRE 702.  This rule embodies a "relaxation of the usual requirement of firsthand knowledge," *Daubert v. Merrel Dow Pharm.*, 509 U.S. 579, 592 (1993), and requires that certain criteria be met before expert testimony is admissible.  FRE 702 sets forth four elements, allowing such testimony only if:

> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

FRE 702.  These criteria can be distilled to two overarching considerations: "reliability and relevance."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).  The ultimate question of admissibility is "whether this particular expert has sufficient specialized knowledge to assist the jurors 'in deciding the particular issues in the case.'"  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (citing 4 J. McLaughlin, Weinstein's Federal Evidence ¶ 702.05[1], p. 702–33 (2d. ed. 1998)).

The reliability prong requires the court to "act as a 'gatekeeper' to exclude junk science," and grants the court "broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145 (1999)).  Evidence should be excluded as unreliable if it "suffer[s] from serious methodological flaws." *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005).  That burden extends not only to the expert's reasoning and methodology, but also to the foundational facts and assumptions that form the cornerstone of the expert's opinion. *See Sunlight*

*Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp.2d 1022, 1030 (D. Kan. 2006) ("[T]he trial court also must determine whether the expert opinion is 'based on facts that enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation.'").  The objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd.*, 526 U.S. at 152.  This requirement applies to all experts, not just scientists, but those whose opinions are based on skill, experience, or technical or specialized knowledge as well. *Id.* at 149.

The relevance prong looks to whether the evidence "fits" the issues to be decided: "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes," and "[e]xpert testimony which does not relate to any issue in the case is not relevant." *Daubert*, 509 U.S. at 591.  The trial court must decide whether the proffered expert testimony "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quoting *United States v. Downing*, 733 F.2d 1224, 1242 (2d Cir. 1985)). Also relevant is whether, the probative value of an analysis of Hampton Creek's profitability outweighs any prejudicial effect. *Id.* at 593-95.

As a matter of first principles, Ms. Harrison's testimony is neither reliable nor relevant, and it certainly is not helpful to the trier of fact.

### 1.  Ms. Harrison's Report is Not Reliable Because She is Not Qualified to Conduct a Trademark Damages Analysis

Ms. Harrison's report analyzes the profitability of Hampton Creek by reviewing and summarizing its audited financial statements.  (Pietrini Decl., Ex. A, p. 14.)  She also claims to provide an opinion regarding the amount of Hampton Creek's profits attributable to its use of the JUST trademark (*id.* at p.3), but she does not actually perform an apportionment analysis in her report, does not understand the applicable standard to determine apportionment, and admitted at her deposition that she was not asked to determine which of Hampton Creek's costs were being claimed as deductions from its gross sales.  (Pietrini Decl., Ex. E, 62:4-18).  Ms. Harrison is not qualified to give a trademark damages opinion.

Ms. Harrison admits she is not is not an accountant or a CPA, is not a General Audited Accounting Principles expert, and is not an auditor, and that she does not regularly perform accounting work in her business.  (*Id.* at 8:6-9:6, & 67:6-68:6.)  She has never calculated trademark damages as an expert let alone conducted an apportionment analysis, and has not performed a trademark damages analysis at all in more than thirty years.  (*Id.* at 15:19-17:3, 18:2-20:10, & 39:14-16.)  Prior to being retained, Ms. Harrison had no prior knowledge of the standards applicable to calculating trademark damages (her grasp of which is still, respectfully, lacking).  (*Id.* at 41:14-57:22.)  In her own words she is "a thought leader in intellectual property management," and the "substantial part of [her] work experience … is the creation of the underlying principles of IP valuation."  (Pietrini Decl., Ex. A, p.2.)  Ms. Harrison was not tasked with providing an opinion as to how to properly manage or value Hampton Creek's intellectual property.  She was tasked with determining whether Hampton Creek is or has ever been profitable.  She was unable to give a satisfactory answer in her deposition as to why her position as a "thought leader" regarding "IP valuation" has sufficiently prepared her to offer a financial opinion as to the profitability of Hampton Creek or to conduct an apportionment analysis in this case.  (Pietrini Decl. Ex. E, 10:16-13:14, 56:3-57:22.)

As a non-accountant, unfamiliar with trademark damages or apportionment, Ms. Harrison is simply unqualified to give *any* opinion as to which of Hampton Creek's revenue is properly apportioned from its sales as a whole, and what costs and deductions Hampton Creek is claiming from all of its costs and deductions that make Hampton Creek allegedly unprofitable.  Her lack of qualifications renders her report unreliable and should be excluded and/or stricken for this reason.

