KILPATRICK TOWNSEND & STOCKTON LLP
Dennis L. Wilson (SBN 155407)
dwilson@kilpatricktownsend.com
Sophy T. Manes (SBN 287583)
smanes@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone:   415 576 0200
Facsimile:   415 576 0300

KILPATRICK TOWNSEND & STOCKTON LLP
Trevor C. Maxim (SBN 317859)
tmaxim@kilpatricktownsend.com
9720 Wilshire Blvd., PH
Beverly Hills, CA  90212
Telephone:   310 248 3830
Facsimile:   310 860 0363

KILPATRICK TOWNSEND & STOCKTON LLP
Charles H. Hooker, III (*Pro Hac Vice*)
chooker@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta, GA  30309
Telephone:   404 815 6500
Facsimile:   404 815 6555

KILPATRICK TOWNSEND & STOCKTON LLP
Brittany T. Knutson (*Pro Hac Vice*)
bknutson@kilpatricktownsend.com
607 14th Street, NE, Suite 900
Washington, DC  20005
Telephone:   202 508 5800
Facsimile:   202 508 5858

Attorneys for Defendants
Just, Inc. f/k/a Hampton Creek, Inc. and Joshua Tetrick

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JUST GOODS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JUST, INC. f/k/a HAMPTON CREEK, INC., a Delaware corporation, JOSHUA TETRICK, an individual, and DOES 1-10,,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Civil Action No. 3:18-cv-2198-WHO<br><br>**DEFENDANT/COUNTERCLAIMANT JUST, INC. AND DEFENDANT JOSHUA TETRICK'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO JUST GOODS, INC.'S MOTION TO STRIKE THE EXPERT REPORT AND TESTIMONY OF SUZANNE HARRISON**<br><br>Date:          July 10, 2019<br>Time:         2:00 p.m.<br>Crtrm:        2, 17th Floor<br>                    Hon. William H. Orrick<br><br>Second Amended<br>Complaint Filed:          April 5, 2018 |

REDACTED VERSION SOUGHT TO BE SEALED

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Ms. Harrison's Report And Testimony Are Proper Rebuttal Evidence Within The Meaning Of Federal Rule Of Civil Procedure 26(a)(2)(D)(ii) ........................................................................... 2

        1. Mr. Nolte's Initial Report ........................................................... 2

        2. Ms. Harrison's Rebuttal Report .................................................. 4

        3. Ms. Harrison's Rebuttal Report Addresses The Same Subject Matter Mr. Nolte Addressed In His Initial Report And In The Supplemental Report Served After Ms. Harrison's Report ............................................................... 5

    B. Even If Portions Of Ms. Harrison's Report Were Not Rebuttal Evidence, Just, Inc.'s Purported Delay In Disclosing That Evidence Was Substantially Justified or Harmless ................................. 8

    C. Ms. Harrison's Evidence Is Both Reliable And Relevant ............................ 10

        1. Ms. Harrison's Expert Report Is Reliable .................................. 10

        2. Ms. Harrison's Evidence Is Relevant To The Proper Measure of Damages In The Event Liability Is Established ............................................................................... 13

III. CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Covertech Fabricating, Inc. v. TVM Bldg. Prods. Inc.*,
  855 F.3d 163 (3d. Cir. 2017) .................................................................................................. 5, 6

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ............................................................................................................. 10, 13

*Dorn v. Burlington N. Santa Fe R.R. Co.*,
  397 F.3d 1183 (9th Cir. 2005) ............................................................................................... 13, 14

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
  778 F.3d 1059 (9th Cir. 2015) ..................................................................................................... 5

*Kirola v. City and Cty. of San Francisco*,
  No. C-07-3685 SBA (EMC), 2010 WL 373817 (N.D. Cal. Jan. 29, 2010) ............................... 6

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .................................................................................................................. 10

*Lanard Toys Ltd. v. Novelty, Inc.*,
  375 Fed. Appx. 705 (9th Cir. 2010) ........................................................................................... 10

*Leadership Studies, Inc. v. Blanchard Training & Dev., Inc.*,
  No. 15cv1831-WQH(KSC), 2018 WL 1989554 (S.D. Cal. Apr. 27, 2018) ............................... 5

*Liberty Ins. Corp. v. Sw. Traders Inc.*,
  No. ED CV-12-02151-JLQ, 2013 WL 12139424 (C.D. Cal. Sep. 2, 2013) ............................... 1

*McCrary v. Elations Co. LLC*,
  No. EDCV 13-0242 JGB (SPx), 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) ....................... 1

*Medlock v. Taco Bell Corp.*,
  No. 1:07-cv-01314-SAB, 2016 WL 439347 (E.D. Cal. Feb. 4, 2016) ....................................... 1

*Moreno v. Natividad Med. Ctr.*,
  No. C 03-03965 JW, 2004 WL 6066548 (N.D. Cal. Dec. 6, 2004) ........................................... 10

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
  40 F.3d 1007 (9th Cir. 1994) ....................................................................................................... 6

*Pac. Indem. Co. v. Nidec Motor Corp.*,
  203 F. Supp. 3d 1092 (D. Nev. 2016) ......................................................................................... 8

