KILPATRICK TOWNSEND & STOCKTON LLP
Dennis L. Wilson (SBN 155407)
dwilson@kilpatricktownsend.com
Sophy T. Manes (SBN 287583)
smanes@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone:   415 576 0200
Facsimile:    415 576 0300

KILPATRICK TOWNSEND & STOCKTON LLP
Trevor C. Maxim (SBN 317859)
tmaxim@kilpatricktownsend.com
9720 Wilshire Blvd., PH
Beverly Hills, CA  90212
Telephone:   310 248 3830
Facsimile:    310 860 0363

KILPATRICK TOWNSEND & STOCKTON LLP
Charles H. Hooker III (*Pro Hac Vice*)
chooker@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta, GA  30309
Telephone:   404 815 6500
Facsimile:    404 815 6555

KILPATRICK TOWNSEND & STOCKTON LLP
Brittany T. Knutson (*Pro Hac Vice*)
bknutson@kilpatricktownsend.com
607 14th Street, NE, Suite 900
Washington, DC  20005
Telephone:   202 508 5800
Facsimile:    202 508 5858

Attorneys for Defendants
JUST, INC. f/k/a HAMPTON CREEK, INC. and
JOSHUA TETRICK

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JUST GOODS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JUST, INC. f/k/a HAMPTON CREEK, INC., a Delaware corporation, JOSHUA TETRICK, an individual, and DOES 1-10,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Civil Action No. 3:18-CV-2198-WHO<br><br>**DEFENDANT/COUNTER-PLAINTIFF JUST, INC. AND DEFENDANT JOSHUA TETRICK'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO JUST GOODS, INC.'S MOTION TO STRIKE THE EXPERT REPORT AND TESTIMONY OF JEFFREY HANDELMAN**<br><br>Date:         July 10, 2019<br>Time:        2:00 p.m.<br>Crtrm:       2, 17th Floor<br>                  Hon. William H. Orrick<br>Second Amended<br>Complaint Filed:        April 5, 2018 |

Defendants/Counterclaim-Plaintiffs Just, Inc. and Joshua Tetrick (collectively, "Defendants") respectfully submit this memorandum of law in opposition to the Motion by Plaintiff Just Goods, Inc. ("JGI" or "Plaintiff") to Exclude and/or Strike the Rebuttal Expert Witness Report of Jeffery A. Handelman.[1] For the reasons set forth below, JGI's motion should be denied in its entirety.

## I.     INTRODUCTION

In support of its claims in this case, JGI asserts two federal trademark registrations for the trademark JUST, among other things. The first registration, Registration, No. 5,386,813, matured from U.S. Trademark Application Serial No. 85/724,281, covering goods in Class 29. The second registration, Registration No. 5,380,798, matured from U.S. Trademark Application Serial No. 85/724,282, covering goods in Class 30.[2]

In an effort to claim these registrations are valid, JGI submitted the expert report of Mr. Daniel M. Cislo.[3] As part of his report, Mr. Cislo discusses the intent-to-use applications at issue, including that "[t]o file the intent-to-use application the applicant merely needs a bona fide intention to use the mark in commerce." Cislo Rpt. at 17 ¶ 40. Mr. Cislo further opines that JGI complied with the rules, regulations, and procedures of the U.S. Patent and Trademark Office ("USPTO") governing the filing and prosecution of those applications,[4] thus clearly indicating JGI complied with the USPTO requirement of having a bona fide intent. *Id.* at 6, 39.

In response to Mr. Cislo's Report, Defendants submitted the Rebuttal Report of Mr. Handelman. JGI does not challenge Mr. Handelman's credentials and does not dispute that Mr. Handelman is qualified to offer the opinions contained in his report.

---

[1] Mr. Handelman's report is attached as Exhibit A to the Declaration of Jill Pietrini, filed with JGI's motion to strike. ECF 96-6 ("Handelman Rpt.").
[2] For convenience, U.S. Trademark Application Serial No. 85/724,281 will be referred to as the "'281 Application," and U.S. Trademark Application Serial No. 85/724,282 will be referred to as the "'282 Application."
[3] Mr. Cislo's report is attached as Exhibit B to the Declaration of Jill Pietrini. ECF 94-4 ("Cislo Report").
[4] Along the same lines, Mr. Cislo also opines that JGI followed "routine and acceptable USPTO practices" in prosecuting these applications. *Id.*

Mr. Handelman was asked to review and rebut the expert report submitted by Mr. Cislo, including by examining the authorities, rules, practices, and procedures of the USPTO insofar as they pertain to intent-to-use applications and resulting registrations; the requirements associated with intent-to-use applications; and the standards for assessing an alleged bona fide intention to use a mark in commerce for the goods identified in an application. Handelman Rpt. at 1-2. In preparing his rebuttal, Mr. Handelman reviewed various materials including the expert report of Mr. Cislo; pleadings and deposition testimony in this case; materials produced in discovery in this case; the USPTO file histories pertaining to the '281 Application and the '282 Application; the Trademark Manual of Examining Procedure ("TMEP"); and related rules and regulations governing intent-to-use applications. Handelman Rpt. at 5.

