UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUST GOODS, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>JUST, INC., et al.,<br><br>   Defendants. | Case No. 3:18-cv-02198-WHO<br><br>**ORDER GRANTING MOTION TO ENFORCE COMPLIANCE WITH TERM SHEET**<br><br>Re: Dkt. Nos. 133, 134, 136, 138 |

This case, which settled in August 2019, involved a trademark dispute and the allegedly justified breach of a contract intended to avoid that same dispute. After a hearing on summary judgment before me and a day-long settlement conference with Chief Magistrate Judge Joseph C. Spero, plaintiff Just Goods, Inc. ("JGI") and defendants Just, Inc. fka Hampton Creek, Inc. and founder Joshua Tetrick agreed to a binding Term Sheet. Before me is JGI's motion to enforce that agreement on the grounds that the defendant—now officially known as Eat JUST, Inc. ("EJ")—has failed to comply with its terms in two respects. As set forth below, I agree and will order EJ to comply with the terms of the settlement.

**BACKGROUND**

In September 2012, JGI—whose flagship product is Just Water—filed two intent-to-use trademark applications for the mark "Just" with the Patent and Trademark Office ("PTO"), covering dozens of products. Manes Decl. Ex. 4. After obtaining five extensions, in November 2017 JGI filed a statement of use of the Just mark in association with olive oil, cereal-based snack food, snack cakes, and snack foods.

EJ produces and sells plant-based food products including mayonnaise, salad dressing, eggs, and cookie dough. From 2013 to 2014, EJ filed trademark applications for JUST MAYO,

1  JUST SCRAMBLE, JUST COOKIES, and JUST COOKIE DOUGH but learned that JGI's

2  applications would prevent those registrations.

3      After several months of correspondence, on October 31, 2014, the parties entered into a

4  Coexistence Agreement in which (i) JGI agreed not to use the mark with the words mayo,

5  scramble, cookie dough, or cookies, and (ii) EJ agreed to use the mark with the words mayo,

6  scramble, cookie dough, and cookies being "substantially larger in size and font" and "the

7  dominant part" of such marks. *Id.* ¶¶ 1.1, 1.2. But in 2017 and 2018, Just developed new labels

8  that prominently featured the Just mark in alleged violation of that agreement.

9      JGI then initiated this action in state court, and on April 12, 2018, EJ removed JGI's

10 second amended complaint to this court. Dkt. No. 1. On July 10, 2019, I heard argument on the

11 parties' cross-motions for summary judgment and referred the case to Judge Spero for settlement.

12 Dkt. No. 125. The parties reached a settlement during the course of a day-long conference on

13 August 13, 2019, and I later entered a dismissal order. Dkt. Nos. 131, 132.

14     On February 26, 2020, JGI filed a motion to amend the order dismissing the case and to

15 enforce compliance with the Term Sheet agreed to at the settlement conference. Motion ("Mot.")

16 [Dkt. No. 134-5].

## DISCUSSION

18     JGI makes three requests: (i) that I amend my dismissal order to retain jurisdiction over

19 the parties' settlement agreement, (ii) that I find that EJ is in breach of that agreement and order its

20 compliance, and (iii) that I award it attorney fees for bringing the instant motion.

### I. AMENDING THE JUDGMENT

22     Federal Rule of Civil Procedure 60(a) permits a district court to "correct a clerical mistake

23 or a mistake arising from oversight or omission whenever one is found in a judgment, order, or

24 other part of the record." Fed. R. Civ. P. 60(a). In *Shuting*, the Ninth Circuit determined that it

25 was not an abuse of discretion to amend a judgment to maintain jurisdiction over a settlement

26 agreement. *Shuting Kang v. Harrison*, 789 F. App'x 68, 69 (9th Cir. 2020). Although the minute

27 entry from the settlement conference with the magistrate judge indicated that the court would

28 retain jurisdiction, the judgment itself omitted such language. *Id.* Because the record supported a

finding that the court originally intended to retain jurisdiction, it did not abuse its discretion by amending the judgment. *Id.*

Here, as the Term Sheet shows, the parties intended for me to retain jurisdiction to enforce their agreement. Declaration of Jill M. Pietrini ("Pietrini Decl.") Ex. A (Term Sheet) [Dkt. No. 134-8] ¶ 17 ("The U.S. District Court for the Northern District of California will retain jurisdiction over the Action to enforce the settlement agreement incorporating this term sheet or this term sheet."). Judge Spero shared that understanding and asked the parties to lodge the Term Sheet with him, which they did. *See* Pietrini Decl. [Dkt. No. 134-6] ¶ 3, Ex. C [Dkt. No. 134-9]. Because the parties neglected to clarify this issue in the docket, my dismissal order does not include a clause retaining jurisdiction. At JGI's request and with no objection from EJ, I will amend the judgment to include such language and thus reflect the original intent of the parties and Judge Spero.

