CONSTANCE J. YU (SBN 182704)
cyu@plylaw.com
PHILIP J. WANG (SBN 218349)
pwang@plylaw.com
TRACI M. KEITH (SBN 235828)
tkeith@plylaw.com
PUTTERMAN | YU | WANG LLP
345 California Street, Suite 1160
San Francisco CA 94104-2626
Tel: (415) 839-8779
Fax: (415) 737-1363

CHARLES H. HOOKER III
chooker@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE, Suite 2800
Atlanta, GA 30309
Tel: (404) 815-6500

DENNIS L. WILSON
dwilson@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Tel: (415) 576-0200

Attorneys for Defendants and Counterclaimants
EAT JUST, INC. (F/K/A JUST, INC.) and
JOSHUA TETRICK

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JUST GOODS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JUST, INC., F/K/A/ HAMPTON CREEK, INC., a Delaware corporation, et al.,<br><br>Defendants. | Case No. 18-cv-02198-WHO<br><br>**DEFENDANTS' MOTION TO STAY COURT'S ORDER PENDING APPEAL**<br><br>Honorable Hon. William H. Orrick<br><br>Hearing Date: August 23, 2023<br>Hearing Time: 2:00 p.m. |
| AND COUNTERCLAIMS. | |

**NOTICE OF MOTION AND MOTION TO STAY THE COURT'S ORDER ON THE MOTION TO ENFORCE THE TERM SHEET PENDING APPEAL**

**PLEASE TAKE NOTICE THAT** on August 23, 2023 at 2 p.m. or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom Two, before the Honorable William H. Orrick, Defendants Eat Just, Inc. and Joshua Tetrick will, and hereby do, move the Court to stay its July 13, 2023 Order (Dkt. No. 200) on Plaintiff's Motion to Enforce the Term Sheet (Dkt. No. 188) pending the appeal Defendants will file of that Order.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities and Proposed Order; the declarations of Gabrielle Grinberg and Michael Terapane filed in response to the Court's July 13, 2023 (filed concurrently herewith); the pleadings, papers, and records on file in this action; and such other matters as this Court may consider.

**STATEMENT OF RELIEF SOUGHT**

Pursuant to Federal Rule of Civil Procedure 62(d) and this Court's authority to stay its own orders, Defendants seek a stay of the Court's Order (Dkt. No. 200) on Plaintiff's Motion to Enforce the Term Sheet, including staying the Court's requirements that: (1) Defendants cease using the social media handle @justegg; (2) Defendants remove advertisements and social media posts referring to "JUST Egg" (with the JUST capitalized); (3) Defendants compensate Plaintiff for its reasonable attorneys' fees incurred in connection with the underlying motion; and (4) Defendants pay $5,000/day in sanctions until such time as it complies with the Order.

**Table of Contents**

I. Preliminary Statement ........ 5

II. The July 13, 2023 Order ........ 6

III. Legal Argument ........ 6

A. EJ is Likely to Succeed on the Merits of its Appeal and Raises Serious Legal Issues ........ 8

B. EJ Will Suffer Irreparable Injury Absent a Stay, While JGI Will Suffer No Discernable Harm ........ 10

C. The Public Interest Weighs in Favor of a Stay ........ 12

IV. Conclusion ........ 12

**Table of Authorities**

Cases

*Bristow v. Lycoming Engines*,
No. Civ. S-06-1947 LKK/GGH, 2008 WL 2561105 (E.D. Cal. June 24, 2008) ............................ 12

*Davilla v. County of San Joaquin*,
2008 WL 4426669 (E.D. Cal. Sept. 26, 2008) ............................ 11

*Dayton Christian Schl. v. Ohio Civil Rights Comm'n*,
604 F. Supp. 101 (S.D. Ohio 1984) ............................ 7

*Franchise Holding II, LLC. v. Huntington Rests. Grp., Inc.*,
375 F.3d 922 (9th Cir. 2004) ............................ 7

