UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUST GOODS, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>JUST, INC., et al.,<br><br>   Defendants. | Case No. 18-cv-02198-WHO<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STAY THE COURT'S ORDER PENDING APPEAL**<br><br>Re: Dkt. No. 203 |

  This motion arises from yet another dispute between plaintiff Just Goods Inc. ("JGI") and defendants Eat Just, Inc. and its founder Joshua Tetrick (collectively, "EJ"). The parties executed a binding Term Sheet to settle their trademark lawsuit four years ago. Since then, they have returned to me three times to adjudicate disputes relating to their interpretation of the Term Sheet that they wrote. On March 30, 2020, I entered an order to enforce the settlement agreement after finding that EJ had failed to comply with the Term Sheet. March 30 Order [Dkt. No. 142]. On September 11, 2020, I held EJ in contempt of court for its continued failure to comply with the terms of the Term Sheet. September 11 Order [Dkt. No. 170]. EJ appealed, and the Ninth Circuit affirmed both the March 30 and September 11 Orders in full. *Just Goods, Inc. v. Eat Just, Inc.*, No. 20- 15809, 2022 WL 614053 (9th Cir. Mar. 2, 2022). Most recently, JGI brought a motion to enforce the Term Sheet based on new violations, and an order to show cause why EJ should not be held in civil contempt of the Court's March 30 and September 11 Orders. I granted JGI's motion and ordered EJ to pay a *per diem* fine until it could attest to its compliance with my Orders and the Term Sheet. *See* July 13 Order, [Dkt. No 200].

  EJ now brings a motion to stay the July 13 Order pending its appeal to the Ninth Circuit. I will not stay it because EJ has not made a strong showing that it is likely to succeed on the merits,

a stay would injure JGI's interest, and the public interest lies with adherence to the Term Sheet. I will, however, readjust the July 13 Order in light of a new argument EJ made regarding the Order's impact on packaging and product already in stores.

**BACKGROUND**

In the July 13 Order, I held that EJ was again out of compliance with the parties' Term Sheet, this time by: (i) filing trademark applications to register JUST EGG and EAT JUST in standard characters, (ii) changing its social media handles to @justegg, and (iii) capitalizing and emphasizing the word "Just" in its use of the phrase "Just Egg" in its marketing materials. July 13 Order [Dkt. No. 200]. I gave EJ a 14-day period from the date of the Order to remedy these breaches of the parties' agreement, after which they would be responsible for a $5,000 per day fine until they could attest that they were in compliance. This fine was intended to encourage EJ to promptly comply with the order, in light of its repeated contravention of the parties' agreement and my orders in the past, and to compensate JGI for the injury caused by the continued violation of its rights as articulated in the Term Sheet. The 14-day grace period expired on July 27. That same day, EJ submitted two declarations representing that it was only in partial compliance with my order. In the first declaration, EJ represents that at the time of my order it "had approximately 19 pending applications and 37 active registrations worldwide for EAT JUST and JUST EGG (text)," and that it has "instructed outside counsel" to withdraw those registrations and applications. Declaration of Michael Terapane ("Terapane Decl."), [Dkt. No. 202] ¶¶ 3-4.[1]

In the second declaration, EJ's General Counsel represents that "complying with the Court's Order would be a significant and time-consuming undertaking, would cost hundreds of thousands of dollars to accomplish (costs that could not be recouped if EJ's appeal is successful),

---

[1] JGI contends that the applications have not yet been withdrawn. In support of its reply brief, EJ submits a screenshot from the USPTO website showing its Surrender of Registration for Cancellation for the EAT JUST wordmark. [Dkt. No. 207-1], Ex. A. EJ represents that it has initiated the process of withdrawing all relevant applications and registrations, and that the time it takes for each jurisdiction to record these withdrawals is outside of EJ's control. Terapane Decl. ¶ 4. Because it is undisputed that EJ has not complied with other aspects of the July 13 Order, this argument is not material to my decision. EJ will need to demonstrate that its applications have been withdrawn in order to terminate the *per diem* fine.

2

and would result in irreparable harm to EJ's brand, corporate relationships, and consumer awareness and goodwill." Declaration of Gabrielle Grinberg ("Grinberg Decl."), [Dkt. No. 201] ¶ 3. In short, EJ represents that it is not in compliance with the bulk of my order, and that coming into compliance would take "many months." *Id.* ¶ 4.

