UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUST GOODS, INC.,<br><br>            Plaintiff,<br><br>   v.<br><br>JUST, INC., et al.,<br><br>            Defendants. | Case No. 18-cv-02198-WHO<br><br>**ORDER ON THE PER DIEM SANCTIONS**<br><br>Re: Dkt. Nos. 218, 225, 226 |

On July 13, 2023, I ordered defendants in this case, Eat Just, Inc. and its founder Joshua Tetrick (collectively, "EJ"), to pay a per diem fine of $5,000 per day that EJ remained out of compliance with the Term Sheet to which it agreed with plaintiff Just Goods, Inc. ("JGI") in August 2019 to resolve their trademark dispute. Order Granting Plaintiff's Motion to Enforce Compliance ("July 13 Order") [Dkt. No. 200] 9. At that point, EJ's breach of the Term Sheet had been the subject of three motions to enforce compliance as well as one appeal to the Ninth Circuit. *See Just Goods, Inc. v. Eat Just, Inc.*, No. 20-15809, 2022 WL 614053 (9th Cir. Mar. 2, 2022) [Dkt. No. 180]; *see also* JGIs Motions to Enforce Compliance at Dkt. Nos. 133 (dated Apr. 01, 2020), 158 (dated Aug. 19, 2020), and 188 (dated Apr. 13, 2023). On August 30, 2023, I denied EJ's motion to stay the July 13 Order pending its next appeal to the Ninth Circuit. Order Denying Defendants' Motion to Stay the Court's Order Pending Appeal ("Order Denying EJ's Motion to Stay") [Dkt. No. 210] 10 ("[I]f EJ believes that it is likely to prevail on appeal, it can choose to incur the *per diem* fine, bond around it, and seek relief on appeal."). I allowed an exception such that EJ could "deliver existing inventory to stores, but not to manufacture additional

nonconforming packaging." *Id.* at 11.

The Ninth Circuit once again affirmed my finding that EJ was in contempt, and it further affirmed that I was well within my discretion to order EJ incur the *per diem* fine. *Just Goods, Inc. v. Eat Just, Inc.*, No. 23-16100, 2024 WL 4850827 (9th Cir. Nov. 21, 2024) [Dkt. No. 212]. Following EJ's unsuccessful appeal, I ordered the parties to file briefing concerning the reasonableness of my original sanction.[1] *See* Dkt. No. 217 ("JGI Remand Br."), Dkt. No. 218 ("EJ Remand Br."); Order Following Remand [Dkt. No. 214]. I held a hearing on the briefing on January 15, 2025 ("the hearing"). At the hearing, I indicated my intent to (1) decrease the actual sanction amount; and (2) give the resulting fines to JGI. *See* Minute Entry [Dkt. No. 224]. Counsel for EJ objected to making JGI the recipient of the fine. I allowed the parties to brief the issue, which they did. *See* Dkt. No. 225 ("JGI Supp. Br."), Dkt. No. 226 ("EJ Supp. Br."). For the following reasons, I direct that the fine be equally split between the court and JGI.

**The Fine Begins to Run on Remand**

I agree with JGI's assertion that EJ "only began taking steps to stop their use of [infringing content] *after* the Ninth Circuit affirmed the Order on November 21, 2024." JGI Remand Br. 3. EJ confirmed as much at the hearing and in its post-remand briefing. EJ Remand Br. 3. Knowing that EJ has been out of compliance with the July 13 Order since I issued it, along with the information presented by JGI at the hearing demonstrating that EJ *remained* out of compliance, my conclusion that a substantial fine is necessary has been reinforced.[2] If I implemented the *per*

---

[1] EJ moves to seal portions of its briefing following remand. Dkt. No. 218. JGI does not oppose. I agree that the information EJ wishes to seal meets the compelling or good cause standard, and is narrowly tailored. The administrative motion to seal at Dkt. No. 218 is GRANTED.

[2] At the hearing, counsel for EJ remarked that he was unaware of several compliance issues raised by counsel for JGI. In its supplement to its supplemental briefing, EJ acknowledged that it took further action following the hearing to ensure compliance. *See generally* Dkt. No. 227; EJ Supp. Br. 2 ("[EJ has] been working expeditiously to comply with the Court's orders, including addressing the new issues raised by Plaintiff at the hearing.").

