UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUST GOODS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>JUST, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-02198-WHO<br><br>**ORDER ASSESSING FURTHER SANCTIONS, INDICATING INTENT TO APPOINT A SPECIAL MASTER, AND REQUIRING PARTY RESPONSE**<br><br>Re: Dkt. Nos. 241, 243 |

In February of this year, I ordered defendants in this case—Eat Just ("EJ") and Joshua Tetrik (together, "defendants")—to pay $575,000 in sanctions, split equally between plaintiff Just Goods, Inc. ("JGI") and the court. Order on the Per Diem Sanctions [Dkt. No. 228]. On July 18, 2025, I ordered defendants to pay an additional sanction of $82,500 because of their continued noncompliance with the parties' 2017 term sheet. Third Order on Per Diem Sanctions [Dkt. No. 239]. In that Order, I noted: "It is my hope and expectation that defendants will attain full compliance by October." *Id.* at 2. Neither hopes, expectations, nor $657,500 has been enough to bring EJ into compliance.

It is obvious that defendants have failed not only to get rid of existing violations but have also introduced *new* violations since the first Order on the Per Diem Sanctions. *See* JGI Response [Dkt. No. 243] (showing evidence of new JUST Meat products, Wikipedia entries, partnership announcements with the Vegan Food Group using 'JUST' in violation of the term sheet, etc.). This is unacceptable. And EJ's contention that its new protein powder, "Just One" or "Just One Protein," is in line with what the term sheet contemplates to be the use of "Just" with a "generic" runs afoul of caselaw defining the term "generic." *See Kendall-Jackson Winery, Ltd. V. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998) ("Generic marks give the general name of the product; they embrace an entire class of products."). It is without doubt that further sanctions

are warranted. What remains unclear is how much longer this ineffective, whack-a-mole process to get defendants to comply with the Term Sheet will continue until full compliance is reached.

JGI suggests that I continue to impose compensatory and coercive sanctions of at least $15,000 per month, payable in equal parts to JGI and the Court, from July 18, 2025, to the date EJ submits a declaration confirming their actual and complete compliance with the court's orders, and payment of past attorney's fees of $25,662.27. EJ insists that "except for a couple of discrete issues" it is in full compliance with the Term Sheet and that it is responsive whenever JGI raises an issue. Its position is untenable: there should be no "discrete issues" more than five years after my first order interpreting the Term Sheet and it should be proactively ensuring that it is in compliance. Accordingly, I ORDER that on or before January 16, 2026, defendants pay $90,000 in sanctions—$45,000 to JGI and $45,000 to the Court—and an additional $25,662.27 to JGI for its attorney's fees. I further order that EJ submit a declaration of full compliance, addressing any outstanding issues such as those raised in JGI's Response (Dkt. No. 243) at 6:22 – 7:4, when it achieves full compliance.

It does not take much imagination to think that with sanctions like this and on the current trajectory of defendants' compliance, I could be in the position of disciplinary referee over interpretation of an agreement that the parties themselves made, that I have already interpreted, and that the Ninth Circuit has confirmed, until the end of days. In the past year I have issued four orders regarding sanctions, assessing hundreds of thousands of dollars of sanctions against defendants. Yet they remain out of compliance, as they have been for more than five years. This is untenable.

Federal Rule of Civil Procedure 53 provides an alternative, at least for me. It explains that "a court may appoint a master . . . to . . . address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). A neutral with the time to dig into the issues of noncompliance and resolve them, with the power to assess further sanctions, and all the while charging the offending party for the neutral's time, may hasten the end of this endless problem. Accordingly, pursuant to Fed. R. Civ. P. 53(b)(1), I give notice to the parties of my intent to appoint a special master to

assess defendants' compliance with the Term Sheet and my orders, with the authority to take such further actions as are necessary to achieve full compliance, including imposing additional sanctions. I anticipate that the appointed master will have all the authority contemplated by Fed. R. Civ. P. 53(c).

On or before December 22, 2025, the parties shall meet and confer and file an agreed upon list of three suggestions for appointment to the role of special master. If the parties are unable to agree upon a set list of suggested masters, they may submit a joint statement to the court totaling no more than 5 single-spaced pages to propose their recommendations, rationale, and reason for disagreement. I reserve the right to appoint someone not proposed by the parties. Given EJ's continued lack of compliance, EJ will be responsible for paying the retainer for the special master's services throughout the master's term, although the master will have authority at any time to direct that the fees be shared if it is determined that the equities require it.

**IT IS SO ORDERED.**

Dated: December 1, 2025



William H. Orrick
United States District Judge

3