## 2.	Ms. Harrison's Generalized Profitability Analysis is Irrelevant and Prejudicial

The Lanham Act is explicit: "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed….  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."  15 U.S.C. § 1117(a).  Thus, to prove its entitlement to

damages, Just Goods is only required to prove Hampton Creek's gross sales.[11]  Hampton Creek has the burden to prove deductible costs and expenses, if any, to arrive at net profits.

Here, Ms. Harrison does not undertake a cost analysis.  She makes no argument, and provides no evidence or analysis supporting, that every cost and expense of Hampton Creek is deductible under any theory of deduction, let alone that any are.  (Pietrini Decl., Ex. E, 62:6-18, 45:28-50:22.)  Instead, Ms. Harrison's assumes that *all* of Hampton Creek's costs are properly deductible, an assumption that is not grounded in legal authority.

Just as troubling, there are various categories of costs and expenses that are not deductible as a matter of law or are only deductible under certain circumstances.  *See, e.g., Wolfe v. National Lead Co.*, 272 F.2d 867, 873 (9th Cir. 1959) (attorneys' fees expended in litigation not deductible; compensation to officers not deductible "under the facts of this case.").  However, Ms. Harrison blanketly testified that the foregoing costs were all properly deductible.  (Pietrini Decl,, Ex. E, 53:16-54:24.)  Likewise, overhead costs are only deductible where a defendant can demonstrate they were "of actual assistance in the production, distribution or sale of the infringing product." *Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal. 1993) (citing *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir.1985).  Moreover, a defendant must show that "each item included in fixed costs actually contributed to the infringing product." *Id.*  But Ms. Harrison's general principle that all costs are deductible contradicts this well-established authority.

For Ms. Harrison's financial analysis to be relevant, it needs to assist the fact-finder in determining which of Hampton Creek's costs it is claiming are deductible, the amount that is deductible, and *why* they are deductible.  Ms. Harrison's report does not provide *any* analysis of why Hampton Creek's costs are deductible let alone any evidence to support that each and every single item of cost and expense on Hampton Creek's financial statements or financial Excel

---

[11]   Ms. Harrison's chastising of Mr. Nolte's failure to analyze Hampton Creek's costs is irrelevant (and improper) for this reason.  And the attempt to make it appear that Mr. Nolte was remiss in failing to do so is prejudicial.

spreadsheets (created specifically for this case)[12] is deductible.  All Ms. Harrison has opined about is that Hampton Creek ███████████████████████████████████ ███████████████ As noted above, several costs clearly are not deductible in a trademark case. Having ignored that it is Hampton Creek's burden to prove that these costs and expenses are *actually deductible*, Hampton Creek put Ms. Harrison forth to proffers her generalized opinion that ████████████████████████████████████, which is completely irrelevant.

    In sum, Ms. Harrison's opinion as to Hampton Creek's profitability in a vacuum – without any evidence or analysis of whether the costs and expenses claimed in its audited financials and Excel spreadsheets are deductible – *does nothing to assist the fact finder* in determining if each and every one of Hampton Creek's costs and expenses actually contributed to the production, distribution or sale of  products bearing the JUST trademark and is otherwise properly deductible. *Downing*, 733 F.2d at 1242 (expert testimony only admissible if it "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.").

    The relevancy of her profitability analysis and related comparison analysis (if any) is also outweighed by its prejudicial effect.  Ms. Harrison's report suggests that the Court cannot make any award of profits based on Hampton Creek deducting every one of its expenses since inception, which is simply not true.  Ms. Harrison's report should be excluded for this reason.

## III.   CONCLUSION

    Based on the foregoing, Just Goods requests that the Court exclude and/or strike Ms. Harrison's report and the related testimony in their entirety, or at a minimum exclude and/or strike the Non-Rebuttal Portion of her report and testimony related thereto.

---

[12]    See Pietrini Decl., Ex. D, 130:18-132:5, 136:14-19, 141:5-7.

1

2

3

4   Dated:  May 17, 2019

5

6

7

8

9   SMRH:4844-8027-4071.4

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/Bridget J. Russell
   Jill M. Pietrini
   Paul A. Bost
   Benjamin O. Aigboboh
   Bridget J. Russell

   Attorneys for Plaintiff and Counter-Defendant
   JUST GOODS, INC.