*Perez v. State Farm Mut. Auto Ins. Co.*,
  No. C 06–01962 JW, 2011 WL 8601203 (N.D. Cal. Dec. 7, 2011) ................................. passim

**TABLE OF AUTHORITIES**
(continued)

Page

*Pinterest, Inc. v. Pintrips, Inc.*,
   No. 13-cv-04608-HSG, 2015 WL 2268498 (N.D. Cal. May 14, 2015) ............................ 2, 6, 8

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*,
   No. C 10-00544 JW, 2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) ......................... 10, 11, 14

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*,
   No. C 01-20418 JW, 2005 WL 1459572 (N.D. Cal. Jun. 21, 2005) ......................................... 6

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................................... 1

*Sonoma Tires, Inc. v. Big O Tires, LLC*,
   No. C 11-0818 RS, 2013 WL 12174138 (N.D. Cal. Apr. 19, 2013) ...................................... 10

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
   No. CV 11-8292-JGB, 2013 WL 12126773 (C.D. Cal. Jun. 27, 2013) ............................... 8, 9

*Szoka v. Woodle*,
   No. C 02-5524 SI, 2004 WL 5512964 (N.D. Cal. Jun. 7, 2004) ............................................ 10

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
   No. SACV 14-00341 JVS (Anx), 2016 WL 7042085 (C.D. Cal. Aug. 17, 2016) ........... passim

**Statutes**

Lanham Act ...................................................................................................................................... 6

**Other Authorities**

Fed. R. Evid. 26 ....................................................................................................................... passim

Fed. R. Evid. 37(c)(1) ...................................................................................................................... 8

Fed. R. Evid. 401 ........................................................................................................................... 13

Fed. R. Evid. 702 ..................................................................................................................... passim

Defendant/Counterclaimant Just, Inc. and defendant Joshua Tetrick (collectively "Defendants") respectfully submit this memorandum in opposition to the motion to strike the expert report of Suzanne Harrison (ECF 95) filed by Plaintiff Just Goods, Inc. ("JGI").

## I. INTRODUCTION

On February 20, 2019, JGI served a report in which its expert, David Nolte of Fulcrum Inquiry, opined, *inter alia*: (1) Just, Inc. realized ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* ECF 95-4, February 20, 2019 Expert Report of David Nolte ("Nolte Rpt."). On March 27, 2019, Just, Inc. timely filed a rebuttal report by its own expert, Suzanne Harrison of PercIPience, in which Ms. Harrison criticized Mr. Nolte's methodology and directly contradicted his conclusions regarding Just, Inc.'s gross sales, then—in the absence of any opinions by Mr. Nolte on the issue of profits—used Just, Inc.'s audited financial statements to analyze Just, Inc.'s profitability. *See* ECF 95-3, Expert Report of Suzanne Harrison ("Harrison Rpt.").

In keeping with its counsel's usual practice,[1] JGI now objects to Ms. Harrison's report as an "untimely affirmative expert report" and seeks to exclude or strike significant portions of it, including those portions regarding Just, Inc.'s ▮▮▮▮▮▮▮▮, which are most damaging to JGI's claim for disgorgement of Just, Inc.'s ▮▮▮▮▮▮▮▮. *See* ECF 95 at 2. JGI also seeks to exclude Ms. Harrison's report on the belief that it "does not meet the exacting standards of Federal Rule of Evidence . . . 702." ECF 95 at 3. As shown below, neither objection has any merit, and JGI's Motion should be denied in its entirety.

---

[1] *See TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. SACV 14-00341 JVS (Anx), 2016 WL 7042085 (C.D. Cal. Aug. 17, 2016) (filing motions to exclude expert reports on similar grounds to those asserted here); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016); *Medlock v. Taco Bell Corp.*, No. 1:07-cv-01314-SAB, 2016 WL 439347 (E.D. Cal. Feb. 4, 2016) (same); *McCrary v. Elations Co. LLC*, No. EDCV 13-0242 JGB (SPx), 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) (same); *Liberty Ins. Corp. v. Sw. Traders Inc.*, No. ED CV-12-02151-JLQ, 2013 WL 12139424 (C.D. Cal. Sep. 2, 2013) (same); *Perez v. State Farm Mut. Auto Ins. Co.*, No. C 06–01962 JW, 2011 WL 8601203 (N.D. Cal. Dec. 7, 2011) (same). Consistent with its practice in these cases, JGI's counsel even has had the chutzpah to lodge such specious evidentiary objections as challenging the admissibility of its own lead counsel's biography page from Sheppard Mullin's own website. *See* ECF 106-2, ECF 108-1 at 2.

II.     ARGUMENT

      A.     **Ms. Harrison's Report And Testimony Are Proper Rebuttal Evidence Within The Meaning Of Federal Rule Of Civil Procedure 26(a)(2)(D)(ii)**

Rebuttal testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). Challenging an expert witness's conclusions and, "[o]f course, challenging the assumptions of an expert witness'[s] report" are "permissible topic[s] of rebuttal testimony." *See Pinterest, Inc. v. Pintrips, Inc.*, No. 13-cv-04608-HSG, 2015 WL 2268498, at *1 (N.D. Cal. May 14, 2015). While rebuttal testimony cannot be used to "set forth an alternate theory" of the case or change the methodologies on which a party chooses to rely, "nothing about Rule 26 or the nature of rebuttal prohibits offering independent opinions or utilizing other methodologies. In fact, offering a different, purportedly better methodology is a proper way to rebut the methodology of someone else." *TCL Commc'ns*, 2016 WL 7042085, at *4.