As discussed more fully below, Mr. Handelman performed a reasonable and reliable analysis of the opinions rendered by Mr. Cislo in his report. Mr. Handelman's report corrects, clarifies, and refutes several matters raised in Mr. Cislo's report that are of clear relevance in this trademark dispute.

Although several of the statements in Mr. Cislo's report are incomplete or misleading, Defendants have not sought to exclude that report in recognition of the general attitude favoring admission of expert testimony regarding USPTO matters. Defendants instead will address the deficiencies in Mr. Cislo's opinions at trial. Allowing Mr. Cislo's testimony without also allowing the rebuttal of Mr. Handelman would seriously prejudice Defendants and would be manifestly unjust. The Court therefore should allow both parties to present their USPTO-related expert testimony at trial in order to allow the jury to determine which testimony it finds more reliable and credible.

## II.  ARGUMENT

### A.  Mr. Handelman's Report Rebuts The Expert Report Of Mr. Cislo

JGI contends that Mr. Handelman's report is not proper rebuttal. This argument is baseless. Rebuttal evidence is proper if it serves to contradict, explain, discredit, or defuse the impact of the evidence offered by an adverse party. *E.g., U.S. v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005);

*Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018). "Rebuttal testimony [also] is proper as long as it addresses the same subject matter that the initial experts address." *Perez v. State Farm Mut. Auto Ins. Co.*, No. C 06–01962 JW, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011). And "[c]ourts have *wide discretion* in determining what may be presented as rebuttal evidence." *Id.* at *6 (emphasis added). As discussed below, Mr. Handelman's report directly rebuts and discredits several points asserted in the Cislo report. It thus addresses the same subject matter, would assist a jury in reaching determinations of fact, and is proper. The Court, therefore, should deny JGI's motion in its entirety.

### 1. Mr. Handelman's Report Rebuts Mr. Cislo's Claim That The Applications Complied With USPTO Procedures

Mr. Cislo's report asserts without qualification that JGI complied with USPTO requirements in filing and prosecuting the applications at issue: "It is my opinion that JGI's filing of its applications to register JUST in Classes 29 and 30, the requests for extension to file statements of use ('extension requests'), and the statements of use were in compliance with USPTO procedures." Cislo Rpt. at 6, 39. In the motion to strike, counsel for JGI characterizes Mr. Cislo's report as opining "as to whether the applications filed by JGI and Hampton Creek were *facially* compliant with PTO Procedures." ECF 94 at 1 (emphasis in original).[5] Mr. Handelman's report directly refutes these misleading contentions regarding compliance with USPTO requirements and corrects the unwarranted inferences that may be drawn therefrom.

In rebutting Mr. Cislo's opinions, Mr. Handelman addresses what happened during the filing and prosecution of the applications, including analyzing the lengthy file histories associated with the two trademark applications. The facts and circumstances pertaining to the filing and prosecution of the applications directly undercut Mr. Cislo's contention that JGI complied with USPTO requirements. As discussed in the Handelman Report:

---

[5] JGI defines "PTO Procedures" broadly as "the relevant requirements, procedures, policies, and practices of the PTO and TTAB [Trademark Trial and Appeal Board] as they relate to trademark prosecution and opposition proceedings." *Id*.

3

### The '281 Application

- The '281 Application identified 30 products in Class 29. Thirty of the 31 products identified were never brought to market at any time.

- Despite the lack of ongoing meaningful research, development, marketing or promotional activities related to these 30 products, they remained in the application for more than five years. The 30 products were dropped from the application more than five years after the filing date.

- In four separate extension requests for the '281 application, JGI represented to the USPTO that it had made ongoing efforts to use the JUST mark in connection with all the identified goods via "product or service research or development," when that was not the case.

- No concrete steps were taken to develop, manufacture, source, begin distributing, advertise, or sell the single product remaining in that application until more than four-and-a-half years after the application filing date.

Handelman Rpt. at 17-22, 29-36.

### The '282 Application

- The '282 Application identified 29 products in Class 30. Twenty-six of the 29 products identified were never brought to market at any time.

- Despite the lack of ongoing meaningful research, development, marketing or promotional activities related to these 26 products, they remained in the application for more than five years. The 26 products were dropped from the application more than five years after the filing date.

- In four separate extension requests for the '282 application, JGI represented to the USPTO that it had made ongoing efforts to use the JUST mark in connection with all the identified goods via "product or service research or development," when that was not the case.