## II. WHETHER EJ HAS FAILED TO COMPLY

There is no dispute that the parties' Term Sheet is an enforceable settlement agreement. *See City Equities Anaheim v. Lincoln Plaza Dev. Co.*, 22 F.3d 954, 957 (9th Cir. 1994) (noting that district courts have authority to enforce settlement agreements). JGI argues that EJ has breached the term sheet in two[1] ways: (i) by broadly using the term Just on social media and other websites, and (ii) by changing its corporate name to Eat JUST, Inc. rather than Eat Just, Inc.

### A. Broad Use of the Term Just

JGI argues that EJ has breached Paragraph 15 of the Term Sheet because it continues to use Just as its primary company name on online platforms, LinkedIn, and Wikipedia. EJ argues that its use complies with Paragraph 1(c), which JGI seeks to read out of the parties' agreement.

---

[1] The issue over the domain names is moot because EJ transferred the final two (and according to JGI, most important two)—justforall.com and justforall.cn—on March 10, 2020. *See* Hooker Decl. ¶ 8, Ex. B.

3

Paragraph 1 sets out the broad framework of limitations on EJ's use of the word Just. It provides,

> Except for internal use by Defendants, Defendants will restrict their use of JUST to: . . . (c) in text (for example, in advertising or marketing copy so long as the JUST Frame Logo is present or in connection with generic names for their products in advertising or marketing copy, in descriptions, in governmental or other corporate filings, etc.). For the sake of clarity, the JUST Frame Logo may include a generic product name (e.g., "Egg") or not.

Term Sheet ¶ 1. Paragraph 2 elaborates: "For the sake of clarity, Just, Inc. may refer in text to its brand as JUST, so long as JUST is used in connection with Defendants' generic product name (e.g., 'Just Mayo,' 'Just Egg,' 'Just Cookie Dough,' or 'Just products')." Term Sheet ¶ 2. Paragraph 15 obligates EJ to change "all social media handles and online platforms to the new company name or to the name 'Make it Just' with such social media platforms prominently displaying the JUST Frame Logo." Term Sheet ¶ 15. Further, EJ must "change its Wikipedia and LinkedIn pages to the new corporate name [Eat Just, Inc.] or to the name 'Make it Just.'" *Id.*

JGI argues that the following uses of Just violate the Term Sheet as laid out above. EJ's Instagram, Twitter, and Facebook pages list its name as JUST—although the handle for all is @eatjust, and all display the JUST Frame Logo. Pietrini Decl. ¶ 10. The LinkedIn page includes, "At JUST, we believe a just food system begins with breakfast." *Id.* Content that EJ controls on the Wikipedia page[2] indicates that EJ is "known widely as JUST." *Id.* On its website, in Instagram posts, and in press releases, EJ refers to itself as JUST. *Id.* ¶¶ 10-11. On his own LinkedIn page, Tetrick refers to himself as the Co-Founder and CEO of JUST. *Id.* ¶ 11. EJ has reposted articles that refer to it as JUST and has consented to articles in which it is frequently referred to as JUST. *Id.*

EJ argues that these uses are not violations of the Term Sheet because "Paragraph 1(c) specifically allows EJ to use the term JUST with the JUST Frame Logo." Opposition ("Oppo.") [Dkt. No. 136-4] 9. There is no violation because although the pages include the word Just, they also prominently include the Frame Logo. According to EJ, JGI's contrary interpretation would

---

[2] EJ represents, and JGI does not dispute, that it has repeatedly and without success asked Wikipedia to change its name. *See* Declaration of Charles H. Hooker III [Dkt. No. 136-5] ¶ 11.

4

render Paragraph 1(c) meaningless. *Id.* at 10.

EJ's interpretation of the Term Sheet is unreasonable. It essentially argues that there are no restrictions on its use of the term Just as long as the JUST Frame Logo is present. The uses JGI highlights demonstrate the absurdity of this proposition. The mere fact that the Frame Logo is displayed on social media pages and online platforms does not immunize each post and allow EJ to freely and repeatedly refer to itself as JUST. I agree with JGI that Paragraph 1(c) must be read together with Paragraphs 3 and 15. *See Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 872 (9th Cir. 1979) ("We seek to interpret the contract in a manner that makes the contract internally consistent."). The Term Sheet permits EJ to use the term Just in the following ways: (1) in the Frame Logo, (2) as part of the names/phrases "Eat Just" and "Make it Just," and (3) in text in conjunction with a generic product name (e.g., Just Egg). Other uses of the term violate the parties' agreement.