*Golden Gate Rest. Ass'n v. City & County of San Francisco*,
512 F.3d 1112 (9th Cir. 2008) ............................ 7

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ............................ 7

*Lewis v. County of San Diego*,
No. 13-CV-02818-H-JMA, 2018 WL 1071704 (S.D. Cal. Feb. 27, 2018) ............................ 7

*Lopez v. Heckler*,
713 F.2d 1432 (9th Cir. 1983) ............................ 7

*Nat. Res. Def. Council, Inc. v. Winter*,
502 F.3d 859 (9th Cir. 2007) ............................ 7

*Nken v. Holder*,
556 U.S. 418 (2009) ............................ 6

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
884 F.3d 812 (9th Cir. 2018) ............................ 7

*Sinclair v. Fox Hollow of Turlock Owners Ass'n*,
No. 1:03-CV-05439-OWW, 2011 WL 1636240 (E.D. Cal. Apr. 29, 2011) ............................ 7

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*,
No. C-94-20775 RPA, 1996 WL 289034 (N.D. Cal. May 23, 1996) ............................ 7

*Wishtoyo Found. v. United Water Conservation Dist.*,
No. CV 16-3869-DOC-PLA, 2019 WL 8226058 (C.D. Cal. Apr. 11, 2019) ............................ 7

Rules

Federal Rule of Civil Procedure 62(d) ............................ 2

## I. PRELIMINARY STATEMENT

This Court should stay its July 13, 2023 Order pending the forthcoming appeal that Defendants Eat Just, Inc. and Joshua Tetrick (collectively, "Defendants" or "EJ") will file.

***First***, a stay is warranted because EJ can demonstrate a likelihood to prevail on the merits on appeal with respect to the use of JUST Egg. The Court failed to address the fact that Plaintiff Just Goods, Inc. ("JGI") knew about and sanctioned EJ's use of "JUST Egg" for years before deciding to raise the issue at the last minute, after the parties had already mediated additional issues. Indeed, JGI's previous motions to enforce and for contempt filed in 2020 contained numerous instances of postings, articles, or advertisements referring to "JUST Egg", but JGI did not challenge any of them. Moreover, the Term Sheet contains a specific example of JUST Egg (with the JUST capitalized), so the Court's current Order prohibiting this use conflicts with its previous orders, which held that EJ may use JUST in text, so long as it is accompanied by a generic product name (*e.g.*, Egg), and that the ***uniform*** lack of capitalization of Just in the Term Sheet was intentional with respect to Make it Just and Eat Just. EJ's other appellate arguments at the minimum raise serious legal questions that warrant a stay given the potential harm to EJ without one.

***Second***, a stay is warranted because EJ will suffer irreparable harm without a stay. The Court's Order requires EJ to take time-intensive and expensive steps that cannot be easily undone, or damages recouped, if the appellate court reverses some or all of the Order, including changing all of its packaging, advertisements, and social media posts referencing "JUST Egg" and abandoning its social media handle @justegg. These steps will also irreparably harm EJ because it will lose the value of its advertising and marketing of "JUST Egg", EJ's current core product, damage its relationships with corporate partners, and erode the goodwill and brand affinity that it has built.

***Finally***, balancing the equities favor a stay. While EJ will be irreparably harmed without a stay, JGI will suffer no harm if a stay is granted. JGI was never able to demonstrate evidence of consumer confusion in the underlying litigation, and it no longer even argues that consumer confusion would result. Moreover, JGI has known about and acquiesced to these uses for years after entering into the Term Sheet, particularly with respect to EJ's use of JUST Egg.