EJ further represents that "JUST Egg" is included on much of EJ's physical packaging for its products. *Id.* ¶ 6. Removing those products from all stores "would be catastrophic to the company" and "would lead to millions of dollars in lost packaging." *Id.* By EJ's estimation, changing the company's packaging for its products would cost hundreds of thousands of dollars and take a minimum of 12 months to accomplish. *Id.* EJ's product packaging was not discussed in the underlying motion to enforce, nor in the July 13 Order. EJ concedes that it does not comply with the terms outlined in the July 13 Order.

## LEGAL STANDARD

When considering a motion to stay pursuant to Federal Rule Civil Procedure ("FRCP") 62(d), a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors of the test are weighed more heavily. *Id.* Defendants bear the burden of establishing that they are entitled to a stay of the Order pending appeal. *See Id.* at 433-34 ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.").

Under the "continuum" or "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011)). As a threshold matter the moving party must establish a probability of irreparable injury. *Id.* But meeting this threshold does not guarantee a stay, as "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). After *Nken*, the Ninth Circuit

3

1   clarified its treatment of the first two factors, holding that the movant's "burden with regard to
2   irreparable harm is higher than it is on the likelihood of success prong, as she must show that an
3   irreparable injury is the more probable or likely outcome." *Leiva-Perez v. Holder*, 640 F.3d at
4   968.

## DISCUSSION

### I.   MOTION TO STAY

#### a.   Likelihood of Success on the Merits

EJ argues that it is likely to succeed on the merits for at least some aspects of its appeal and raises serious legal issues as to other aspects of its appeal. EJ believes that it is likely to succeed on the merits for the arguments that: (1) JGI waived its objection to EJ's use of JUST Egg, and (2) the Term Sheet permits it to selectively capitalize "JUST Egg" in text because it permits EJ to use the frame logo, which includes that capitalization structure. "Where, as here, the district court presided over the litigation giving rise to the settlement agreement, its interpretation of the agreement should be treated with 'due respect' given the court's 'superior perspective.'" *Just Goods, Inc. v. Eat Just, Inc.,* No. 20-15809, 2022 WL 614053, at *1 (9th Cir. Mar. 2, 2022) (quoting *Congregation ETZ Chaim v. City of Los Angeles*, 371 F.3d 1122, 1124 (9th Cir. 2004)).

#### i.   EJ Does Not Make a Strong Showing for its Waiver Argument

First, EJ argues that I failed to consider its argument that JGI waived its right to object to EJ's use of "JUST Egg" by failing to object to a May 2020 Business Wire article that referred to EJ's product as "JUST Egg" in text without the frame logo. "Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 399 (9th Cir.1988). "An implied waiver of rights will be found where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved." *United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602–03 (9th Cir.1995) (quoting *Groves v. Prickett*, 420 F.2d 1119, 1125 (9th Cir.1970).

EJ's waiver argument is reproduced below:

> JGI has waived the argument, or should be estoppel [sic] from

> arguing, that EJ's use of JUST Egg violates the Term Sheet because it knew about the use but failed to raise it in the previous round of motions . . . . in JGI's previous motion for contempt, filed almost three (3) years ago, JGI included a screenshot from a May 2020 Business Wire article that, in addition to referring to EJ as "Just," also prominently used JUST Egg. *See* Dkt. 158 at 8. Despite extensively framing in red all of the allegedly wrongful uses of "Just" and arguing that those uses violated the Term Sheet and the Court's March 30 Order, JGI conspicuously did not challenge the use of JUST Egg as wrongful. *See id.* In reliance on JGI's acceptance, EJ continued making marketing and other business decisions about JUST Egg. [] Therefore, not only is the use of JUST Egg explicitly permitted by the Term Sheet, JGI has waived any objection to it and/or is estopped from arguing that it is prohibited now.

Opposition to Motion to Enforce [Docket No. 196] at 15-16. In a previous filing, JGI placed a red box around two uses of the word "JUST" in a screenshot from that Business Wire article, but did not place a red box around the single use of "JUST Egg," which appears on the same screenshot. This is the only example that EJ referenced in support of this waiver argument.



Dkt. No. 158 at 8.