2

*diem* fine as of July 13, 2023, the total fine would be in excess of $ 2.8 million.

In my discretion, I will reduce the fine for three reasons. First, the amount seems excessive. Second, EJ appealed the July 13 Order and I have to assume that it had a good faith, if completely misguided, conviction that the Ninth Circuit would reverse my decision even though it had already affirmed my analysis of this dispute earlier. Third, EJ provided some financial information for my review and I must "consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *United States v. United Mine Workers of* America, 330 U.S. 258, 304 (1947).

In consideration of those reasons, I will reduce the fine significantly, to $575,000 as of January 15, 2025. I arrive at this amount by suspending the fine during the pendency of the appeal, with the exception of the 60 days of additional time that EJ received following its requests to delay appellate briefing, and start tabulating the fine on November 22, 2024, the day following the Ninth Circuit's order denying EJ's appeal. *See* EJ Remand Br. 2, Dkt. No. 218-4 (Decl. of Joshua Tetrick) at 3–4, 10–11; *see also* Ninth Circuit Dkt. Nos. 11, 26 (EJ's requests for extension of time to file briefing), Dkt. Nos. 12, 27 (Ninth Circuit grants of EJ's requests), and Dkt. No. 43 (denying EJ's appeal). The fine therefore includes each day following the Ninth Circuit's order up to and including the January 15, 2025, hearing (55 x $5,000) and the 60 days of additional time for appellate briefing requested by EJ (60 x $5,000), totaling $575,000.

EJ asks that I not sanction it for the 60 days it delayed the briefing on appeal because its lawyers requested the delay for their own reasons. *See* EJ Supp. Brief 4. I reject that request. The issues EJ raised on appeal were easily dispatched by the Ninth Circuit, as they had been by me; but for the reasons discussed above, I would have imposed a more substantial fine. I have already reduced the *per diem* fine by more $2 million. Any further reduction is unwarranted, particularly since EJ took additional non-compliant actions during the pendency of the appeal that it had to correct.

3

### The Fine is Both Compensatory and Coercive

As the parties agree, "[s]anctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986); EJ Remand Br. 3–4; JGI Supp Br. 1.  And "in determining how large a coercive sanction should be the court should consider the 'character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction.'" *Gen. Signal Corp.*, 787 F.2d at 1380 (citing *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)).  In *General Signal*, the Ninth Circuit held that when awarding sanctions, a "district court should clarify whether the suspended sanction is intended to be compensatory or coercive." *Id.*  If the award reflects both types of sanction, "the district court should specify the amount awarded under each theory . . . and split payment of the award . . . accordingly." *Id.*

The per diem fine had both coercive and compensatory purposes.  In the July 13 Order, I noted that "EJ's continued violations of the terms of the Term Sheet are troubling." July 13 Order 9.  I referred to the *per diem* fine as "coercive" and stated that "EJ does not appear to have learned from my past orders and continues to choose to push the boundaries set forth in the parties' agreement," alluding to both a coercive and a compensatory intent. *Id.*  In the Order Denying the Stay, I added: "This fine was intended to encourage EJ to promptly comply with the order, in light of its repeated contravention of the parties' agreement and my orders in the past, and to compensate JGI for the injury caused by the continued violation of its rights articulated in the Term Sheet." Order Denying Stay 2.

EJ complains that the July 13 Order itself does not indicate a double intent, asserting that the language in the Order Denying the Stay is only "dicta." EJ Supp. Br. 3.  In its view, JGI "did not present any evidence of actual damages resulting from [EJ's] behavior and the Term Sheet does not contain a liquidated damages provision," and, therefore, I cannot award any portion of the

4

*per diem* fine as compensatory. *Id.* It is wrong as a matter of law and fact.

In *General Signal*, the Ninth Circuit "vacate[d] the sanction imposed by the district court because [the panel found] the record insufficient to support the sanction imposed by the district court under either theory." *General Signal*, 787 F.2d at 1380. On remand, the panel instructed the district court to "clarify whether the suspended sanction is intended to be compensatory or coercive." *Id.* This makes clear that a district court may clarify intent after the initial sanctions order is imposed. And because this fine did not begin accruing until after I clarified its purpose, this argument bears less than no weight.