In short, "*[r]ebuttal testimony is proper as long as it addresses the same subject matter that the initial experts address*." *Perez*, 2011 WL 8601203, at *8 (emphasis added). "Courts have *wide discretion* in determining what may be presented as rebuttal evidence." *Id.* at *6 (emphasis added).

      1.     **Mr. Nolte's Initial Report**

JGI engaged Mr. Nolte to calculate Just, Inc.'s gross sales of products bearing the JUST mark "in which [Just, Inc.'s] sales can be attributed to the use of the JUST Marks" (which he termed the "Accused Products"). ECF 95-4, Nolte Rpt. at 3. The entire purpose of this inquiry was to support JGI's claim for disgorgement of Just, Inc.'s profits, which Mr. Nolte was asked to assume is an "acceptable monetary remedy." *See id.* After making certain assumptions, Mr. Nolte concluded that Just, Inc.'s gross sales revenues of the Accused Products totaled ▇▇▇▇▇ through July 2018. *Id.* at 4. He did not offer any opinion on Just, Inc.'s costs and deductions from that amount, *although he did "anticipate[ ]" he would be "asked to assess [Just, Inc.'s] allowable deductions from the sales identified in this report . . . after [Just] identifies its*

*position, rationale and records in support of its position.*" *See id.* (emphasis added).[2]

In arriving at his ████████ figure, Mr. Nolte excluded entirely from his calculations Just, Inc.'s sales in its food service channel (which includes restaurants, hospitals, and other food service companies), which Mr. Nolte acknowledged ████████████ than its retail channel. *See id.* at 4-5. Mr. Nolte justified this decision based on his "understand[ing] that the sales [in the food service channel] would have occurred if the JUST Marks were not involved"—in other words, he assumed those sales were not attributable to Just, Inc.'s use of the JUST mark. *See id.*[3]

As for the retail channel, Mr. Nolte significantly inflated Just, Inc.'s "disgorgement gross sales" revenues between May 2017 and July 2018 to a healthy ████████, based solely on a June 30, 2016 presentation touting the results of a focus group study conducted by a third party in which a *proposed* new label allegedly created ██████████████████████ *See id.* at 6-7. Mr. Nolte's report clearly reveals his (erroneous) assumption that Just, Inc. actually used this "new label" to market the Accused Products. *See id.* (beginning "the relevant period" in May 2017, "when a new label *was used*") (emphasis added). It turns out, however, that this label never was used. ECF 95-3, Harrison Rpt. at 8-9.

---

[2] Similarly, JGI knew Just, Inc. would be submitting an expert report from Ms. Harrison based on Defendants' disclosure of Ms. Harrison pursuant to the Protective Order in this case. *See* ECF 34 ¶ 10 (stating "Written notice of intention to disclose Confidential Material to an outside expert or consultant pursuant to Paragraph 10(c) shall be provided by facsimile or email seven calendar days before the intended disclosure and shall specify the identity of the individual(s) to whom the intended disclosure will be made, and that person's occupation and employer."). Counsel for Defendants provided this notice with respect to Ms. Harrison to counsel for JGI on September 26, 2018. Upon request, counsel for Defendants will be happy to provide a copy of this communication to the Court.

[3] As Defendants have explained elsewhere, Mr. Nolte's basis for this claim is both razor thin and simply wrong. He relies on a single quotation from Mr. Tetrick's November 2, 2018 deposition. *See* ECF 95-4, Nolte Rpt. at 5 n.4. Worse, he takes that quote out of context, ignores other contrary evidence, and neglects Mr. Tetrick's subsequent testimony making it clear that food service customers purchase JUST-branded products because of their high-quality. *See* ECF 81-1, Ex. 5 (Tetrick Dep. at 482:10-16); *see also* ECF 73-4 at 28 n.41. In other words, Mr. Tetrick made clear beyond the quotation on which Mr. Nolte blindly focused that the goodwill and reputation of Just, Inc.'s JUST brand is what attracts food service customers to purchase JUST-branded products. Put differently, as Mr. Tetrick plainly states in his declaration submitted in support of this Opposition, Just, Inc.'s JUST mark is an important driver of Just, Inc.'s sales in the food-service channel. *See* Declaration of Joshua Tetrick ¶ 4.