- No concrete steps were taken to develop, manufacture, source, begin distributing, advertise, or sell two of the three remaining products in that application until more than three years after the application filing date.

- No concrete steps were taken to develop, market, or sell the final remaining product in that application until more than four-and-a-half years after the application filing date.

Handelman Rpt. at 23-36.

As outlined above, significant evidence discredits Mr. Cislo's opinion that JGI purportedly complied with USPTO requirements in filing and prosecuting the applications in question. This evidence indicates that, contrary to Mr. Cislo's contentions, JGI did *not* have a bona fide intent to use the JUST mark on all of the identified goods as of the date it filed the applications, and JGI had *not* made ongoing efforts to use the JUST mark in connection with all of the identified goods through "product or service research or development" as claimed in the several extension requests contained in the file histories. JGI wants Mr. Cislo to testify that it complied with USPTO requirements, but at the same time asks this Court to exclude Mr. Handelman's testimony that directly rebuts this contention. JGI cannot have it both ways.

Moreover, JGI's use of the term "facial compliance" with USPTO Procedures is highly misleading and prejudicial. The difference between "facial compliance" and "actual compliance" can be vast, particularly in the context of complicated USPTO rules and regulations.

A simple example helps illustrate the point: Assume that a particular state requires a person to have auto insurance in order to register a vehicle within the state. A person who checks the box on the vehicle registration form saying, "Yes, I have automobile insurance," may have facially complied with the insurance requirement. This does not mean, however, that that the person in fact has automobile insurance as required by law.

Likewise here, JGI may have "facially complied" with USPTO Procedures by stating that it had a bona fide intention to use the JUST mark in commerce for the goods identified in the '281 Application and the '282 Application when it filed those applications. This does not mean, however, that JGI in fact had the requisite bona fide intent to use the mark in commerce for all of the identified goods.

Similarly, JGI may have "facially complied" with the USPTO "good cause" requirement by stating in its statement-of-use extension requests that it had made ongoing efforts to use the JUST mark in connection with all the identified goods via "product or service research or development."  The record shows, however, that JGI had made no such efforts.

The prejudice of Mr. Cislo's misleading statements is all the more serious when one

5

realizes that, consistent with USPTO practice, the USPTO did not verify the statements in question during *ex parte* prosecution. The applicant's statements of a bona fide intention to use and ongoing efforts to use the applied-for mark for all of the identified goods generally will be taken at face value by the USPTO in the *ex parte* context. TMEP §§1101 and 1108.02(f). An applicant's false statements can, however, form the basis for a challenge to validity in a subsequent court action involving the mark. Handelman Rpt. at 7, 16.

In summary, a jury listening to Mr. Cislo (alone) say that JGI "complied" or "facially complied" with all the USPTO Procedures—including those pertaining to bona fide intention to use and ongoing efforts to use the mark for all of the identified goods—could not help but be swayed, causing significant unfair prejudice to Defendants. To offset this prejudice, Defendants' expert Mr. Handelman should be permitted to rebut this testimony regarding purported compliance with USPTO Procedures—which is precisely what the Handelman rebuttal report does.

**2.    Mr. Handelman's Report Rebuts Mr. Cislo's Claim That JGI's Prosecution Of The Applications Was Routine And Acceptable**

Mr. Cislo's report opines that "[t]here was nothing out of the ordinary" as to how JGI handled the prosecution of the applications in question. Cislo Rpt. at 6, 39.  In its motion to strike, counsel for JGI characterizes the Cislo Report as stating that JGI's actions in prosecuting the trademark applications "are routine and acceptable PTO practices in trademark prosecution and/or permitted by applicable PTO rules or the Lanham Act." ECF 94 at 1. Mr. Handelman's report directly refutes and discredits these assertions.

As shown above, JGI's prosecution activities are hardly "normal and routine."  Indeed, this is the very type of conduct that the USPTO seeks to prevent in order to protect the integrity of the intent-to-use system and the trademark register. Handelman Rpt. at 2, 15. Mr. Handelman should be permitted to refute Mr. Cislo's opinion on this point as well.

**B.     Mr. Handelman's Deposition Testimony Highlights His Rebuttal Of Mr. Cislo's Report**

JGI had an opportunity to depose Mr. Handelman and question him at length about his report. Mr. Handelman testified quite clearly regarding his proper rebuttal of Mr. Cislo's report:

> I looked at Mr. Cislo's report. I made a determination as to whether any statements in Mr. Cislo's report were incomplete or misleading. I looked at the Trademark Manual of Examining Procedure, I looked at the file histories for the two applications, I looked at the legislative history, and then I opined on what I thought was either incomplete or misleading in Mr. Cislo's report.