EJ's remaining arguments are unpersuasive. According to EJ, it only agreed to pay JGI under the Term Sheet because of "the freedom to operate" provided by it. But as JGI points out, EJ was facing the possibility that I would order it to comply in full with the parties' 2014 Coexistence Agreement—which would have prevented any use of the Frame Logo and required complete rebranding of its products. *See* Reply [Dkt. No. 138-4] 8. Finally, EJ references the merits of the parties' trademark dispute, namely whether there was or is any likelihood of confusion between the two companies and their products. *See* Oppo. 11 ("At the most fundamental level, JGI cannot escape the fact that any rights it possesses in the word JUST are anemically weak; that countless third parties use JUST and JUST-formative marks for identical, competing, and overlapping products."). But that question is no longer before me. Instead, the Term Sheet is what determines each party's rights and obligations in the word Just vis-à-vis the other side. The only reasonable and internally consistent reading of the Term Sheet shows that EJ's broad use of the term is a breach.

### B. Corporate Name

JGI next argues that EJ has violated Paragraph 5 of the Term Sheet by changing its name to "Eat JUST, Inc." rather than "Eat Just, Inc." Paragraph 5 expressly obligates EJ to "change its

corporate name to Eat Just, Inc." Term Sheet ¶ 5. EJ counters that its new corporate name is not a violation because Paragraph 5 "is silent as to the font, style, or capitalization of the words." Oppo. 12.

I agree with JGI for three reasons. First, EJ's former corporate name was Just, Inc. Second, as JGI points out, corporate registrations do not vary based on font or style. Reply 11. Finally, capitalization varies throughout the Term Sheet, depending on the provision, term or product. All of these signs indicate that the absence of capitalization in Paragraph 5 of the Term Sheet was intentional. It is immaterial that Paragraph 5 does not "prohibit" capitalization; it expressly sets forth EJ's new corporate name, and EJ has failed to comply.

### III. ATTORNEY FEES

The Term Sheet provides, "Upon a final determination on the merits that there has a been a breach of the settlement agreement incorporating this term sheet or this term sheet, the prevailing party shall be entitled to all of its attorneys' fees and expert witness fees." Term Sheet ¶ 11. EJ argues that attorney fees are not appropriate because JGI has neither brought a civil action nor made a showing that it was damaged by any breach.[3]

EJ's suggestion that JGI would have to file a separate action to be entitled to attorney fees is unreasonable at best; the parties' Term Sheet explicitly provides that I have the role of enforcing the agreement. EJ's interpretation—requiring more than a finding of breach for an award of attorney fees—would strip Paragraph 11 of its meaning and force. JGI is entitled to its attorney fees.[4]

### IV. MOTIONS TO SEAL

Both parties move to seal the contents of the Term Sheet, which they agreed to maintain as confidential. Dkt. Nos. 134, 136, 138. Because the dispute before me now is all about the Term

---

[3] EJ also argues that it has not breached the Term Sheet but rather worked in good faith to execute it. As set forth above, I disagree.

[4] Because I have found other breaches, I do not address the parties' back-and-forth over whether the domain name issue alone would be enough to entitle JGI to attorney fees. *Compare* Oppo. 13 (arguing that EJ worked as quickly as possible to transfer the domain names) *with* Reply 11-12 (countering that its motion clearly prompted EJ to transfer the final two domain names, which were the most valuable ones).

6

Sheet, large portions of the briefing are completely redacted from public view. Both parties assert that there are compelling reasons to seal their agreement because it reflects confidential "business strategies, branding strategies, product development, and product expansion." Dkt. Nos. 134. 136.

I disagree. Only the amount paid to resolve this case is sealable. The remainder of the Term Sheet does not contain information remotely akin to trade secrets, much less information about either side's business that would be likely to cause harm in the hands of a competitor. The motions to seal are GRANTED in part and DENIED in part. Within 20 days of the date of this Order, the parties shall RESUBMIT all briefing and exhibits that are currently redacted such that they redact only the total amount of the settlement and characterizations of that amount.

## CONCLUSION

The motion to amend the judgment and enforce the Term Sheet is GRANTED. An amended judgment shall be entered, and EJ is ORDERED to comply with the terms of the parties' agreement as set forth above. The parties should meet and confer over the amount of JGI's attorney fees and submit a stipulation if they are able to reach agreement. Otherwise, within 20 days of the date of this Order JGI shall submit a short motion justifying the amount of attorney fees it seeks.[5]

**IT IS SO ORDERED.**

Dated: March 30, 2020

William H. Orrick
United States District Judge

---

[5] Time spent on the follow-up motion will not be compensable.