***Accordingly***, the Court should stay its July 13, 2023 Order pending resolution of EJ's forthcoming appeal.

## II. THE JULY 13, 2023 ORDER

On April 13, 2023, JGI brought another motion to enforce the Term Sheet between the parties. Dkt. #188. In its motion, JGI alleged that EJ was in violation of the Term Sheet because EJ: (1) changed its Instagram handle to @justegg and was using Just Egg essentially as its brand; and (2) filed trademark applications for EAT JUST and JUST EGGS that did not include the Frame Logo. JGI further alleged that EJ was in violation of this Court's prior orders because it was emphasizing the "Just" in Just Egg (*i.e.*, using JUST Egg) and because an EJ employee signed an email to JGI as "Liezl from JUST AP" (using "Just" alone). JGI also sought attorneys' fees and contempt sanctions.

On July 13, 2023, this Court issued an Order on JGI's motion. Dkt. #200. The Court held that: (1) the Term Sheet does not permit EJ to seek word marks for EAT JUST or JUST EGG, and EJ may not seek trademarks or use any other marks containing the word "Just" unless explicitly permitted by the Term Sheet ("Make it Just") or part of the Frame Logo (*id*. at 3-5); (2) Paragraph 15 of the Term Sheet, which required that EJ "shall" change its social media handles to either the "new company name" or "Make it Just", means that EJ may not use @justegg as a handle (*id*. at 6-7); (3) the Term Sheet does not permit EJ to emphasize the "JUST" in JUST Egg because "there is no indication that [] authorization" to use the all-cap JUST within the Frame Logo extends to use outside of the Frame Logo (*id*. at 7-8). The Court declined to hold EJ in contempt for the email from "Liezl from JUST" finding that it was an isolated incident and quickly resolved. *Id*. at 8-9. Finally, the Court awarded JGI its actual attorneys' fees and imposed a $5,000 sanction on EJ if it failed to attest to compliance with the Order within 14 days (July 27, 2023). *Id*. at 9.

## III. LEGAL ARGUMENT

The Court has the power to stay its July 13, 2023 Order pending Defendants' appeal. *See Nken v. Holder*, 556 U.S. 418, 421 (2009) (holding that "it has always been held, . . . that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of [an order] pending the outcome of an appeal"). To make this determination, courts consider the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

The Ninth Circuit has interpreted this standard as entailing "two interrelated legal tests" operating along a continuum. *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). At one end, the moving party may succeed if it shows there is a probability of success on the merits as well as a possibility of irreparable injury. *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008). At the other end, the moving party may succeed if it shows it has raised "serious legal questions" and that "the balance of hardships tips sharply in its favor." *Id.* at 1116 (quoting *Lopez*, 713 F.2d at 1435). Courts must also consider the public interest implicated by the grant of the stay, distinct from its effects on the parties. *Nat. Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 863-64 (9th Cir. 2007). Overall, "the necessary level or degree of possibility of success varies according to the court's assessment of other factors." *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, No. C-94-20775 RPA, 1996 WL 289034, at *1 (N.D. Cal. May 23, 1996) (quoting *Dayton Christian Schl. v. Ohio Civil Rights Comm'n*, 604 F. Supp. 101, 103 (S.D. Ohio 1984)).

Here, the standard for a stay has been met, and courts have issued stays in similar circumstances where a litigate appeals a judgment on a breach of contract claim or an order enforcing a settlement agreement. *See, e.g.*, *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 814 (9th Cir. 2018) (order on breach-of-contract claim stayed pending appeal); *Franchise Holding II, LLC. v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004) (enforcement of default judgment on a breach-of-contract claim stayed pending appeal); *Sinclair v. Fox Hollow of Turlock Owners Ass'n*, No. 1:03-CV-05439-OWW, 2011 WL 1636240, at *2 (E.D. Cal. Apr. 29, 2011) (granting stay pending appeal of order on motion to enforce terms of settlement agreement). Similarly, courts regularly issue stays pending an appeal on orders requiring a litigant to pay attorneys' fees. *See, e.g., Lewis v. County of San Diego*, No. 13-CV-02818-H-JMA, 2018 WL 1071704, at *2 (S.D. Cal. Feb. 27, 2018) (granting stay of attorneys' fees Order pending appeal); *Wishtoyo Found. v. United Water Conservation Dist.*, No. CV 16-3869-DOC-PLA, 2019 WL

8226058, at *2 (C.D. Cal. Apr. 11, 2019) (granting defendant's motion to stay enforcement of attorneys' fees order).