EJ now claims that JGI did not object to or challenge this capitalization of JUST in JUST Egg from 2019 through half of 2023, and that in reliance on this, EJ "continued to invest heavily in building the JUST Egg brand across multiple channels . . ." Grinberg Decl. ¶ 3.[2] EJ contends

---

[2] EJ's supposed reliance on this waiver appears to go to its estoppel argument, which it does not re-raise on the motion to stay. "Unlike waiver, estoppel focuses not on a party's intent, but rather on the effects of his conduct on another. Estoppel arises only when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment in reliance upon this belief." *Novell, Inc. v. Weird Stuff, Inc.*, No. C92-20467 JW/EAI 1993 WL 13767335, at *13 (N.D. Cal. Aug. 2, 1993) (internal quotation marks omitted). If EJ did raise the estoppel argument, I would reject it because it was not reasonable for EJ to detrimentally rely on waiver based on one un-objected to use of "JUST Egg" in a third-party article.

1    that JGI knew of its intent to use JUST Egg by April 2019 because it was aware of EJ's trademark

2    applications for the word mark JUST EGG. EJ also argued that JGI waived its objection to the

3    trademark applications by failing to raise them sooner. I explicitly rejected this waiver argument

4    in the July 13 Order, writing that "[t]he Term Sheet prevents the registration of this wordmark,

5    and EJ was obligated to withdraw all nonconforming applications after executing the Term Sheet."

6    It was not necessary for JGI to bring such a challenge to me, because it was EJ's obligation to

7    comply with the terms it agreed to when it entered into the Term Sheet.

8        In support of its opposition to this motion, JGI submits an email from Jill Pietrini, counsel

9    for JGI, to Charles Hooker, counsel for EJ, dated March 26, 2021. In that email, JGI objects to the

10   EJ's use of "JUST Egg" on its social media pages, and alerts JGI that this "emphasis of JUST is

11   not permitted for the reasoning set forth in the Court's order finding EJ in contempt." Dkt. No.

12   204-3. This contradicts EJ's claim that JGI failed to object until April 2023. In support of its

13   reply brief on the present motion, EJ submits several more examples where it used JUST Egg in

14   text prior to JGI's 2020 enforcement motions. JGI did not challenge those uses in its prior

15   motions. Reply, [Docket No. 207-1], Ex. B. But neither Pietrini's email nor EJ's additional

16   examples in support of the waiver argument were presented to me before I issued the July 13

17   Order.

18       A single use of JUST Egg in a third-party article is not sufficient to infer an "intentional

19   relinquishment of known right" by JGI. *See King Features Entertainment, Inc.*, 843 F.2d at 399.

20   The additional evidence presented by both parties in their motion to stay briefing is immaterial

21   because it was not before me prior to the July 13 Order. EJ's waiver argument does not raise a

22   serious issue on appeal because the evidence it presented in support of that argument in its

23   opposition to the motion to enforce was insufficient to support a finding of waiver.

24       I generally disfavor waiver arguments where there is not a clear and intentional

25   relinquishment of rights, and have particularly little patience for them in the present context. EJ

26   appears to be unhappy with the bargain it struck, but I had no hand in writing the Term Sheet, nor

27   did I force EJ to agree to it. EJ seems to believe that if it ignores my orders for long enough, it

28   will be free to do so forever. This is particularly troubling given that this is the third time the

parties have been before me to interpret clear provisions in their agreement, and the second time I have held EJ in contempt for its failure to comply with my orders.

To the extent the July 13 Order did not directly address EJ's waiver argument, it implicitly rejected it by ruling on the merits. *See Clemons v. Miss.*, 494 U.S. 738, 747, n.3 (1990) ("[T]he Court's refusal to discuss an argument constitutes an implicit rejection of those arguments."). There is no merit to issuing astay based on EJ's argument.

      ii.    **EJ Does Not Make a Strong Showing on the Merits of its Capitalization of JUST Egg**

EJ argues that disallowing it from capitalizing the JUST in JUST Egg contradicts my prior rulings. It is incorrect. In the March 30 Order, I explained that "[t]he Term Sheet permits EJ to use the term Just in the following ways: (1) in the Frame Logo, (2) as part of the names/phrases "Eat Just" and "Make it Just," and (3) in text in conjunction with a generic product name (e.g., Just Egg). Other uses of the term violate the parties' agreement." March 30 Order, [Dkt. No. 142] at 5.