There is no doubt that JGI suffered "actual losses" in the sense contemplated by *General Signal* and *Shuffler*. *Id.* ("Compensatory awards are limited to 'actual losses sustained as a result of the contumacy.'") (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (Ninth Cir. 1983)). In *Shuffler*, the Ninth Circuit affirmed the district court's civil contempt order, but reversed the district court as to the amount of the fine imposed because "the record [was] barren of any evidence to indicate that [the defendant] actually incurred a loss in profits in excess of the post judgment interest payable pursuant to 28 U.S.C. § 1961 (1976)." *Shuffler*, 720 F.2d at 1148. And, in *General Signal*, the Ninth Circuit likewise affirmed the district court's contempt finding but vacated the court's sanctions award of $400,000 to plaintiff because "[t]here [was] nothing in the record to indicate that General Signal lost $400,000 as a result of the violation of the consent order." *Id.* The Ninth Circuit further clarified that any compensation accounting for attorney fees in that case was inappropriate because the "attorney's fees expended in attaining the consent judgment . . . were not caused by [defendant's] violation of the consent judgment." *Id.* Not so here.

JGI has provided credible evidence concerning attorney fees accrued after and as a direct

result of EJ's continued violations of the July 13 Order.³ Dkt. No. 225-1 (Bost Decl.) (describing attorney fees totaling $57, 470.46). Counsel for JGI has continued to monitor EJ's online and in-store infringement of JGI's mark, has prepared for and attended the hearing following remand, and has provided supplemental documents as required following the hearing. These additional attorney fees *were* "caused by [defendant's] violation of the consent judgment" and are therefore appropriately awarded as compensatory sanctions. *General Signal*, 787 F.2d at 1380.

In addition, I conclude that JGI has made an adequate showing of "actual loss" because of continued consumer confusion of the mark, which has continued from the date the parties entered their Term Sheet on **August 13, 2019**. *See* Dkt. Nos. 131, 134-8 at 2–5. Just because JGI "cannot exactly or precisely *quantify* the amount of actual losses it has sustained [as] a result of [EJ's] violations does not mean that it is not entitled to compensatory sanctions." JGI Supp. Br. 3; *see also Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 456 (1932) ("While the distinction is clear between damages, in the sense of actual pecuniary loss, and profits, the latter may none the less be included in the concept of compensatory relief.").

EJ has confirmed that it continued to infringe upon JGI's mark through the date of the hearing on **January 15, 2025**. *See* Dkt. No. 225-1 at 20–30, EJ Supp. Br. at 2. JGI has provided proof of that breach. EJ has continued to accrue profits while it has continued its infringement upon JGI's mark for **nineteen months** after the July 13 Order. I emphasize these dates because EJ must have concluded that its potential profit from noncompliance outweighed the risk that the sanctions of $5000 per day would be imposed. It is not a logical leap to assume that a fraction of that amount, as I am awarding JGI here, would be necessary to compensate JGI for the nineteen months of infringement plus attendant distraction this litigation must have caused it in order to

---

³ On December 30, 2024, parties stipulated to attorney fees accounting for fees incurred up to that point. Dkt. No. 216.

6

pursue its rights under the Term Sheet, let alone the more than five years of trademark infringement by EJ.  I conclude that awarding a portion of the *per diem* fine to JGI as a compensatory sanction is fair and proper.  To comply with this order and fulfill its obligations as to payment of the *per diem* sanctions through January 15, 2025, EJ must pay $287,500 to the court, and $287,500 to JGI, within 15 days of this order.  And in case there is any doubt, if it is determined later that any portion of the fine was not payable to JGI, the disallowed amount shall instead be paid to the court.  The total sanction amount as of January 15, 2025, is $575,000.

\*\*\*

Following payment of the sanctions as ordered above, EJ shall file a declaration providing the status of its compliance with the Orders of this court and the Term Sheet, and the date full compliance was/is to be accomplished.  The declaration may be accompanied by a two-page memorandum that proposes how the court should address its non-compliance after January 15, 2025, if any.  JGI may respond two weeks later with a similarly detailed declaration and two-page memorandum if it disagrees with EJ's analysis and proposal.  I suggest that the parties confer prior to filing the declarations on both compliance and a final resolution of this matter.

**IT IS SO ORDERED.**

Dated: February 25, 2025



William H. Orrick
United States District Judge