### 2. Ms. Harrison's Rebuttal Report

In her expert report, Ms. Harrison rebutted each of Mr. Nolte's assumptions in turn, then concluded that "Mr. Nolte's measures of a Gross Revenue disgorgement amount are based on an incomplete or flawed analysis." ECF 95-3, Harrison Rpt. at 5. First, Ms. Harrison took issue with Mr. Nolte's failure to reach any opinion on "either the types of costs or which costs or deductions in particular should be subtracted from Just, Inc.'s Gross Revenue to arrive at an amount that, in Mr. Nolte's view, would be a proper amount of profits to disgorge if Just, Inc. were found liable . . . ." *Id.* As Ms. Harrison noted, this omission would "unnecessarily prolong" the process "as we respond to one another's positions on this issue." *Id.* To advance the ball—and in lieu of inviting a prolonged dispute over what categories of costs should be properly deducted—Ms. Harrison assessed Just, Inc.'s audited financial statements to determine whether Just, Inc. had realized *any* profits for the relevant period of 2011 to 2018, ▆▆▆▆▆▆▆▆▆▆. *See id.* at 14-21.[4] In doing so, Ms. Harrison expressly took issue with Mr. Nolte's calculations. *See id.* at 14.

As for Mr. Nolte's convenient exclusion of Just, Inc.'s ▆▆▆▆▆▆▆▆▆▆▆▆, Ms. Harrison opined there was "no basis for excluding these sales" because Just, Inc.'s "products sold in the food service channel also feature JUST branding." *Id.* at 5. In Ms. Harrison's opinion,

> the real reason that the Nolte Report omits food service revenue from its calculation of Just, Inc.'s overall revenue is because the food service category has ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*Id.* at 8 (emphasis added).

Ms. Harrison also contradicted Mr. Nolte's assumptions regarding Just, Inc.'s "new label," pointing out that the marketing document on which Mr. Nolte relied was "the findings of a focus group study" involving "hypothetical questions . . . . related to pricing, shelf space presentation and placement, and possible labels" and that the study was "not focused on the labels specifically,

---

[4] Importantly, the fact that Just, Inc. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Thus, any debate about whether additional costs should be deducted becomes a discussion purely about ▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Notably, this is true even if one only considers Just, Inc.'s retail-channel sales. *See id.*

1   so any findings cannot be attributed solely to the labels." *Id.* at 8-9. Also "critical" to Ms.
2   Harrison's analysis was that "the labels shown in the presentation were never printed or used on
3   any retail or food products," revealing the lack of any "basis to support [Mr. Nolte's] claim that a
4   ███████████████████████████████████████████████████████████████████████████████
5   ███████████████████████████████████████████████. *See id.* at 9.

### 3. Ms. Harrison's Rebuttal Report Addresses The Same Subject Matter Mr. Nolte Addressed In His Initial Report And In The Supplemental Report Served After Ms. Harrison's Report

In an effort to strike one of the most damaging portions of Ms. Harrison's report—*i.e.*, her opinion regarding ███████████████—JGI's primary argument is that Just, Inc. bears the burden of proving its costs and deductions, and therefore it should have included Ms. Harrison's profits analysis in an *initial* report, which was due by February 20, 2019. This is a *non sequitur*.

While it is, of course, correct that Just, Inc. bears the burden of proving its costs and deductions, *see Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015), it does not follow that Ms. Harrison was required to opine on costs and deductions in an *initial* report. *See Leadership Studies, Inc. v. Blanchard Training & Dev., Inc.*, No. 15cv1831-WQH(KSC), 2018 WL 1989554, at *15 (S.D. Cal. Apr. 27, 2018) (finding no violation of Rule 26 in defendant's designation of its expert as a rebuttal expert on the issue of genericness notwithstanding defendant's burden of proof on that issue). Issues relating to revenues, costs, deductions, and profits are highly related and indeed, inextricably intertwined: First, the plaintiff proves the defendant's gross sales revenues attributable to the alleged infringement; and *then* the defendant proves its costs to be deducted from those revenues to arrive at the defendant's profits. *See, e.g.*, *Fifty-Six Hope Road Music*, 778 F.3d at 1076 ("The trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement. *Then* the burden *shifts* to the defendant infringer to prove expenses that should be deducted from the gross revenue to arrive at the defendant infringer's lost profits.") (emphasis added); *see also Covertech Fabricating, Inc. v. TVM Bldg. Prods. Inc.*, 855 F.3d 163, 177 (3d. Cir. 2017) ("trademark owner is tasked with proving the infringer's sales *before* the burden of proof shifts to the defendant to show costs and deductions") (emphasis added). Notably, the circuit court in *Covertech Fabricating* framed the

burden on defendant in proving costs in terms of offering a "rebuttal" to plaintiff's showing of gross sales.[5] *Id.* at 177. That is because each step of the analysis is dependent on the one before, making it entirely natural, logical, and appropriate that a defendant's rebuttal expert would seek to rebut the revenues or profits analysis proffered by the plaintiff. Ms. Harrison's evidence and Mr. Nolte's evidence are part and parcel of the same inquiry.[6]

In addition, JGI's operative complaint (filed in Superior Court) lists multiple theories of recovery on JGI's trademark claims, including both JGI's "actual damages" (presumably including its lost profits) *and* Just, Inc.'s "gains, profits, and advantages." *See* Second Amended Complaint ¶¶ 53, 54. "[T]he recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act," requiring JGI to choose a theory. *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (citing 17 U.S.C. § 1117). JGI's Second Amended Complaint did not put Just, Inc. on notice of the damages theory JGI intended to pursue, and JGI's subsequent filings did not make clear exactly what profits it would seek, or on what basis or calculations it would request them.[7] *See Plumbers & Pipefitters*