June 7, 2019 Declaration of Brittany Knutson ("Knutson Decl.") Ex. 1 (Handelman Dep. at 60:9-17).

Regarding Mr. Cislo's opinion that the prosecution of the applications was routine, Mr. Handelman explained:

> Again in 92, Paragraph 92, Mr. Cislo gives his opinion there was nothing out of the ordinary as to how the trademark applications were handled on JGI's end. To the contrary, the prosecution of those applications is at odds with the spirit and intent of the intent-to-use provisions as we've discussed at length previously, including as they pertain to the bona fide intent-to-use allegation in the original application and in each of the extension requests. So Mr. Cislo's categorical statement that there was nothing out of the ordinarily as to how the applications were handled is misleading, incomplete, and inaccurate.

*Id.* at 147:7-20.

To take just one more example, when asked about the file histories and the extension requests, Mr. Handelman again directly refuted Mr. Cislo's position: "The mere fact that the applicant clicked the box saying we're engaged in ongoing efforts does not necessarily establish the good cause requirement, contrary to Mr. Cislo's statement." *Id.* at 159:14-17. These few illustrations highlight the prejudice that would occur if Mr. Cislo were permitted to testify about his opinions without proper rebuttal.

**C.     Mr. Handelman's Report Is Relevant And Will Be Helpful To The Jury**

Mr. Handelman directly refutes Mr. Cislo's contentions regarding JGI's alleged compliance with USPTO filing and prosecution requirements. This stands in contrast to the cases

7

on which JGI relies. JGI's reliance, for instances, on *American Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co., LLC*, No. 13-cv-324 (RGA), 2017 WL 3528606 (D. Del. 2017), and *Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.*, No. 92 C 5170, 1994 WL 529331(N.D. Ill. Sept. 27, 1994), is misplaced. In *American Cruise Lines*, the expert was seeking to opine on the question of whether the plaintiff's mark was distinctive, 2017 WL 3528606, at *14, while in *Sam's Wines* the expert sought to give her opinion on the ultimate issue of trademark infringement. 1994 WL 529331, at *9. Here, by contrast,

    Because Mr. Cislo's opinion broadly advances the position that JGI complied with all USPTO requirements, his opinion encompasses, among other things, *the requirement that the applicant must have a bona fide intention to use the mark* on all of the identified goods as of the application filing date, 37 C.F.R. §2.34(a)(2) and TMEP §1101; *and the requirement that the applicant be engaged in ongoing efforts to make use of the mark* for all of the goods covered by the extension requests, 37 C.F.R. §2.89(d) and TMEP §1108.02(f). As such, Mr. Handelman's report properly rebuts Mr. Cislo's contentions on these issues and will be helpful to the jury. Furthermore, *it would be highly prejudicial and manifestly unjust to permit Mr. Cislo to offer opinions that are—or are tantamount to—offering opinions on an ultimate issue, while at the same time precluding Defendants from directly rebutting those opinions and the misguided or misleading bases for them*. Given the complexities associated with USPTO practice, including the filing and prosecution of trademark applications, this is precisely the type of situation in which expert testimony is admissible because the testimony will "help the trier of fact." Fed. R. Evid. 702(a).

    Courts frequently allow expert testimony where, as here, there is a need to explain the nuances of USPTO practice and the USPTO prosecution file histories of the subject matter in question. Such testimony aids the jury in understanding the evidence and facts at issue. *E.g., Solid 21, Inc. v. Hublot of Am.*, 685 Fed. Appx. 530 (9th Cir. 2017); *UCB Societe Anonyme v. Mylan Labs., Inc.*, No. 1:04-CV-683WSD, 2006 WL 839397, at *2-3 & n.2 (N.D. Ga. 2006). Although JGI may disagree with Mr. Handelman's opinions and his criticisms of Mr. Cislo, the

testimony is reliable and will help the jury understand the evidence. *Goforth v. Paris*, No. 5:02-cv-94 (HL), 2007 WL 988733, at *3 (M.D. Ga. 2007) ("expert testimony is admissible if it will simply assist the trier of fact to understand the facts already in the record, even if all it does is put those facts in context.") (citation omitted).

### III.   CONCLUSION

Defendants would face severe prejudice if JGI's expert is free at trial (or on summary judgment) to tell his version of what transpired in connection with the filing and prosecution of JGI's intent-to-use applications, but Defendants are not permitted to have their expert respond by revealing the incomplete and misleading nature of the testimony and opinion in question. The Court, therefore, should exercise its wide discretion in determining what may be presented as rebuttal evidence to deny in all respects JGI's motion to exclude Mr. Handelman's report and testimony.

DATED:  June 7, 2019                    Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */Dennis L. Wilson /*
         DENNIS L. WILSON

Attorneys for Defendants
Just, Inc. f/k/a Hampton Creek, Inc. and Joshua Tetrick