### A. EJ is Likely to Succeed on the Merits of its Appeal and Raises Serious Legal Issues

Here, EJ is likely to succeed on the merits on at least some aspects of its appeal, and EJ will raise serious legal questions as to others.

***First***, the Court completely failed to consider one of EJ's core arguments regarding the use of JUST Egg. EJ argued in its Opposition to the motion to enforce that it was permitted to use JUST Egg (with the emphasis on JUST) because JGI had waived any complaints to this use. In particular, EJ demonstrated that in JGI's 2020 motion for contempt, JGI included a screenshot from a May 2020 Business Wire article that, in addition to referring to EJ as "Just," also prominently used JUST Egg. Dkt. #196 at 11-12. Despite extensively framing in red all of the allegedly wrongful uses of "Just" and arguing that ***those*** uses violated the Term Sheet and the Court's previous March 30 Order, JGI conspicuously did ***not*** challenge EJ's use of JUST Egg here (or in several other examples) as wrongful. *Id*. EJ further demonstrated that it relied on JGI's acquiescence of its use of JUST Egg and made marketing and other business decisions based on it. *See* Dkt. #196-1. Despite this, the Court failed to address EJ's waiver argument in its Order prohibiting EJ from using JUST Egg. *See generally* Dkt. #200.

***Second***, the Court's ruling that EJ is not permitted to use JUST Egg also conflicts with its prior rulings. This Court previously held that JUST may be used in text, so long as it is accompanied by a generic product name (*e.g.*, Egg, Mayo, etc….) and found that the ***uniform*** lack of emphasis/capitalization of Just in the Term Sheet was intentional with respect to Make it Just and Eat Just. Dkt. 142 (March 30 Order) at 6; Dkt. 170 (September 11 Order) at 4-5. By the same token, where the Term Sheet allows JUST to be in all-caps, this is also intentional and must be given weight. However, the Court's July 13, 2023 Order now holds that even where the Term Sheet specifically provides examples of JUST Egg with JUST capitalized, EJ is still not permitted to use it. Paragraph 1 of the Term Sheet explicitly provides for the capitalization of JUST Egg within the Frame Logo – and even illustrates an example showing the all-cap JUST. Dkt. #133-1, Ex. A.

The Court's interpretation that the all caps JUST is not meaningful because it is in the context of a logo and not in text is not reasonable, and it is further belied by JGI's failure to raise the issue back in 2020 (or at any point before April 2023) despite its obvious knowledge of such use. The only reasonable and consistent interpretation of the Term Sheet is that the parties intended to allow EJ to use "JUST Egg."

***Finally***, the remaining arguments EJ is likely to make on appeal will also raise serious legal issues. In holding that EJ is not permitted to use @justegg as its social media handle, the Court's Order could be interpreted to prohibit EJ from ever using any social media handle other than @makeitjust and @eatjust, despite the facts that: (1) the intent of the Term Sheet was clearly to have EJ ***stop*** using @just; (2) Paragraph 1 of the Term Sheet allow EJ to use "JUST" in text "in connection with generic names for [its] products…."; (3) Just Egg is a specifically permitted product; and (4) the Term Sheet explicitly allows EJ to refer to its brand as Just Egg. *See* Dkt. #133-1, Ex. A (Term Sheet). Therefore, the Court's Order frustrates the contract's purpose and removes rights for which EJ bargained. Moreover, the Court's interpretation that the Term Sheet prohibits @justegg is also at odds with its previous Order holding that "the Term Sheet allows EJ to use the term Just in the following ways…in text in conjunction with a generic product name (e.g., Just Egg)." Dkt. #142, p. 5. This is exactly what @justegg is. The Court's Order prohibiting EJ from trademarking JUST EGG and EAT JUST similarly raises serious legal issues as: (1) it ignores EJ's argument that the Term Sheet only dealt with new trademarks, and EJ's application for JUST EGG predates the Term Sheet; and (2) the Term Sheet allows EJ to refer to its brand as Just Egg and to use the corporate name Eat Just, so preventing it from protecting these uses via trademark is illogical and inconsistent with the intent of the agreement.[1]