EJ first contends that "[t]his Court previously held that JUST may be used in text, so long as it is accompanied by a generic product name (*e.g*., Egg, Mayo, etc. . . .)." Motion to Stay at 8. The March 30 Order did reference the use of JUST "in text in conjunction with a generic product name," but the example in my order, as with each example in the Term Sheet, capitalizes only the first letter of Just in the phrase Just Egg. EJ fails to acknowledge this fact in the present motion.

In the July 13 Order, I also found that EJ's selective capitalization of "JUST Egg" contravenes the Term Sheet in light of its pivot to use Just Egg as EJ's entire brand identity. I compared this to my finding in the September 11 Order, where I explained that "EJ's emphasis of "Just" in "Make it Just," if permitted, would be a backdoor to re-associating itself with the uppercase "JUST" in violation of the Term Sheet." Sept. 11 Order at 5. This was so even though the Term Sheet expressly permits the registration of the wordmark "MAKE IT JUST" with uniform capitalization. The Ninth Circuit affirmed that reasoning. *Just Goods, Inc. v. Eat Just, Inc.*, 2022 WL 614053, at *1 ("The court also correctly recognized that allowing EJ to capitalize JUST in its corporate name, or in the marketing phrases "Make it JUST" and "#MakeItJUST,"

7

would be a "backdoor" to violation of the Term Sheet.").   Likewise, EJ's selective capitalization of JUST Egg, especially in the context of its use of Just Egg as its brand identity, is a backdoor to re-associate itself with the uppercase JUST and is not permitted under the parties' Term Sheet.

EJ next argues that because it is permitted to capitalize JUST Egg within the frame logo (with the capital letters JU stacked on top of the capital letters ST within a rectangular frame), it is permitted to selectively capitalize JUST Egg when used in text.  EJ writes:

> The Court's interpretation that the all caps JUST is not meaningful because it is in the context of a logo and not in text is not reasonable . . . The only reasonable and consistent interpretation of the Term Sheet is that the parties intended to allow EJ to use "JUST Egg."

Motion to Stay [Dkt. No. 203] at 8-9.  The Term Sheet distinguishes between the use of the frame logo and in-text references.  For example, the Term Sheet provides that "Defendants may use and register the JUST Frame Logo and the trademarks JUST EGG, JUST SCRAMBLE, JUST COOKIES, JUST COOKIE DOUGH, and JUST MAYO—**all in the format of the JUST Frame Logo**—or MAKE IT JUST . . ."  Term Sheet ¶ 2 (bolding added).  Moreover, as EJ has demonstrated, the registration of Just Egg in the format of the frame logo requires a separate trademark application from the registration of JUST Egg as a wordmark, which demonstrates that the two uses are not interchangeable.  EJ has cited no evidence that the Term Sheet's references to the frame logo were intended to permit uses beyond the frame logo, and its unsupported argument that this would be "the only reasonable and consistent interpretation of the Term Sheet" is unpersuasive.

### iii. EJ Does Not Make a Strong Showing Concerning its Social Media Handles and Trademark Registrations

EJ acknowledges that its remaining arguments only raise questions on the merits, though it is not likely to prevail on appeal.  EJ attempts to rehash the same arguments supporting its use of @justegg as its social media handle, each of which I rejected in the July 13 Order.  It then argues that by disallowing it from using @justegg, that order could be interpreted to prohibit EJ from ever using any social media handle other than @makeitjust and @eatjust.  It does not.  EJ is only prohibited from using social media handles that are inconsistent with the Term Sheet or my

8

Orders. Finally, EJ argues that its registration of the word marks JUST EGG and EAT JUST should be permitted but does not seek a stay of this portion of the July 13 Order. Accordingly, I need not address it again.

For the foregoing reasons, I find that EJ has not made a strong showing concerning the merits of its appeal. *See, e.g., Mohamed v. Uber Techs., et al.*, 115 F. Supp. 3d 1024, 1028 (N.D. Cal. 2015) (holding that "in order to satisfy the first factor . . . the moving party need not show that success on appeal is more likely than not [but] must make a strong showing on the merits). A weak showing on the merits means that EJ will need a strong showing on the other factors under the Ninth Circuit's sliding scale approach.