---

[5] The *Covertech Fabricating* court further rejected plaintiff's argument that if defendant fails to "offer a rebuttal," the court should award damages in the amount of the gross sales shown by the plaintiff, calling this a "nonsensical" interpretation of the Lanham Act's statutory burden-shifting mechanism. 855 F.3d at 177. "A district court's discretion, wide as it may be, is not unbounded, and a bare showing of gross sales is not sufficient to fashion an equitable award without some anchor in the record to support a reasonable estimation of actual profits." *Id.*

[6] JGI pretends this is not true and urges the Court to take a scalpel to the portions of Ms. Harrison's report in which Mr. Nolte's name does not appear, apparently believing Ms. Harrison cannot engage in rebuttal without mentioning Mr. Nolte by name. *See, e.g.*, ECF 95 at 5 n.9. To qualify as a proper rebuttal, however, a report need not "outlin[e] each and every criticism of the opening expert's opinions. That is a *way* to provide an expert rebuttal, but there is no authority suggesting it is the *only way*." *Pinterest*, 2015 WL 2268498, at *2 (emphasis in original).

In *Pinterest*, for example, the plaintiff argued the defendant's expert, Robertson, could not "possibly be a proper rebuttal witness" because he "offered only one direct criticism of [the plaintiff's expert] Jacoby's survey," then commissioned his own survey to test Jacoby's alleged flaw. *Id.* The court found this evidence to be a proper rebuttal: "That Robertson's work was targeted at a specific topic identified by counsel—as opposed to addressing all purported defects in the Jacoby survey— makes Robertson's testimony no less proper as rebuttal evidence." *Id.*

[7] As a result of its communications with JGI's counsel, Just, Inc. believed that JGI would seek disgorgement of Just, Inc.'s profits but did not know what profits or on what basis or calculations. As in *Kirola v. City and Cty. of San Francisco*, No. C-07-3685 SBA (EMC), 2010 WL 373817 (N.D. Cal. Jan. 29, 2010), however, Just, Inc. "did not know with any degree of specificity and certainty" what profit figure JGI would claim "until [JGI] filed [its] expert report." *See id.* at *2 ("Rebuttal disclosure is not automatically excluded solely because it includes evidence that was absent in the original expert disclosure. . . . [A]lthough Plaintiffs in the instant case undoubtedly were aware from the outset of this case that the City contends its facilities, programs, and services

*Local 572 Pension Fund v. Cisco Sys., Inc.*, No. C 01-20418 JW, 2005 WL 1459572, at *2 (N.D. Cal. Jun. 21, 2005) (finding that requiring the simultaneous disclosure of expert witnesses from both parties would prejudice the defendants because the defendants "would have to respond to all of Plaintiffs' possible theories of liability rather than focus on theories relied upon by Plaintiffs' experts").

*JGI apparently instructed its expert to remain silent on Just, Inc.'s costs and deductions in hopes of using the Federal Rules to engage in procedural gamesmanship, disallowing Just, Inc.'s costs and deductions and claiming the entirety of Just, Inc.'s revenues*—in Mr. Nolte's (grossly inflated) opinion, ▮▮▮▮▮▮▮▮▮▮ This result would be *manifestly unjust and inequitable* even if Mr. Nolte only had served a single report. Here, however, *Mr. Nolte served a supplemental report more than three weeks after Defendants served Ms. Harrison's report.* See ECF 95-4, Supp. Nolte Rpt. In his supplemental report, Mr. Nolte had the chance to rebut Ms. Harrison's report—as he previously stated he expected to be asked to do[8]—but apparently declined (or was instructed by counsel not) to do so.

JGI also argues Ms. Harrison conceded most of her report was not a proper rebuttal because of the way she answered JGI's leading questions on the subject during her deposition. *See* ECF 95 at 5. As even JGI's abbreviated excerpt reveals, however, counsel's questions obviously called for a legal conclusion, Ms. Harrison is not a lawyer, and she was not using the word "rebuttal" as that term is defined in Rule 26. *See* ECF 95-2, Ex. E. Regardless, the law is clear that Ms. Harrison's characterization of her own testimony is "immaterial" to whether that evidence constitutes a proper rebuttal. As the court explained in *Pinterest*,

> [T]he fact that Robertson *did not characterize himself as a rebuttal expert* at his deposition (instead, stating that he was simply hired to conduct a survey) *is immaterial. There is no requirement that an expert witness . . . know where his testimony fits in the procedural scheme detailed in Rule 26 of the Federal Rules of Civil Procedure.*

---

are generally accessible, the Plaintiffs did not know with any degree of specificity and certainty which facilities, programs, or services Defendants would claim are accessible until Defendants filed their expert report identifying 225 sites as compliant.").

[8] In his initial report, Mr. Nolte stated he expected he would be "asked to assess [Just, Inc.'s] allowable deductions from the sales identified in [his] report (ECF 95-4, Nolte Rpt. at 3).