Therefore, this element strongly favors a stay.

///

[1] In response to the Court's July 13, 2023 Order, EJ has instructed its outside counsel to withdraw all pending applications and cancel all existing registrations for the JUST EGG and EAT JUST wordmarks. *See* Declaration of Michael Terapane in Response to Court's July 13, 2023 Order, ¶4 (filed concurrently herewith). However, EJ disagrees with the Court's holding regarding these marks and reserves its right to appeal this issue.

**B. EJ Will Suffer Irreparable Injury Absent a Stay, While JGI Will Suffer No Discernable Harm**

Defendants will be irreparably harmed if the Court does not stay the Order. In 2019, in reliance on its reasonable interpretation of the Binding Term Sheet, EJ continued to build the JUST Egg brand. *See* Declaration of Gabrielle Grinberg in Response to Court's July 13, 2023 Order ("Grinberg Decl."), ¶3 (filed concurrently herewith). In further reliance on the fact that Plaintiff Just Goods, Inc. did not object to the capitalization of JUST in JUST Egg in 2019, 2020, 2021, 2022 and through half of 2023, EJ continued to invest heavily in building the JUST Egg brand across multiple channels including advertising, ambassadors, influencers, and shopper marketing. *Id*. As a result, the brand has achieved a high level of consumer awareness, consumer affinity, and consumer loyalty, and almost two million households purchase JUST Egg products. *Id*. By EJ's estimation, the company has spent millions of dollars building the JUST Egg brand. *Id*. Complying with the Court's Order would be a significant and time-consuming undertaking, would cost hundreds of thousands of dollars (costs that could not be recouped if EJ's appeal is successful), and would result in irreparable harm to EJ's brand, corporate relationships, and consumer awareness and goodwill. *See id*.

To remove JUST Egg from its advertising and marketing, EJ would have to review all its social media sites, print and internet advertising, and marketing/promotional materials to identify and remove all instances of "JUST Egg." This would likely lead to the withdrawal of shopper marketing campaigns and promotions. Grinberg Decl., ¶4. By EJ's estimation, it would cost the company hundreds of thousands of dollars and many months to redo all materials across EJ's website, videos, printed materials, and merchandise. *Id*. The loss of this advertising and marketing for JUST Egg would also significantly reduce sales of JUST Egg, as well as erode consumer goodwill, brand recognition, and brand affinity, leading to damages that are difficult to quantify. *Id*.

This effort would be complicated by the fact that much of EJ's physical and electronic advertising is outside of its immediate control, and it would take significant time to identify all instances and work with other entities to remove it. Grinberg Decl., ¶5. For example, JUST Egg is referenced across major retailer websites (*e.g*., Kroger, Whole Foods, Walmart), and it is a lengthy process to change content on a "digital shelf." *Id*. Moreover, JUST Egg is referenced across 3rd party

blogs, news articles, and recipe websites over which EJ has no control. *Id*. JUST Egg is also on physical restaurant menus and menu boards, including at chains like Peets, Caribou Coffee, and Barnes & Noble and on 3rd party delivery sites like Instacart and Shipt. *Id*. Making these changes would irreparably harm EJ's relationships with these third parties. *Id*.