### b. Likelihood of Irreparable Harm

The moving party must at a minimum establish a probability, not a mere possibility, of irreparable injury. *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). Even then, EJ must overcome its weak showing on the merits with a stronger showing on the other factors.

EJ contends that complying with my July 13 order would cause it irreparable harm because it would have to review all its social media sites, print and internet advertising, and promotional materials to identify and remove all instances of "JUST Egg." Grinberg Decl., ¶ 4. It contends that this would likely lead to the withdrawal of shopper marketing campaigns and promotions and would cost the company hundreds of thousands of dollars and many months, including re-doing materials across EJ's website, videos, printed materials, and merchandise. *Id*. It asserts that the loss of this advertising and marketing for JUST Egg would also significantly reduce sales of JUST Egg, as well as erode consumer goodwill, brand recognition, and brand affinity, leading to damages that EJ says are difficult to quantify. *Id*.

EJ also asserts that "JUST Egg" is included on much of EJ's physical packaging for its products, and that there is no practical way to remove its products from all stores. Grinberg Decl., ¶ 6. It claims that attempting to do so would be "catastrophic to the company," would lead to millions of dollars in lost packaging, cost hundreds of thousands of dollars, and take a minimum of 12 months to accomplish. *Id*.

Most of these injuries are simple enough to calculate (e.g, time and costs associated with reviewing EJ's marketing materials to identify and remove uses of "JUST Egg"). EJ contends that the harm is irreparable because it has no viable cause of action to recover those costs from JGI if EJ prevails on appeal. This is true. But these injuries are self-inflicted—all stem from EJ's continuing to breach the parties' agreement and my Orders. That EJ has continued to invest in a brand that it was not permitted to use is a weak basis for a stay of my order. Moreover, if EJ believes that it is likely to prevail on appeal, it can choose to incur the *per diem* fine, bond around it, and seek relief on appeal.

Still, my order did not contemplate the hardship of requiring immediate change to packaging of products already in stores; that impact of EJ's breach was not brought to my attention until EJ's motion to stay. EJ concedes that the packaging does not conform to the July 13 Order. While those items do need to comply with the Term Sheet prospectively, I understand that this requires more time to rectify than social media handles and advertisements. Accordingly, the per diem fine will not apply to the packaging used for EJ's product until October 30, 2023. Packaging must conform to the Term Sheet as interpreted by my Orders after that date to avoid the fine.

### c. Substantial Injury to Other Parties and the Public Interest

EJ contends that the public interest "lies in having contracts fully and finally interpreted before mandating that a company abandon a brand and change its entire business plan in ways that cannot be undone." *See* Motion to Stay at 12. JGI counters that the public interest is in preventing consumer confusion in the trademark context. *See* Opp. at 10. EJ responds that the risk of confusion is irrelevant because this is a contract dispute, not a trademark case. It is true that the case before me is a contract dispute, and I have written that I will not weigh in on the merits of the underlying trademark dispute. However, EJ contends that it has built a successful and recognizable brand in "JUST Egg." This violates the parties' agreement and harms JGI, which entered into this agreement in order to protect its brand identity. The balance of equities does not tip in EJ's favor, and certainly does not do so sharply to compensate for its weak showing on the merits.

10

## II. ATTORNEY'S FEES

"An award of attorney's fees for civil contempt is within the discretion of the district court." *Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994). The Ninth Circuit in *Harcourt* found that attorneys' fees were proper to make the plaintiff whole. I have awarded JGI its attorney's fees in my two prior orders. Because there is a pending appeal, I will defer a determination on attorney's fees for the present motion until that appeal has been resolved.

## CONCLUSION

For the foregoing reasons, EJ's motion to stay is **GRANTED in part and DENIED in part**. The *per diem* fine of $5,000 will apply to all noncompliance with the July 13 Order except for physical packaging of EJ's products until October 30, 2023. This exception allows EJ to deliver existing inventory to stores, but not to manufacture additional nonconforming packaging. All nonconforming inventory delivered to stores after October 30, 2023, will be subject to the fine. EJ may file an affidavit under penalty of perjury when it has complied with the July 13 Order and will be responsible for the fine until that date. EJ is **ORDERED** to file an affidavit under penalty of perjury by October 30, 2023, regarding its compliance with respect to its physical packaging.

**IT IS SO ORDERED.**

Dated: August 30, 2023

William H. Orrick
United States District Judge