2015 WL 2268498, at *1 (emphasis added). What matters here is that Ms. Harrison addressed the entirety of her opinion to the question whether JGI is entitled to Just, Inc.'s profits, specifically challenging Mr. Nolte's stated assumptions and directly contradicting his conclusions on that "same subject matter." *See Perez*, 2011 WL 8601203, at *8. This is proper rebuttal testimony, and Ms. Harrison's report and testimony are admissible on that basis.

> **B.     Even If Portions Of Ms. Harrison's Report Were Not Rebuttal Evidence, Just, Inc.'s Purported Delay In Disclosing That Evidence Was Substantially Justified or Harmless**

Federal Rule of Civil Procedure 37(c)(1) provides for the exclusion of evidence "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). As discussed above, where a plaintiff fails to put the defendant on adequate notice of its specific damages theory or basis, the defendant is substantially justified in designating its expert witness after the plaintiff specifies its damages theory. *Stonefire Grill, Inc. v. FGF Brands, Inc.*, No. CV 11-8292-JGB (PJWx), 2013 WL 12126773, at *4 (C.D. Cal. Jun. 27, 2013).

Harmlessness, in turn, exists when a disclosure is made sufficiently early to "enable the movant to depose the expert and challenge his expert report," *Pac. Indem. Co. v. Nidec Motor Corp.*, 203 F. Supp. 3d 1092, 1097 (D. Nev. 2016) (citations omitted), including by challenging that report "through cross-examination at trial." *Perez*, 2011 WL 8601203, at *6 n.21 (even if evidence could have been introduced as part of a party's affirmative case, the trial court has the "discretion to admit it in rebuttal so long as the [other party] was permitted to contradict it," and the other party's ability to challenge the evidence at trial "is sufficient to overcome the potential prejudice" to the objecting party) (citations omitted). Among the other things noted above, JGI had notice that Just, Inc. intended to serve an expert report from Ms. Harrison months in advance of the service of her report based on Defendants' disclosure of Ms. Harrison pursuant to the Protective Order in this case. *See supra* n.2.

If the Court for some reason determines Just, Inc. failed to comply with Rule 26(a)(2), any such failure was both substantially justified and harmless. Given that Just, Inc. is not required to respond to all possible profits theories, Just, Inc. was substantially justified in serving Ms.

Harrison's report after JGI went on record to specify its bases, theories, and calculations for disgorging Just, Inc.'s supposed profits. *See Stonefire Grill*, 2013 WL 12126773, at *4. In any event, Just, Inc.'s failure was harmless because it neither caused JGI the slightest prejudice nor disrupted the trial of this matter.

Indeed, admitting Ms. Harrison's report will not result in any prejudice to JGI whatsoever. Just, Inc.'s submission of Ms. Harrison's report on Just, Inc.'s profitability could not have surprised JGI, as Mr. Nolte himself anticipated being "asked to assess [Just, Inc.'s] allowable deductions from the sales identified in [his] report." ECF 95-4, Nolte Rpt. at 3. After Defendants served Ms. Harrison's report, Mr. Nolte was given the opportunity to counter Ms. Harrison's opinions in a supplemental report, and took the opportunity to do so. *See* ECF 95-4, Supp. Nolte Rpt. Yet Mr. Nolte's supplemental report—which was submitted *more than three weeks after* Ms. Harrison's report—is devoid of any mention of Just, Inc.'s costs or deductions. *See id*. In other words, to the extent any residual prejudice existed, JGI could have cured that prejudice by including in Mr. Nolte's supplemental report a rebuttal to Ms. Harrison's opinions. The fact that Mr. Nolte submitted a supplemental report, but elected not to attack Ms. Harrison's cost and deductions calculations, reveals the lack of any such prejudice here. More than that, it reveals the "gotcha!" procedural gamesmanship JGI has decided to attempt in lieu of forthrightly and substantively addressing Ms. Harrison's report.

In addition, JGI already has deposed Ms. Harrison (at length) about her opinion, including the portions to which JGI objects, and it also will have ample opportunity to examine Ms. Harrison at trial on the same subjects it identifies in its Motion. And because Mr. Nolte was already given an opportunity to rebut Ms. Harrison's report, a second supplemental report is not necessary.

In short, if the Court determines that Just, Inc. failed to comply with Rule 26(a)(2), allowing Just, Inc. to introduce Ms. Harrison's report and testimony on the subject of Just, Inc.'s profitability would cause no harm or prejudice whatsoever to JGI, making exclusion of Ms.

Harrison's evidence inappropriate and unjust.[9] *See Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) (holding the district court did not abuse its discretion in allowing plaintiff's expert to testify because plaintiff fully complied with Rule 26(a)(2)(B) more than seven months before trial and "[n]ot only was Marylander's anticipated testimony not a 'surprise' to appellants, they were obviously able to take steps they thought necessary to contend with his testimony at trial.").

### C. Ms. Harrison's Evidence Is Both Reliable And Relevant

When a party proffers expert testimony, the Court is tasked with determining whether the testimony is both reliable and relevant under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). "The Court has broad discretion in assessing both requirements." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. C 10-00544 JW, 2011 WL 5417090, at *3 (N.D. Cal. Oct. 27, 2011) (citation omitted). Both are clearly satisfied here.