"JUST Egg" is also included on much of EJ's physical packaging for its products. Grinberg Decl., ¶6. There is no practical way for EJ to remove its products from all stores, and trying to do so would be catastrophic to the company. It would lead to millions of dollars in lost packaging. *Id*. EJ also has a significant amount of already prepared product packaging that it would need to scrap at great cost, and it would take a significant amount of time to design and manufacture new packaging. *Id*. By EJ's estimation, changing the company's packaging for its products would cost hundreds of thousands of dollars and take a minimum of 12 months to accomplish. *Id*. These costs are irreparable because EJ will have no way to recover them if it prevails on appeal. Moreover, changing product packaging would also cause significant damage to its relationships with customers and national retailers, relationships which have taken years to build. *Id*. There is no way to quantify these damages. *Id*.

EJ's social media handles are very important to the company. In particular, EJ's Instagram page for its flagship product JUST Egg (found at the handle @justegg since February 2021) is a key part of the JUST Egg brand, and it is an important driver to raise consumer awareness of and interaction with EJ's brand. Grinberg Decl., ¶7. Significant brand equity would be lost if a consumer is not able to find EJ or interact with EJ using the @justegg handle, especially because EJ's flagship product is JUST Egg. *Id*. Consumers purchasing JUST Egg products would be confused by the fact that the company did not have a @justegg handle, and they would be unlikely to reach out and engage with the company using a different handle not associated with the product. *Id*. Changing the company's social media handles away from @justegg would result in significant lost consumer engagement, brand affinity, and brand equity. *Id*. These losses would be very difficult to quantify. *Id*.

In contrast, JGI will suffer no discernable harm if a stay is granted. A stay is appropriate where the other party will suffer no harm. *See, e.g., Davilla v. County of San Joaquin*, 2008 WL 4426669, at *2 (E.D. Cal. Sept. 26, 2008) (granting stay when there would be no harm to

the other parties pending appeal); *Bristow v. Lycoming Engines*, No. Civ. S-06-1947 LKK/GGH, 2008 WL 2561105, at *2 (E.D. Cal. June 24, 2008) (granting stay when non-movant "no hardship to them if the stay were granted"). In particular, there is no evidence (and there has never been any) that consumer confusion will result. JGI sells water[2], while EJ's focus is vegan egg products. As demonstrated in EJ's opposition to JGI's motion for summary judgment, JGI could not proffer actual evidence of consumer confusion. *See* Dkt. #92 at 27-30. Now, JGI no longer even argues in its motion to enforce that there could be consumer confusion. *See generally* Dkt. #188. Moreover, most of these uses have been going on for years ("JUST Egg" since 2019; @justegg since February 2021), with JGI's knowledge and acquiescence (*see* Dkt. #196), undermining any claim by JGI that it will suffer any harm from a stay.

As a result of the irreparable harm facing EJ, and the lack of any harm faced by JGI, the balance of hardships tips sharply in favor of a stay.

### C. The Public Interest Weighs in Favor of a Stay

The public interest is not significantly implicated here, but to the extent it is, it favors a stay. The public has an interest in the accurate and final construction of agreements between private parties and in the avoidance of unnecessary corporate disruptions. Therefore, the public interest lies with allowing the appellate process to play out without forcing EJ to undergo burdensome and costly measures that are not easily reversed should the appellate court find in EJ's favor.

## IV. CONCLUSION

Based on the foregoing, Defendants and Counterclaimants Eat Just, Inc. and Joshua Tetrick request that the Court stay its July 13, 2023 Order pending resolution of Defendants' appeal to the Ninth Circuit Court of Appeal.

DATED: July 27, 2023

PUTTERMAN | YU | WANG LLP

By: */s/ Philip J. Wang*
Philip J. Wang
Attorneys for Defendants and Counterclaimants
EAT JUST, INC. (F/K/A JUST, INC.) and
JOSHUA TETRICK

---

[2] *See* https://justwater.com (last accessed July 27, 2023).