#### 1. Ms. Harrison's Expert Report Is Reliable

The reliability requirement is designed to ensure "that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Thus, "[t]he offering party must show by a preponderance of the evidence (1) that the expert is qualified to render the opinion and (2) that the

---

[9] In the event the Court determines a sanction is appropriate, Just, Inc. respectfully suggests the Court exercise its "wide latitude" to extend discovery solely for the purpose of enabling Mr. Nolte to have another opportunity to respond to Ms. Harrison's report, if he wishes to do so. *See Moreno v. Natividad Med. Ctr.*, No. C 03-03965 JW, 2004 WL 6066548, at *3 (N.D. Cal. Dec. 6, 2004); *see also Sonoma Tires, Inc. v. Big O Tires, LLC*, No. C 11-0818 RS, 2013 WL 12174138, at *2 (N.D. Cal. Apr. 19, 2013) ("Although the disclosure of Tarlson was untimely, . . . Sonoma Tires has offered to produce Tarlson for a deposition, and to reopen discovery for the purpose of allowing Big O to conduct discovery on him. . . . expert discovery shall reopen immediately thereafter for two weeks for the limited purpose of conducting discovery relative to Tarlson and his opinions."); *Moreno*, 2004 WL 6066548, at *3 (refusing to exclude testimony, instead ordering submission of expert rebuttal report); *Szoka v. Woodle*, No. C 02-5524 SI, 2004 WL 5512964, at *2 (N.D. Cal. Jun. 7, 2004) ("[T]rial is not until January 10, 2005. Rather than strike the report, the Court will allow plaintiffs to respond to Mr. Colaianni's report, if they wish to do so, on or before July 6, 2004. Under these circumstances, permitting Mr. Colaianni's testimony will not unduly prejudice plaintiffs.") (citing *Amarel v. Connell*, 102 F.3d 1494, 1515-16 (9th Cir. 1997)). In the event that the Court enters such an Order, Defendants do not need, and will forego any claim, to further depose Mr. Nolte on such a further supplemental report.

opinion offered has adequate support." *PixArt*, 2011 WL 5417090, at *3 (citing *Daubert*, 509 U.S. at 588–90).

Federal Rule of Evidence 702 requires testifying experts to be "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. This is a "low" threshold, as "a minimal foundation of knowledge, skill, and experience suffices." *PixArt*, WL 5417090, at *3 (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004)). "Under Ninth Circuit law, an expert may be qualified through either practical training or academic experience." *PixArt*, 2011 WL 5417090, at *4.

As for the question of adequate support, where, as here, an "expert opinion is based on specialized or technical knowledge, as distinguished from scientific knowledge, it is not necessary to rigidly adhere to the *Daubert* factors." *See Perez*, 2011 WL 8601203, at *7 (citation omitted). "[A]n expert 'is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.'" *Id.* (quoting *Daubert*, 590 U.S. at 592). And in the final analysis, "[w]hether 'the expert's conclusions are actually correct' is a question of weight which is for the jury, rather than for the court." *Id.* (citation omitted).

Here, like the expert in *PixArt*, Ms. Harrison holds a Master of Business Administration degree from the University of Chicago. *See* ECF 95-3, Harrison Rpt. Appendix ("Appx.") A at 1; *PixArt*, 2011 WL 5417090, at *4 (finding the expert's education and professional experience satisfied Rule 702). Ms. Harrison also has extensive professional experience in managing and valuing intellectual property assets, and has taught a course on the subject of Intellectual Property Management at the Haas School of Business at the University of California, Berkeley. ECF 95-3, Harrison Rpt. Appx. A at 1. She further has served as an expert witness in cases in federal, state, tax and bankruptcy courts, where her testimony has covered damages and IP valuation, among other topics. *Id.* at 2. Contrary to JGI's baseless assertions, these are not the credentials of a "junk" scientist. *See* ECF 95 at 9.

JGI faults Ms. Harrison for not having performed a trademark apportionment analysis before, for not being a certified public accountant like Mr. Nolte, and for not "regularly perform[ing] accounting work in her business"—arguing these supposed deficiencies prevent Ms.

Harrison from reliably evaluating Just, Inc.'s profits attributable to its use of the JUST mark. ECF 95 at 11. This is nonsense.

First, JGI's contention that Ms. Harrison is unqualified because she has not served as an expert in a *trademark* case is utterly illogical. Under JGI's rationale, no new trademark financial experts ever could be found admissible in any case merely because they lack prior expert experience in trademark cases.

Second, JGI's attacks on Ms. Harrison's accounting credentials are wholly unavailing and misplaced. Ms. Harrison has worked as a Senior Associate at Coopers & Lybrand—a predecessor to one of the "big four" accounting firms in the United States—where she worked in the Mergers & Acquisitions group (which required evaluating financial statements routinely) and conducted forensic accounting. *See* ECF 95-3, Harrison Rpt. Appx. A at 1-2. She also worked as a financial analyst for Hewlett Packard, where she was responsible for providing financial guidance in research-and-development decision making, and was responsible for booking all research-and-development expenses into Hewlett Packard's business unit financial statements. *Id.* at 2. In any event, one need not be a certified public accountant to analyze a balance sheet. *Cf. Perez*, 2011 WL 8601203, at *6 ("Defendants' contention that Wood is not qualified to rebut Vogler because he lacks engineering expertise is misguided, because the basis for Wood's opinion does not require an engineer's expertise."). Like Mr. Nolte, whose "client work focuses primarily on valuation of businesses and intangible business assets" (ECF 95-4, Nolte Rept. Ex. 1 at 1), Ms. Harrison's day-to-day work at her firm, PercIPience, focuses primarily on valuing intellectual property assets, which experience richly prepared her for her opinion here. In sum, Ms. Harrison's qualifications easily satisfy Rule 702 because her "technical . . . or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

JGI also takes issue with the reliability of Ms. Harrison's cost analysis, arguing she should have eliminated certain categories of deductions from Just, Inc.'s gross sales revenues. *See* ECF 95 at 12-13. But JGI's disagreement with Ms. Harrison's cost analysis and conclusions about Just, Inc.'s profitability does not make her opinion unreliable under the Supreme Court's "liberal

standard of admissibility" in *Daubert*. *See Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005) (reversing district court's refusal to admit expert testimony and holding that refusal was not harmless error). Ms. Harrison bases her testimony "on sufficient facts or data," that "testimony is the product of reliable principles and methods," and Ms. Harrison "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b-d). This is all the Federal Rules require.

If JGI wishes to challenge Ms. Harrison's conclusions, including through the introduction of Mr. Nolte's testimony, it has every right to do so at trial. "[T]he '[a]uthority to determine the victor in such a 'battle of expert witnesses' is properly reposed in the jury.'" *Dorn*, 397 F.3d at 1196 (quoting *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) ("To the extent Gemplus sought to challenge the correctness of Humetrix's experts' testimony, its recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of its own expert witnesses.")).

### 2. Ms. Harrison's Evidence Is Relevant To The Proper Measure of Damages In The Event Liability Is Established

"'Relevant evidence' is defined as that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' The Rule's basic standard of relevance thus is a liberal one." *Daubert*, 509 U.S. at 587 (quoting Fed. R. Evid. 401). To be "relevant" under Rules 401 and 702, the evidence at issue simply must "'assist the trier of fact to understand the evidence or to determine a fact in issue.' . . . 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Id.* at 591 (citations omitted); *see also id.* (citing *U.S. v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.")). In short, there must be a sufficiently close "fit" between the proffered evidence and the facts of the case in light of the governing legal standard. *See Daubert*, 509 U.S. at 591.

JGI argues Ms. Harrison's cost analysis is irrelevant as well as unreliable—even arguing,

incredibly, that Just, Inc.'s *audited financial statements* are "completely irrelevant" to the question whether Just, Inc. realized any profits attributable to the use of its JUST mark. *See* ECF 95 at 12-13 (emphasis added). To the contrary, here, as in *PixArt*, Ms. Harrison "offers an opinion as to how damages should be calculated based on the available data," *PixArt*, 2011 WL 5417090, at *5, making a perfect fit between Ms. Harrison's report and testimony and the question whether JGI is entitled to Just, Inc.'s profits (if any) between 2013 and 2018. *See id.* (denying motion to exclude expert's testimony because, *inter alia*, his "calculations are admissible as likely to assist the trier of fact"). "Courts typically allow experts to testify as to the proper calculation of damages for complex awards, even when the underlying data relied upon by the experts is itself contested." *Id.* (citing *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004)). Where, as here, "the parties take inconsistent positions as to how a damages award should be calculated," courts "trust[ ] that juries will apply the law according to their instructions in weighing the calculations provided by various experts." *Id.* (citation omitted).

In *Daubert*, the Supreme Court "was not overly concerned about the prospect that some dubious scientific theories may pass the gatekeeper and reach the jury under the liberal standard of admissibility set forth in that opinion." *Dorn*, 397 F.3d at 1196. Instead, the Court instructed that if a party wishes to challenge an opposing expert, its "traditional and appropriate means" are "[v]igorous cross-examination, presentation of contrary evidence, and [the Court's] careful instruction on the burden of proof." *Id.* (quoting *Daubert*, 509 U.S. at 596). These are the appropriate means for JGI to challenge Ms. Harrison's evidence here.

Not content to contest that evidence in the traditional fashion, JGI seeks to exclude from evidence Ms. Harrison's analysis of Just, Inc.'s costs and deductions and her conclusions about ▮▮▮▮▮▮▮▮▮▮—a "pie in the sky" number that bears no relation to any evidence of record and ▮▮▮▮▮▮▮▮▮▮. The Rules of Evidence were not designed for this purpose.

### III.  CONCLUSION

For the foregoing reasons, Just, Inc. respectfully requests that the Court deny in its entirety

JGI's Motion to strike Ms. Harrison's report and testimony.

DATED: June 6, 2019              Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


By: */s/Dennis L. Wilson*
     DENNIS L. WILSON

Attorneys for Defendants
Just, Inc. f/k/a Hampton Creek, Inc. and Joshua Tetrick